UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN CARFAGNO, derivatively on behalf of CENTERLINE HOLDING COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> MARC D. SCHNITZER, *et al.*, <br><br> Defendants. | 08-CV-912-SAS |
| TONY BROY, derivatively and on behalf of Nominal Defendant CENTERLINE HOLDING COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> JEFF T. BLAU, *et al.*, <br><br> Defendants. | 08-CV-1971-SAS |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS
THE CONSOLIDATED AMENDED VERIFIED COMPLAINT**

## TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

ARGUMENT ........................................................................................................................ 5

I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS
FAILED TO PLEAD THAT DEMAND WOULD BE FUTILE. ................................. 5

    A.  Plaintiff's Conclusory Assertion of "Ties to Schnitzer, Ross and/or
Blau" Is Insufficient to Excuse Demand. ........................................................... 6

        1.  A Majority of the Trustees Was Not "Interested" With Respect to the
Transaction ............................................................................................. 6

        2.  The Board Was Not "Dominated" By Interested Trustees ...................... 6

    B.  Plaintiff's Conclusory Assertion That Demand Was Excused Because
the Trustees "Faced a 'Substantial Likelihood' of Liability" Is
Insufficient to Excuse Demand. .......................................................................... 9

    C.  Plaintiff Has Not Pleaded a Failure of Business Judgment that Could
Excuse Demand .................................................................................................. 9

II.   PLAINTIFF'S ASSERTION OF BOTH DERIVATIVE AND DIRECT CLAIMS
CREATES AN IMPERMISSIBLE CONFLICT OF INTEREST ................................ 13

III.  ON THE MERITS, THE COMPLAINT FAILS TO STATE ANY CLAIM UPON
WHICH RELIEF CAN BE GRANTED ....................................................................... 14

    A.  The Complaint Does Not State a Claim Based on Alleged
Nondisclosure of the Company's Plans. ............................................................. 14

    B.  The Complaint Does Not State a Claim for Dilution Based on the
TRCLP Investment. ............................................................................................. 17

    C.  The Complaint Does Not State a Claim for Waste. ............................................ 19

    D.  The Complaint Does Not State a Claim for Unjust Enrichment .......................... 20

IV.   PLAINTIFF'S CLAIMS ARE PREEMPTED BY SLUSA ......................................... 22

CONCLUSION ..................................................................................................................... 25

## TABLE OF AUTHORITIES

CASES                                                                        Page(s)

*Allison* v. *General Motors Corp.*,
    604 F. Supp. 1106 (D. Del. 1985)......................................................................5

*Arent* v. *Distribution Scis., Inc.*,
    975 F.2d at 1370 (8th Cir. 1992)....................................................................17

*Arnold* v. *Society for Sav. Bancorp. Inc.*,
    650 A.2d 1270 (Del. 1994).............................................................................14

*Aronson* v. *Lewis*,
    473 A.2d 805 (Del. 1984).................................................................5, 6, 7, 8, 9

*Beam* v. *Stewart*,
    845 A.2d 1040 (Del. 2004)...............................................................................6

*Brehm* v. *Eisner*,
    746 A.2d 244 (Del. 2000)...............................................................6, 9, 10, 19

*Bruno* v. *Wise*,
    Civ. A. No. 19953, 2003 WL 1874750 (Del. Ch. April 1, 2003) ...........................16

*Cantor Fitzgerald, L.P.* v. *Cantor*,
    724 A.2d 571 (Del. Ch. 1998)........................................................................20

*Criden* v. *Steinberg*,
    Civ. A. No. 17082, 2000 WL 354390 (Del. Ch. Mar. 23, 2000) ...........................19

*Feldman* v. *Cutaia*,
    Civ. A. No. 1656, 2007 WL 2215956 (Del. Ch. Aug. 1, 2007)..............................17

*Gentile* v. *Rosette*,
    906 A.2d 91 (Del. 2006) ................................................................................17

*Goodwin* v. *Live Entm't., Inc.*,
    Civ. A. No. 15765, 1999 WL 64265 (Del. Ch. Jan. 25, 1999) .............................14

*Grobow* v. *Perot*,
    526 A.2d 914 (Del. Ch. 1987).........................................................................9

*Guttman* v. *Huang*,
    823 A.2d 492 (Del. Ch. 2003).......................................................................13

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Halpert Enters.* v. *Harrison,*
   362 F. Supp. 2d 426 (S.D.N.Y. 2005)...........................................................................7

*Huang* v. *Reyes,*
   No. C 07-5950 CRB, 2008 WL 648519 (N.D. Cal. Mar. 6, 2008) ...........................25

*In re Baxter Int'l Inc. S'holders Litig.,*
   654 A.2d 1268 (Del. Ch. 1995)..................................................................................13

*In re CheckFree Corp. S'holders Litig.,*
   C.A. No. 3193-CC (Del. Ch. Nov. 1, 2007) ..............................................................19

*In re Centerline Holding Co. Sec. Litig.,*
   No. 08-505, slip op (S.D.N.Y. May 5, 2008)............................................................13

*In re Dataproducts Corp. S'holders Litig.,*
   No. Civ. A. 11164, 1991 WL 165301 (Del. Ch. Aug. 22, 1991) ..............................12

*In re E.F. Hutton Banking Practices Litig.,*
   634 F. Supp. 265 (S.D.N.Y. 1986) ..............................................................................7

*In re IXC Commc'ns, Inc.* v. *Cincinnati Bell, Inc.,*
   No. Civ. A. 17324, 1999 WL 1009174 (Del. Ch. Oct. 27, 1999)................................8

*In re J.P. Morgan Chase & Co. S'holder Litig.,*
   906 A.2d 808 (Del. Ch. 2005).......................................................................................6

*In re Lukens Inc. S'holders Litig.,*
   757 A.2d 720 (Del. Ch. 1999)..............................................................................11, 12

*In re Morgan Stanley Derivative Litig.,*
   No. 05 Civ. 6516(LTS), 2008 WL 820718 (S.D.N.Y. March 27, 2008)......................5

*In re W. Nat'l Corp. S'holders Litig.,*
   No. Civ. A. 15927, 2000 WL 710192 (Del. Ch. May 22, 2000) ..................................8

*In re Walt Disney Co. Derivative Litig.,*
   907 A.2d 693 (Del. Ch. 2005)..............................................................................7, 10

*Indiana Elec. Workers Pension Trust Fund* v. *Millard,*
   No. 07 Civ. 172(JGK), 2007 WL 2141697 (S.D.N.Y. July 25, 2007) .......................24

*Kamen* v. *Kemper Fin. Servs., Inc.,*
   500 U.S. 90, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991).............................................5

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Katz* v. *Halperin,*
    1996 WL 66006 (Del. Ch. Feb. 5, 1996) ................................................................8

*Khanna* v. *McMinn,*
    No. Civ. A. 20545, 2006 Del. Ch. LEXIS 86 (Del. Ch. May 9, 2006)........................7

*Lakonia Management Ltd.* v. *Meriwether,*
    106 F. Supp. 2d 540 (S.D.N.Y. 2000)..............................................................12, 15

*Malpiede* v. *Townson,*
    780 A.2d 1075 (Del. 2000) .................................................................................12

*Manzo* v. *Rite Aid Corp.,*
    No. Civ. A. 18451-NC, 2002 WL 31926606 (Del. Ch. Dec. 19. 2002) ..................16

*Merrill Lynch* v. *Dabit,*
    547 U.S. 71 (2006)........................................................................................21, 22

*Metro Commc'n Corp. BVI* v. *Advanced Mobilecomm Techs., Inc.,*
    854 A.2d 121 (Del. Ch. 2004)..........................................................................14, 16

*Oliver* v. *Boston Univ.,*
    Civ. A. No. 16570, 2006 WL 1064169 (Del. Ch. Apr. 14, 2006) ...........................17

*Rales* v. *Blasband,*
    634 A.2d 927 (Del. 1993) .................................................................................6, 7

*Reinhardt* v. *Wal-Mart Stores, Inc.,*
    No. 07 Civ. 8233(SAS), 2008 WL 1781232 (S.D.N.Y. April 18, 2008)..................20

*Seminaris* v. *Landa,*
    662 A.2d 1350 (Del. Ch. 1995)...........................................................................9

*St. Clair Shores Gen. Employees Ret. Sys.* v. *Eibeler,*
    No. 06-CV-688, 2006 U.S. Dist. LEXIS 72316 (S.D.N.Y., Oct. 4, 2006) ..............14

*Steiner* v. *Meyerson,*
    Civ. A. No. 13139, 1995 WL 441999 (Del. Ch. July 19, 1995).......................19, 20


**STATUTES**

12 Del. C. § 3806(e) (2008)...................................................................................12

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

15 U.S.C. § 78bb(f).................................................................................................22, 23

Delaware General Corporation Law Section 102(b)(7)..................................................13


**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6).............................................................................................12, 15

Fed. R. Civ. P. 23.1.....................................................................................................5, 7

New York Stock Exchange Corporate Governance Rules, § 303A...........................13, 14

The individual defendants and nominal defendant, Centerline Holding Company ("Centerline" or the "Company") (collectively "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the Consolidated Amended Verified Complaint of plaintiff John Carfagno (the "Complaint" or "Cplt.") with prejudice.

## PRELIMINARY STATEMENT

This action arises out of a December 28, 2007, press release by Centerline, a Delaware statutory trust engaged in real estate finance and investing. (Cplt. ¶¶ 3, 25.) The press release announced: (a) a securitization of the Company's $2.8 billion tax-exempt affordable housing bond portfolio; (b) a commitment for $131 million equity investment from Centerline's largest stockholder, The Related Companies, L.P. ("TRCLP"); and (c) a change in Centerline's dividend policy. (Cplt. ¶¶ 9-10 (quoting Centerline Press Release dated Dec. 28, 2007).) Plaintiff asserts claims against Centerline's trustees for breach of fiduciary duty, corporate waste and unjust enrichment; he purports to bring these claims derivatively on behalf of Centerline and also as representatives of a class of certain Centerline stockholders.

As detailed below, all of plaintiff's claims should be dismissed for the following reasons:

*First*, plaintiff has failed adequately to allege demand futility, a deficiency that is fatal to his derivative claims. Plaintiff has not alleged facts raising any doubt that a majority of Centerline's trustees were disinterested and independent with respect to the transactions at issue. And he cannot, as a matter of law, plead that a majority lacked independence because they faced a "substantial likelihood of liability" in this case; as to a majority, plaintiff has asserted at most a violation of the duty of due care, and any claim based on such a violation is expressly foreclosed by the Company's Trust Instrument. (*See infra pp.* 5-13.)

*Second*, plaintiff faces an insurmountable conflict of interest in asserting his claims: on the one hand, he pursues derivative claims on behalf of the Company, and purportedly for the

Company's benefit. On the other hand, he presses class claims against defendants on the very same facts that underlie the securities litigation pending before this Court, thereby assisting to make the case against the Company and to cause it harm. (*See infra pp.* 13-14.)

*Third,* while plaintiff attempts to assert a claim based on the Company's alleged failure to make earlier disclosures concerning the transactions announced on December 28, 2007, there was no legal duty to make such anticipatory disclosures, particularly in the absence of a request for stockholder action. Moreover, it is apparent from the face of documents quoted in the Complaint that the Company's plans were made public long before plaintiff suggests. Finally, to the extent plaintiff purports to pursue this claim directly, on behalf of himself and a putative class, Delaware law rejects any such claim on the part of "holders" like plaintiff and the members of the Class, as opposed to purchasers and sellers. (*See infra pp.* 14-17.)

*Fourth,* while plaintiff advances a claim for dilution resulting from the TRCLP investment, he cannot state such a claim, because claims of dilution based upon the issuance of additional equity for insufficient consideration are derivative in nature, and may not be brought directly by stockholders, as plaintiff purports to do here. Moreover, plaintiff's dilution claim would still fail as a matter of law even if brought derivatively, because he does not allege facts addressing the basic premise of such a claim: that the Company, by issuing additional equity for insufficient consideration, made the complaining stockholder's stake less valuable. At all events, any stockholder concerned about dilution had an obvious remedy available: to accept the Rights Offering. (*See infra pp.* 17-19.)

*Fifth,* plaintiff's effort to state a claim for corporate waste fails, because plaintiff has not met the demanding standard for such a claim: a complaint must set forth specific facts — not merely conclusory assertions — that if accepted as true would establish that the transaction was

2

so grossly unfair to the corporation that no person of ordinary business judgment would have thought it represented a fair or reasonable exchange. (*See infra pp.* 19-20.)

*Sixth,* the Complaint does not state a claim for unjust enrichment. With respect to at least eight of the eleven trustees, it does not allege any benefit received at all, whether "unjust" or not. And as to *all* defendants, it fails to plead additional required elements, such as "impoverishment" of the Company and absence of an adequate remedy at law. (*See infra pp.* 20-21.)

*Seventh,* plaintiff's class action claims are preempted by the Securities Litigation Uniform Standards Act ("SLUSA"). (*See infra pp.* 21-25.)

## STATEMENT OF FACTS

Centerline is a statutory trust organized under the laws of the state of Delaware, with its principal executive offices at 625 Madison Avenue, New York, NY 10022. Centerline is a publicly owned investment holding firm, which, through its subsidiaries and the funds managed by them, operates as a real estate finance and investment company, providing capital solutions to developers and owners of properties, as well as investment products to institutional and retail investors. (Cplt. ¶¶ 3, 25.)

On December 28, 2007, Centerline issued a press release containing three announcements:

*First,* Centerline announced "the completion of a securitization of the Company's $2.8 billion tax-exempt affordable housing bond portfolio with Freddie Mac," representing "a major step in Centerline's plan to transform itself into an alternative asset management company." (Cplt. ¶ 9, quoting Centerline Press Release dated Dec. 28, 2007.)

*Second,* Centerline announced "a $131 million equity investment commitment from an affiliate of Related Companies, its largest shareholder," through issuance of convertible preferred stock that would "pay dividends at an 11% annual distribution rate and [would] be convertible at

a $10.75 per share conversion rate for an aggregate of approximately 12.2 million common shares" of Centerline (the "TRCLP Investment").     (Cplt. ¶¶ 9-10, quoting Centerline Press Release dated Dec. 28, 2007.)   The press release stated that Centerline would "use the net proceeds to reduce corporate debt and fund the Company's growth plans."    (Cplt. ¶ 10, Centerline Press Release dated Dec. 28, 2007.)

*Third*, the Company announced that, effective in the first quarter of 2008, its dividend "on an annualized basis [wa]s expected to be $0.60 per share," as opposed to $1.68 per share annual dividend previously paid.   (Cplt. ¶ 9, quoting Centerline Press Release dated Dec. 28, 2007.)

These announcements were followed promptly by a number of lawsuits against Centerline and various of its officers and trustees, including this case.   Plaintiff does not allege that either the securitization of the tax-exempt bond portfolio or the reduction in the dividend constituted a breach of any duty by the trustees.   Rather, plaintiff claims that: (1) defendants should have disclosed these initiatives earlier than they did (Cplt. ¶ 5); (2) the TRCLP Investment was a "sweetheart deal" that diluted the ownership interests of the Company's other stockholders, and was "worse for the Company" than an alternative proposal by Morgan Stanley and Goldman Sachs (*id.* ¶ 56, 62); and (3) a Rights Offering announced by the Company shortly after the December 28, 2007, announcement, which enabled public stockholder to buy the same preferred stock as TRCLP, on the same terms, was "illusory" because the 79-page prospectus "included little information to permit Centerline's common shareholders to value Centerline or its plans as a 'growth' company" (*id.* ¶ 62) — apparently because Centerline did not share with the public all the highly sensitive information (such as five-year forecasts and projections) that

4

was provided to the purchaser and prospective purchasers in connection with the TRCLP Investment, a $131 million private placement. (*See id.* ¶ 9.)

Based on these allegations, plaintiff purports to assert claims both derivatively and on behalf of a class of "all other holders of Centerline's common stock or other Centerline securities," except defendants and their affiliates, "who qualified to purchase Centerline's 11% preferred stock in the Rights Offering (the 'Class') but did not." (Cplt. ¶ 37.) The claims are for: (1) mismanagement and nondisclosure in violation of fiduciary duties; (2) dilution, also in violation of fiduciary duties; (3) corporate waste; and (4) unjust enrichment on the part of all defendants and, separately, on the part of defendants Ross and Blau, who control TRCLP.

## ARGUMENT

### I.

### THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD THAT DEMAND WOULD BE FUTILE.

In any derivative action, "whether the shareholder has made a demand on the board of directors" is a "threshold question of standing." *In re Morgan Stanley Derivative Litig.*, No. 05 Civ. 6516(LTS), 2008 WL 820718 at *3 (S.D.N.Y. March 27, 2008); *see* Fed. R. Civ. P. 23.1(b). Here, because plaintiff admits that he has not made such demand (Cplt. ¶ 63), he is required to allege "the exceptional circumstances that demonstrate why a demand would be futile." *Allison* v. *General Motors Corp.*, 604 F. Supp. 1106, 1112 (D. Del. 1985). Under Delaware law,[1] demand is not excused unless "under the particularized facts alleged, a reasonable doubt is created" that the directors are "disinterested and independent" or "the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson* v. *Lewis*, 473 A.2d

---

[1] Demand futility is governed by the law of the state of incorporation, in this case Delaware. *In re Morgan Stanley*, 2008 WL 820718 at *3; *see also Kamen* v. *Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991).

805, 814 (Del. 1984), *overruled in part on other grounds by Brehm* v. *Eisner*, 746 A.2d 244 (Del. 2000). Plaintiff has not adequately pleaded demand futility under these standards.

**A.     Plaintiff's Conclusory Assertion of "Ties to Schnitzer, Ross and/or Blau" Is Insufficient to Excuse Demand.**

To raise a doubt about whether a director is "disinterested" for purposes of demand futility, a plaintiff must plead facts indicating that the director either "stood on both sides" of the challenged transaction or received a "personal financial benefit from it other than one that devolved on all" the corporations stockholders. *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 821 (Del. Ch. 2005). In the absence of such an economic interest, demand may be excused if a plaintiff can show that the Board was dominated by interested directors. To show such a "lack of independence, the complaint . . . must create a reasonable doubt that a director is not so 'beholden' to an interested director . . . that his or her 'discretion would be sterilized.'" *Beam* v. *Stewart*, 845 A.2d 1040, 1050 (Del. 2004) (citing *Rales* v. *Blasband*, 634 A.2d 927, 936 (Del. 1993)).

**1.     A Majority of the Trustees Was Not "Interested" With Respect to the Transaction**

Here, plaintiff has not pleaded any facts indicating that any of the trustees, other than Messrs. Ross and Blau, either "appear on both sides" of the TRCLP Investment or "expect to derive any personal financial benefit" from it, *Aronson*, 473 A.2d at 812. With respect to the securitization of the Company's tax-exempt bond portfolio, plaintiff does not allege any such interest on the part of any trustee other than Messrs. Ross and Schnitzer. (*See* Cplt. ¶¶ 25, 26, 72, 76.)

**2.     The Board Was Not "Dominated" By Interested Trustees**

Because plaintiff is thus unable to dispute that a substantial majority of the trustees was disinterested in the transactions at issue, he asserts instead that "at least half of the members of

Centerline's Board of Trustees were not disinterested or independent" at the time the first of these actions was commenced "because of their ties to Schnitzer, Ross and/or Blau . . ." (Cplt. ¶ 67), and that "the Board is dominated" by these three trustees, who allegedly "were personally and directly involved in the misconduct alleged and/or . . . approved the actions complained of." (Cplt. ¶ 70.) To prevail on this theory, plaintiff must plead, "director-by-director," *Khanna* v. *McMinn*, No. Civ. A. 20545, 2006 Del. Ch. LEXIS 86 at *54 (Del. Ch. May 9, 2006), particularized facts demonstrating that a majority of the Board of Trustees is "beholden to" the interested director or "so under [his] influence that their discretion would be sterilized." *Rales*, 634 A.2d at 936; *Aronson*, 473 A.2d at 816.

Plaintiff does not do so. Most conspicuously, with respect to *six* of the eleven trustees — Messrs. Halperin, Gantcher, Loverd, Meister and White, and Ms. Roberts — the Complaint does not plead *any* facts, particularized *or* general, identifying *any* relationship whatsoever with Mr. Schnitzer, Mr. Ross or Mr. Blau, outside of their service as trustees of, and in Mr. White's case consultant to, Centerline or another company.[2]   With respect to a seventh trustee, Mr. Cotton, plaintiff alleges that he was the CEO of a company acquired by Centerline in 2006.

---

[2] Allegations that Messrs. Cotton and White receive salaries and bonuses or consulting fees from Centerline (Cplt. ¶¶ 77, 80), are insufficient. *See In re Walt Disney Deriv. Litig.*, 731 A.2d 342, 355, 357 (Del. Ch. 1998) *aff'd in part, rev'd in part on other grounds*, 746 A.2d 244 (Del. 2000) (finding two directors capable of considering a demand even though they earned executive compensation from defendant company); *In re E.F. Hutton Banking Practices Litig.*, 634 F. Supp. 265, 271 (S.D.N.Y. 1986) (rejecting as insufficient to excuse demand under Second Circuit and Delaware law, a contention that receipt of bonuses tied to corporation's profitability and therefore to alleged unlawful scheme "creates a reasonable doubt as to [directors'] lack of self-interest or bias"). The allegation that Mr. Halperin has served or now serves on the board of a TRCLP affiliate (Cplt. ¶ 32), is likewise insufficient to raise any reasonable doubt as to his independence. *See Halpert Enters.* v. *Harrison*, 362 F. Supp. 2d 426, 433 (S.D.N.Y. 2005) (allegations that "Board members sit together, in various configurations, on other boards" do not excuse demand). Such allegations are diametrically opposed to the very premise of Rule 23.1: that only "exceptional circumstances" can justify taking from the board the decision whether to institute litigation." *Allison*, 604 F. Supp. at 1112.

(Cplt. ¶ 29.)  But "under Delaware law a director's past employment with the company on whose board he sits does not alone establish that director's lack of independence." *In re W. Nat'l Corp. S'holders Litig.*, No. Civ. A. 15927, 2000 WL 710192, at *17 (Del. Ch. May 22, 2000)) (footnote omitted).  Indeed, in *Western National Corp.* the Court further held that former employment with the company's *counterparty* did not show that the company's CEO improperly favored the counterparty in merger negotiations.  *Id.* at *12.  Mr. Cotton's situation is even more clear-cut. And plaintiff's allegations that Mr. Cotton owns 366,008 shares of Centerline stock (Cplt. ¶ 29) cannot support an inference of "domination" by the interested trustees — the reverse is true.  *See In re IXC Commc'ns, Inc. v. Cincinnati Bell, Inc.*, No. Civ. A. 17324, 1999 WL 1009174, at *6-7 (Del. Ch. Oct. 27, 1999) (finding that directors with large stock holdings likely would have interests aligned with stockholders).[3]  Nor can plaintiff garner any comfort from the alleged control of roughly 15.7 percent of Centerline's common stock by Messrs. Ross, Blau, and Schnitzer at the time of the transactions at issue (Cplt. ¶¶ 26-28),[4] given that the Delaware Supreme Court has made clear that "in the demand context even proof of a majority ownership of a company does not strip the directors of the presumptions of independence, and that their acts

---

[3] Because a majority of the trustees were clearly independent of Messrs. Ross, Blau and Schnitzer, the Court need not reach the issue of whether one of the trustees, Mr. Dolan, lacked independence by virtue of Mr. Ross's donation to the University of Michigan Business School, with which Mr. Dolan is affiliated. (Cplt. ¶ 78).

[4] *See* Rosen Dec., Ex. D (Schedule 14A, April 23, 2007) cited at Cplt. ¶¶ 26-28 ("2007 Proxy").  According to the 2007 Proxy, Messrs. Ross and Blau beneficially owned 13.9% and 13%, respectively, of Centerline's common stock.  In both instances the percentages include the 12.8% of Centerline common stock held by a TRCLP-owned entity; combined with their individual holdings, and with Schnitzer's beneficial ownership of 1.6%, the three defendants combined beneficially owned approximately 15.7% of Centerline common stock as of April 23, 2007. *See id.*, at 53-54 & fn. 1-3.

have been taken in good faith and in the best interests of the corporation." *Aronson*, 473 A.2d at 815.[5]

**B.    Plaintiff's Conclusory Assertion That Demand Was Excused Because the Trustees "Faced a 'Substantial Likelihood' of Liability" Is Insufficient to Excuse Demand.**

Plaintiff also asserts that "at least half of the members of Centerline's Board of Trustees were not disinterested or independent" at the time the first of these actions was commenced, "because they faced a 'substantial likelihood' of liability for the wrongs alleged herein." (Cplt. ¶ 67; *see also id.* ¶¶ 71.) That assertion is misguided.

Under Delaware law, "the mere threat of personal liability . . . is insufficient to challenge either the independence or disinterestedness of directors." *Aronson*, 473 A.2d at 815.[6] The only exception consists of "rare cases" in which "a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists." *Aronson*, 473 A.2d at 815. As discussed below, plaintiff has not pled — and cannot plead — a failure to exercise business judgment that could create a "substantial likelihood of director liability."

**C.    Plaintiff Has Not Pleaded a Failure of Business Judgment that Could Excuse Demand**

Plaintiff has not pled a basis for excusing demand by virtue of any board action that fails "the test of business judgment." First, with respect to the securitization of the tax-exempt bond portfolio and the reduction of the dividend, the Complaint does not allege any facts indicating

---

[5] *See also Katz* v. *Halperin*, 1996 WL 66006, at *8 (Del. Ch. Feb. 5, 1996) (rejecting conclusory allegation of domination by 85% shareholder group).

[6] *See Seminaris* v. *Landa*, 662 A.2d 1350, 1355 (Del. Ch. 1995) (contention that directors cannot be expected to sue themselves is a "discredited refrain"); *Grobow* v. *Perot*, 526 A.2d 914, 924 (Del. Ch. 1987), *aff'd*, 539 A.2d 180 (Del. 1988), o*verruled in part on other grounds by Brehm* v. *Eisner*, 746 A.2d 244 (Del. 2000) ("It is now well-settled [under Delaware law] that an allegation that a majority of directors approved, participated, or acquiesced in the challenged [conduct underlying the derivative action] will not, in and of itself, establish demand futility.").

anything other than a "valid exercise of business judgment," *Aronson*, 473 A.2d at 814. Second, while plaintiff asserts that certain aspects of the TRCLP Investment did not reflect a valid exercise of business judgment (Cplt. ¶ 65), his allegations against a majority of the trustees amount at most to a violation of the duty of care, and any breach of that duty is expressly insulated from liability by Centerline's Trust Instrument.

**The Securitization and the Dividend Reduction:** While plaintiff claims that Centerline should have disclosed earlier its plans with respect to the securitization of Centerline's tax-exempt bonds and the reduction in its dividend, the Complaint does not identify any relevant information that the trustees failed to review in considering those transactions, a single relevant expert or type of expert they failed to consult, a single relevant analysis they failed to perform, a single relevant question they failed to ask, or a single relevant factor they failed to consider. The Complaint ignores that Delaware law does not establish any mandatory procedure that the directors must follow in informing themselves on a corporate decision. "Due care in the decisionmaking context is *process* due care only," *Brehm* v. *Eisner*, 746 A.2d 244, 264 (Del. 2000). Delaware law requires only that the process followed be rational or be employed in a good faith effort to advance corporate interests.[7]

Indeed, the *facts* alleged in the Complaint affirmatively demonstrate the care with which the trustees considered the securitization and the dividend reduction, from Mr. Schnitzer's initial March 2007 presentation to the board on the possibility of "transforming Centerline from an 'income-oriented' company to a 'growth' company" (Cplt. ¶ 45), review by the board's Investment Committee of "'exit strategies' for Centerline's sub-performing and non-performing

---

[7] *See In re Walt Disney*, 907 A.2d at 749-50 ("[C]ompliance with a director's duty of care can never appropriately be judicially determined by reference to *the content of the board decision* that leads to a corporate loss, apart from consideration of the good faith or rationality of the process employed.") (emphasis in original; citation omitted).

debt and equity investments" (*id.* ¶ 47), the trustees' discussion of "the possible uses of the proceeds from the securitization" (*id.* ¶ 49), the Company's "comprehensive and intensive impairment review of the Company's entire tax-exempt portfolio" (*id.*), the trustees' consideration of the "risks" of the Freddie Mac transaction (*id.* ¶ 53), and their consultation with a well recognized financial advisor, Bear Stearns (*id.* ¶ 56).

**The TRCLP Investment:**  Plaintiff asserts that the board's approval of the TRCLP Investment was not a valid exercise of business judgment because its terms were "worse for the Company" than those of an alternative transaction proposed by Morgan Stanley and Goldman Sachs." (Cplt. ¶ 56.)[8]  For a majority of the board, that allegation can implicate at most the duty of due care — and the not the duty of loyalty — because, as demonstrated above (*see supra* pp. 5-8), a majority of the board was disinterested and independent, even if all the factual allegations of the Complaint are accepted as true.  *See In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 731-32 (Del. Ch. 1999) ("without some factual basis to suspect [the directors'] motivations" complaint implicated duty of care, not duties of loyalty or good faith).  And a claim based on an alleged breach of the duty of care cannot create a "substantial likelihood of [director] liability" in this case, because Centerline's Trust Instrument expressly forecloses any such liability. (Cplt. ¶ 67.)

Centerline's Trust Instrument expressly shields the trustees from liability for duty of care violations to the fullest extent permitted by Delaware law, which in turn provides that "[a]

---

[8]  Filings made by plaintiff in the Delaware Chancery Court in opposition to the settlement in *Off* v. *Ross, et al.*, C.A. No. 3468-VCP, and based on over 75,000 pages of documents produced in discovery in this case to date, establish definitively that there is no factual basis for the allegation that the proposals by either Goldman Sachs or Morgan Stanley were economically superior to that proposed by TRCLP. Because this issue will be the subject of the fairness hearing in Delaware, defendants respectfully reserve the right to supplement their motion papers after that hearing, and to move to dismiss on the additional grounds of *res judicata* and/or collateral estoppel.

governing instrument may provide for the limitation or elimination of any and all liabilities for

. . . breach of duties (including fiduciary duties) of a trustee" but "may not limit or eliminate

liability for any act or omission that constitutes a bad faith violation of the implied contractual

covenant of good faith and fair dealing." 12 Del. C. § 3806(e) (2008).  As expressly stated in

Centerline's Trust Instrument:

> To the maximum extent that Delaware law in effect from time to time permits
> limitation of the liability of trustees of a statutory trust, [a] Managing Trustee or
> employee of the Trust, when acting in such respective capacities, shall not be
> personally liable to any Person other than the Trust or a Shareholder for any act,
> omission or obligation of the Trust. . . .

Rosen Dec., Ex. A ((Second Amended and Restated Trust Agreement, Section 7.3)) (Emphasis

added.)[9]  This provision bars any claim by plaintiff based on an alleged violation of the duty of

due care. *See In re Dataproducts Corp. S'holders Litig.*, No. Civ. A. 11164, 1991 WL 165301, at

*6 (Del. Ch. Aug. 22, 1991) (applying exculpatory clause where "[n]ot even inferentially does

[the complaint] suggest that the directors acted in bad faith or with intent to allow the

shareholders to be harmed").[10]

---

[9] Centerline's Fifth Amended and Restated Bylaws similarly provide that: "The personal
liability of the Independent Trustees acting pursuant to Section 17(a) hereof is hereby eliminated
to the fullest extent permitted by Delaware Statutory Trust Act, as the same may be amended and
supplemented." Rosen Dec., Ex. B (Fifth Amended and Restated Bylaws, Art III, Section 17(b)).
That is, no claim will stand against any of the trustees unless it is based on an "any act or
omission that constitutes a bad faith violation of the implied contractual covenant of good faith
and fair dealing." 12 Del. C. § 3806(e). This Court may consider both the Trust Instrument and
bylaws in ruling on defendants' motion to dismiss. *See Lakonia Management Ltd.* v.
*Meriwether*, 106 F. Supp. 2d 540, 543 (S.D.N.Y. 2000) (Scheindlin, J.) ("In deciding a Rule
12(b)(6) motion, the district court . . . may . . . consider matters of public record . . .") (citation
omitted).

[10] *See also Malpiede* v. *Townson*, 780 A.2d 1075, 1092, 1094 (Del. 2001) (affirming Rule
12(b)(6) dismissal based on exculpatory provision); *In re Lukens Inc.*, 757 A.2d at 728, 732-33
(dismissing complaint based on exculpatory provision where "well-pleaded allegations of the
Complaint typify only a claim of negligence or gross negligence").

Courts have routinely held, in the closely analogous context of exculpatory provisions pursuant to Section 102(b)(7) of the Delaware General Corporation Law, that demand is *not* excused "[w]hen the certificate of incorporation exempts directors from liability . . . unless particularized pleading permits the court to conclude that there is a substantial likelihood that [the directors'] conduct falls outside the exemption". *See In re Baxter Int'l Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995).[11] Consequently, plaintiff's assertion that the board's approval of TRCLP Investment was not a valid exercise of business judgment cannot form a basis for excusing demand.[12]

## II.
## PLAINTIFF'S ASSERTION OF BOTH DERIVATIVE AND DIRECT CLAIMS CREATES AN IMPERMISSIBLE CONFLICT OF INTEREST

Plaintiff acknowledges the significant overlap between this case and the securities action pending before the Court. As the Complaint states: "Development of the claims in this case increases Defendants' exposure to the securities fraud claims," and "the allegations alleged herein as a basis for plaintiffs' claims of breach of fiduciary duty also support claims for violation of the federal securities laws." (Cplt. ¶ 81). It goes without saying that "[d]evelopment

---

[11] *See also Guttman* v. *Huang*, 823 A.2d 492, 501 (Del. Ch. 2003) ("in the event that the charter insulates the directors from liability for breaches of the duty of care, then a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts.") (citation omitted).

[12] Plaintiff also asserts that Centerline's April, 23, 2007, Proxy Statement "admitted that . . . Cotton and White, [as well as Messrs.] Schnitzer, Ross, Blau . . . were not 'independent'" (Cplt. ¶ 69) — apparently a reference to the disclosure that these trustees are not "independent trustees" under Section 303A of the Corporate Governance New York Stock Exchange Rules. This allegation is misleading: Section 303A sets standards for assessing a director's independence *from the company* for purposes of service on audit, compensation and nominating committees, and says nothing about "independence" with respect to the specific transactions challenged here, which were not a topic of either the Proxy Statement or Section 303A. *See* Rosen Dec., Ex. E (Section 303A).

of the claims in this case" also increases the exposure of *Centerline*, whose interests plaintiff purports to be advancing, to those same securities fraud claims.

This Court recognized exactly these "conflicting interests" in declining to consolidate the securities and derivative actions, because "a single lead plaintiff could not adequately represent both groups." *In re Centerline Holding Co. Sec. Litig.*, No. 08-505, slip. op at 8 (S.D.N.Y. May 5, 2008). That conflict warrants dismissal of either plaintiff's derivative claims or his direct claims. *See St. Clair Shores Gen. Employees Ret. Sys.* v. *Eibeler*, No. 06-CV-688, 2006 U.S. Dist. LEXIS 72316, *23 (S.D.N.Y., Oct. 4, 2006) (applying Delaware law and observing that courts in the Second Circuit "have long found that plaintiffs attempting to advance derivative and direct claims in the same action face an impermissible conflict of interest.").

### III.
### ON THE MERITS, THE COMPLAINT FAILS TO STATE
### ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED.

A.    **The Complaint Does Not State a Claim Based on Alleged Nondisclosure of the Company's Plans.**

The crux of plaintiff's nondisclosure claim in the First Cause of Action appears to be that the failure of Centerline and its management to disclose their plans for the Company at some unspecified time before the actual terms of the transactions were determined inflated the value of its stock, and that revelation of the allegedly concealed facts subsequently caused a decline in that value. (*See* Cplt. ¶¶ 84-85.) The Complaint does not state any claim under that theory for at least three reasons:

*First*, defendants were subject to no duty under Delaware law to disclose any of the foregoing business decisions earlier than they actually did. Specifically, there is no duty under Delaware law to disclose future events that may or may not occur. *See Arnold v. Society for Sav. Bancorp. Inc.*, 650 A.2d 1270, 1277 (Del. 1994) ("Delaware law does not require disclosure of

14

inherently unreliable or speculative information").[13]  In addition, there is "'no distinctive state law duty to disclose material developments with respect to the company's business' in the absence of a request for 'stockholder action.'"  *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs., Inc.*, 854 A.2d 121, 153 (Del. Ch. 2004) (internal citations omitted). Plaintiff does not (and cannot) allege that there was any request for shareholder action in connection with any of the transactions he claims should have been disclosed earlier.

*Second*, the documents quoted in the Complaint itself contain the very sorts of disclosures that plaintiff alleges were not made.  For instance, a "March 12, 2007 press release highlighted the Company's long-term evolution from a pure tax-exempt bond fund to a 'full service real estate finance and investment company,'" (Cplt. ¶ 5), undercutting allegations elsewhere in the Complaint that defendants had failed to give "any warning to the investing public" that the Company's "business model", "inventory profile", and "tax-exempt status" were undergoing a transformation.  (*Id.*)  And plaintiff inexplicably cites as purported evidence of "concealment" a November 8, 2007, Centerline earnings call with Wall Street analysts, during which call Mr. Schnitzer stated:

> [W]e believe and we have believed for some time that the way to really increase the value of the Company is to continue to evolve the Company into a fund manager .... our growth has really focused on evolving into externally managed funds ....  So, we've been going through this evolution.  We will continue to go through this evolution and our goal will be to make the Company into much more of a pure fund manager and then go out and tell the world about it in the most effective way that we can.

Rosen Dec., Ex. C (Conference Call Transcript dated Nov. 8, 2007 (quoted, in part, at Cplt. ¶ 7),

---

[13] *See also Goodwin* v. *Live Entm't., Inc.*, Civ. A. No. 15765, 1999 WL 64265, at *12 (Del. Ch. Jan. 25, 1999) (Strine, V.C.) (demonstrating reluctance to require disclosure of projections of performance or estimates of value), *aff'd*, 741 A.2d 16 (1999).

p. 12.)[14]  No one on the call registered surprise at this comment, and one analyst even referred to having "some of these discussions before about turning into a fund manager," noting that "you are obviously executing along that track." (*Id.* at 13)  She also made clear that it was obvious such a transition might involve a sale of Centerline's bond portfolio: "And, sort of related to that, have you ever considered putting — taking the bonds off your balance sheet or letting them roll off into some other sort of vehicle?" (*Id.*)  Mr. Schnitzer responded: "We've thought about [a sale or disposal of the bond portfolio] and many other options.  But clearly, that's one that would come to mind right away." (*Id.*)

*Third,* to the extent plaintiff purports to pursue this claim directly (which is unclear from the Complaint), Delaware law does not permit *holders* of securities, such as plaintiff (Cplt. ¶ 37), to assert claims for damages based on a decline in the stock price that occurs while they refrain from selling their shares (Cplt. ¶¶ 18, 86) — only purchasers or sellers may seek such damages.  *See Manzo* v. *Rite Aid Corp.*, No. Civ. A. 18451-NC, 2002 WL 31926606,*5 (Del. Ch. Dec. 19, 2002), *aff'd*, 825 A.2d 239 (Del. 2003) (table).[15]  In any event, class-wide holder claims fail under Delaware law because specific reliance cannot be pleaded and proven within the framework of a class action.  *See Metro Commc'n*, 854 A.2d at 161 (Under Delaware law, "there can be no class action as to claims for which reliance is a required element.")  Such claims rest on an attenuated theory of proximate causation, at best; any damages to holders are speculative because they rest on unprovable assertions that particular holders harbored a

---

[14]  *See Lakonia Management*, 106 F. Supp. 2d at 543 ("In deciding a Rule 12(b)(6) motion, the district court must generally limit itself to facts stated in the complaint, documents attached to the complaint as exhibits or documents incorporated in the complaint by reference.").

[15]  The *Manzo* court declined to "presume that plaintiff's investment . . . would have been deployed in other more successful investments. . . . [A]warding money damages to compensate plaintiff for the return she could have earned had she invested elsewhere . . . amounts to speculation founded upon uncertainty. . . . [P]laintiff's assertion of 'investment opportunity losses' does not . . . state a cognizable injury." 2002 WL 31926606, *5.

subjective intent to sell shares but refrained from doing so.[16]

**B.    The Complaint Does Not State a Claim for Dilution Based on the TRCLP Investment.**

In the Second Cause of Action, plaintiff challenges the TRCLP Investment on the ground that it allegedly diluted the ownership interests of public stockholders. This claim fails as a matter of law for at least four reasons.

*First*, this claim is expressly asserted as a direct claim on behalf of a class (Cplt. ¶ 37), while claims of dilution based upon the issuance of additional equity for insufficient consideration are (with exceptions not applicable here) derivative in nature, and may not be brought directly by shareholders. The alleged damage from a dilution claim "falls upon all shareholders equally and falls only upon the individual shareholder in relation to his proportionate share of stock as a result of the direct injury being done to the corporation.'" *Feldman* v. *Cutaia*, Civ. A. No. 1656, 2007 WL 2215956, *7 (Del. Ch. Aug. 1, 2007) (internal citations omitted). Centerline is "free to enter into . . . numerous transactions, all of which may result legitimately in the dilution [of equity holders.] The only cognizable injuries, if any, would be failure to act in the best interest of [Centerline.] These alleged harms [can] be asserted only by or on behalf of" Centerline. *Oliver* v. *Boston Univ.*, Civ. A. No. 16570, 2006 WL 1064169, at

---

[16]    Even if plaintiff's disclosure claim is derivative, he has failed adequately to allege any injury to the corporation. The only injury plaintiff identifies that could have been avoided by earlier disclosure of the company's plans is the alleged injury resulting from the Company's supposed "violation of the federal securities laws." (Cplt. ¶ 84; *see also id.* ¶ 85(a).)  And any claim asserted on that basis is premature at best. *See Bruno v. Wise*, Civ. A. No. 19953, 2003 WL 1874750, *4 (Del. Ch. April 1, 2003) (where right to relief in a derivative action hinges on the outcome of a federal securities action, the derivative action "cannot be adjudicated in full (or even in large measure) until the Federal Securities Action is tried"). There has been no finding of liability in the securities actions pending before the Court, and the Company has therefore suffered no harm alleged by plaintiff.

\*17 (Del. Ch. Apr. 14, 2006) (internal quotations omitted).  Thus, any *direct* claims based on dilution must fail.

*Second*, plaintiff fails to plead one of the elements of a dilution claim.  Such a claim is "premised on the notion that the corporation, by issuing additional equity for insufficient consideration, made the complaining stockholder's stake less valuable."  *Feldman*, 2007 WL 2215956 at \*7; *see also Gentile v. Rosette*, 906 A.2d 91, 99 (Del. 2006).  Although plaintiff here alleges that a better transaction was available than the TRCLP Investment, the Complaint does not allege any facts indicating that the $131 million consideration paid by TRCLP was "insufficient," so as to make the stake of other stockholders less valuable.  To the contrary, as plaintiff acknowledges, virtually none of Centerline's public stockholders took the opportunity offered them to purchase the same preferred stock on the same "sweetheart" terms as TRCLP.  (*See* Cplt. ¶ 62.)  Indeed, given the $10.75 conversion price of the preferred stock (Cplt. ¶¶ 10, 56), and Centerline's current market price of $2.92 (as of the May 12, 2008 market closing, *see* Rosen Dec., Ex. F), conversion to common stock by TRCLP would be very costly.

*Third*, plaintiff cannot overcome the defects in his dilution claim by asserting, as he does, that he had "rights to vote on the conversion feature of preferred shares," which defendants "frustrated" by enabling shareholders who were concerned about dilution the ability to buy preferred stock on exactly the same terms as TRCLP, through the Rights Offering (Cplt. ¶¶ 93).  As plaintiff acknowledges, the New York Stock Exchange provided "confirmation . . . that the proposed Rights Offering would eliminate the need for a shareholder vote." (Cplt. ¶ 59).  Nor does the Complaint allege any basis for concluding that defendants had any duty to procure stockholder approval once the Rights Offering was extended.

*Fourth*, on the face of the Complaint, it is inescapable that the remedy available to any stockholder who was concerned about dilution was acceptance of the Rights Offering. Plaintiff attempts to overcome this dispositive response to his claim by asserting that the Rights Offering was "illusory," because stockholders did not have "the 'due diligence' information Plaintiffs and the Class needed to evaluate Centerline's financial condition and prospects." (Cplt. ¶¶ 92-93.) But plaintiff identifies no basis for any duty to disclose "due diligence" information to the public. While certain stockholders may have wanted to "evaluate Centerline's financial condition and prospects" in connection with the preferred stock offering (*id.*), there is no legal basis for the claim that stockholders who are offered publicly traded securities are entitled to all of the non public information — which is often commercially sensitive — furnished to a purchaser in a private placement, who is doing significant non-public due diligence before investing.[17] *See In re CheckFree Corp. S'holders Litig.*, C.A. No. 3193-CC (Del. Ch. Nov. 1, 2007), slip op. at 5-8 (rejecting claim that management's projections, provided to the buyer and to the target's investment bank, should have been publicly disclosed, as well).

## C.     The Complaint Does Not State a Claim for Waste.

Plaintiff purports to assert a claim for corporate waste, predicated on the allegation that defendants "have unreasonably and unnecessarily caused Centerline to expend hundreds of millions of dollars of corporate assets to the extreme detriment of the Company." (Cplt. ¶ 96.) Plaintiff's allegations do not satisfy the demanding standard for stating a corporate waste claim under Delaware law. To survive a motion to dismiss, a Complaint must set forth specific facts that, if accepted as true, would establish that the transaction was "so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate

---

[17] The Complaint makes no reference to the updated financial information contained in the prospectus for the Rights Offering.

consideration." *Brehm*, 746 A.2d at 263.  A waste claim will lie only upon a finding that a challenged transaction "either served no purpose or was . . . completely bereft of consideration." *Criden* v. *Steinberg*, Civ. A. No. 17082, 2000 WL 354390, at *3 (Del. Ch. Mar. 23, 2000).[18] This standard is "obviously an extreme test, very rarely satisfied by a shareholder plaintiff." *Steiner* v. *Meyerson*, Civ. A. No. 13139, 1995 WL 441999, at *1 (Del. Ch. July 19, 1995).  In fact, Delaware courts characterize it as "the rarest [cause of action] of all—and indeed like Nessie, possibly non existent." *Id.* at *5.

The Complaint in this case is barren of allegations sufficient to satisfy this extraordinary standard.  While the Complaint asserts that Centerline has expended "hundreds of millions of dollars of corporate assets" as a consequence of actions alleged in the Complaint (Cplt. ¶ 96.), it alleges no facts whatsoever to support that conclusion.  To the contrary, the *facts* alleged in the Complaint reflect "hundreds of millions of dollars" of cash *coming into* Centerline's coffers. (*See* Cplt. ¶¶ 9-10.)  While the Court must "accept as true all of the factual allegations contained in the complaint" on this motion, it need not accord "a presumption of truthfulness" to "[l]egal conclusions, deductions or opinions couched as factual allegations," such as plaintiff's unsupported assertion that defendants "have unreasonably and unnecessarily caused Centerline to expend hundreds of millions of dollars of corporate assets."  *Reinhardt* v. *Wal-Mart Stores, Inc.*, No. 07 Civ. 8233 (SAS), 2008 WL 1781232, at *2 (S.D.N.Y. April 18, 2008) (Scheindlin, J.) (citations and footnote omitted).

**D.     The Complaint Does Not State a Claim for Unjust Enrichment.**

Under Delaware law, a plaintiff stating a claim for unjust enrichment must show (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment,

---

[18]  *See also Brehm*, 746 A.2d at 263 (waste claims are "confined to unconscionable cases where directors irrationally squander or give away corporate assets.").

(4) the absence of justification, and (5) the absence of a remedy provided by law. *Cantor Fitzgerald, L.P.* v. *Cantor*, 724 A.2d 571, 585 (Del. Ch. 1998) (citation omitted). Plaintiff has not adequately pleaded these elements.

*First*, while plaintiff asserts (in the Fourth Cause of Action) that *all defendants* were "unjustly enriched" by their "breaches of the duty not to engage in self-dealing and interested transactions" (Cplt. ¶ 99), the Complaint does not identify any economic benefit of any kind flowing to at least eight of the defendants as a result of anything alleged in the Complaint. (*See supra pg.* 6.) That alone is sufficient to dispose of any unjust enrichment claim against defendants Cotton, Dolan, Meister, Gantcher, Halperin, Loverd, Roberts and White.

*Second*, even as to Messrs. Ross and Blau, who are alleged (in the Fifth Cause of Action) to have "acquired, through the Related Companies, preferred stock at a price below the true market value of the stock " (Cplt. ¶ 101), plaintiff alleges no facts indicating how the Corporation was "impoverished" by the transaction. After all, TRCLP is paying $131 million for the shares – new cash flowing in to the Company, and hardly an "impoverishment."[19]

*Third*, plaintiff has not even attempted to plead the "absence of an adequate remedy at law," and there is no apparent reason why monetary damages would be an inadequate remedy if plaintiff were to establish any of the breaches of duty he alleges.[20]

---

[19] Moreover, the claim of unjust enrichment is untenable with respect to Messrs. Ross and Blau because, as plaintiff himself concedes, all public shareholders were offered the right to acquire the preferred shares on the exact same terms that had been offered to TRCLP (Cplt. ¶ 62). Thus, Messrs. Ross and Blau received no benefit not equally available to all shareholders

[20] Nor is it apparent how "restitution," which plaintiff demands, could benefit the Company, since return of the convertible preferred stock would require Centerline to return the $131 million it received for that stock — which is clearly worth far *less* than that today, whatever its alleged value at the time it was purchased and sold (*see supra pp.* 17-18).

## IV.
## PLAINTIFF'S CLAIMS ARE PREEMPTED BY SLUSA.

There appears to be no dispute that this case is a class action "covered" by the Securities Litigation Uniform Standards Act ("SLUSA")[21] – "in which damages are sought on behalf of more than 50 people" – and involves a "covered" security – "one traded nationally and listed on a regulated national exchange." *Merrill Lynch*, 547 U.S. at 83.  Nor can there be any doubt that plaintiff's class claims allege "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security," given the Complaint's repeated allegations that defendants made "false and misleading statements and omissions" to stockholders, supposedly causing harm to the putative class in the form of a "liar's discount" on Centerline's common stock, which is traded on the New York Stock Exchange.  (Cplt. ¶ 39(iii).)[22]

Accordingly, plaintiff's class action claims are preempted unless he can rely on SLUSA's exception for covered class actions involving "the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer" or "any recommendation, position, or other communication with respect to the sale of securities of an

---

[21]    *See* 15 U.S.C. § 78bb(f)(1) ("[n]o covered class action based upon the statutory or common law of any State . . . may be maintained in any State or Federal court by any private party alleging . . . a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security. . . .")  The statutory reference to "purchase or sale" of a covered security does not remove the present case, involving a class of "holders,"  from the preemptive effect of SLUSA.  As the Supreme Court has held, "[f]or purposes of SLUSA pre-emption," the distinction between holders and purchasers/sellers is "irrelevant."  *Merrill Lynch* v. *Dabit*, 547 U.S. 71, 88 (2006) (holder claim alleging "fraudulent manipulation of market prices . . . unquestionably qualifies as fraud 'in connection with the purchase or sale' of securities . . .").

[22]    *See also* Cplt. ¶ 5 (alleging false statements in SEC filings); ¶¶ 6-7 (alleging misleading statements on analyst calls); ¶ 81 ("Development of the claims in this case increases defendants' exposure to the securities fraud claims" and  "the allegations alleged herein as a basis for plaintiffs' claims of breach of fiduciary duty also support claims for violation of the federal securities laws"); ¶¶ 84-85 (Defendants "caused the Company to give shareholders a false impression about the Company's current status and plans" and "failed to exercise due care to permit the violation of the federal securities laws").

issuer that . . . concerns decisions of . . . equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights." 15 U.S.C. § 78bb(f)(3)(A)(ii). Plaintiff cannot do so:

*First*, the exception on its face does not apply to any claim based on the alleged concealment of the Company's plans to sell its bond portfolio, reduce its dividend and transform itself into a fund manager, as none of those actions involved either the purchase or sale of securities by the issuer or any communication that concerned voting, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

*Second*, as for the claim that plaintiff asserts in connection with the TRCLP Investment, that transaction, too, involved no communication concerning voting, a tender, an exchange offer, or dissenters' or appraisal rights. To be sure, the TRCLP Investment appears to fall within the *literal* language of the first prong of the exception, insofar as it involved the "sale of securities by the issuer . . . exclusively . . . holders of equity securities of the issuer." But it seems obvious that Congress was *not*, in this provision, attempting to exempt from SLUSA's preemptive scope challenges to transactions involving the sale of securities to insiders (which is plaintiff's claim here). The exception cannot plausibly be read to target claims by public stockholders challenging corporate transactions with insiders, because the provision would be both extremely over-inclusive and under-inclusive. On the one hand, the language would be under-inclusive because an issuer's sale of a controlling interest to its own management at discount prices would *not* fall within the language of the exception, unless the management purchasers already happened to be "holders of equity securities." On the other hand, the provision would be over-inclusive because it carves out from SLUSA the sale of securities to existing holders even where

*none* of the holders are insiders and there is no claim that the transaction involves self-dealing at all.

Additionally, the exception applies *only* where the sale is "exclusively" to such equity holders. Thus, if the TRCLP Investment in this case happened to involve an additional purchaser who was not already a Centerline stockholder, such as a non-stockholder officer, the entire transaction would plainly be outside the scope of the SLUSA exception — even if the non-stockholder purchased only $100 worth of the convertible preferred stock.

Although this appears to be a question of first impression, we submit that the better view is that the SLUSA exception does not apply to stockholder claims challenging sales of securities to stockholders other than *themselves*. Indeed, the second prong of the exception illustrates that Congress conceived of the exception as focusing on claims by stockholders who themselves had a decision to make based on the allegedly false or inadequate disclosures. The second prong applies to "any recommendation, position, or other communication" with respect to the enumerated transactions, and the first prong directly captures "the purchase or sale of securities" offered to or from the stockholder class, even if there has been no "recommendation, position, or other communication" by the issuer involved.

This focus is borne out by the legislative history, which makes clear that this exception was added to SLUSA to address the concern that the statute as initially drafted "likely would have the effect of eliminating state causes of action arising out of" transactions in which "a corporate board of directors (or a majority stockholder) seeks stockholder action in connection with a tender offer, a vote of stockholders or action by written consent . . . or when the stockholder action involves the purchase or sale of a security (e.g., corporate programs to repurchase their own shares and tender offers)." *Prepared Testimony of SEC Chairman Arthur*

24

*Levitt before the House Commerce Committee, Subcommittee on Finance and Hazardous Materials, on H.R. 1689 -- Securities Litigation Uniform Standards Act Of 1997*, at 3 (May 19, 1998).

The two cases cited by plaintiff at the May 2, 2008 conference with the Court do not suggest any different result. *Indiana Elec. Workers Pension Trust Fund* v. *Millard*, No. 07 Civ. 172(JGK), 2007 WL 2141697 (S.D.N.Y. July 25, 2007), simply held that SLUSA's "voting their securities" element was satisfied for purposes of the SLUSA "carve out" where the plaintiff's allegations "relate[d] to communications concerning a shareholder vote to expand a stock option plan," *id.* at *8, a situation not presented here. And *Huang* v. *Reyes* arose out of defendants' alleged backdating of employee stock options, which plaintiffs alleged resulted in false and misleading statements in the proxy statements on which they had relied in voting to increase the authorized number of shares, No. C 07-5950 CRB, 2008 WL 648519, *1 (N.D. Cal. Mar. 6, 2008) (slip op.) — again, a voting situation, which is not presented here.

## CONCLUSION

For the reasons stated above, the Complaints should be dismissed with prejudice.

Dated: May 12, 2008

Respectfully submitted,

/s/ Richard A. Rosen

Richard A. Rosen
Daniel J. Leffell
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3000
Fax: 212-373-2359
rrosen@paulweiss.com

25

*Attorneys for Marc. D. Schnitzer, Robert L. Levy, and Leonard W. Cotton, Peter T. Allen, Robert J. Dolan, Robert A. Meister, Nathan Gantcher, Jerome Y. Halperin, Robert L. Loverd, Janice Cook Roberts and Thomas W. White*

   /s/ Peter L. Simmons
Peter L. Simmons, Esq.

FRIED FRANK LLP
New York, NY 10022
Tel: 212-859-8455
Fax: 212-859-4000
peter.simmons@friedfrank.com

*Attorneys for Defendants Stephen M. Ross   and Jeffrey T. Blau*

   /s/ Jennifer F. Beltrami
Jennifer F. Beltrami, Esq.
WOLFBLOCK, LLP
250 Park Avenue
New York, NY  10177
Tel:  212-883-4955
Fax:  212-672-1155
jbeltrami@wolfblock.com

*Attorneys for Centerline Holding Company*

Filed on behalf of Marc. D. Schnitzer, Robert L. Levy, and Leonard W. Cotton, Peter T. Allen, Robert J. Dolan, Robert A. Meister, Nathan Gantcher, Jerome Y. Halperin, Robert L. Loverd, Janice Cook Roberts, Thomas W. White, Stephen M. Ross, Jeffrey T. Blau, and Centerline Holding Company upon consent.

26