UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN CARFAGNO, derivatively on behalf of CENTERLINE HOLDING COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MARC D. SCHNITZER, et al.,<br><br>Defendants, | Case No. 1:08-cv-00912-SAS |

## DECLARATION OF BETH A. KASWAN

I, Beth A. Kaswan, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief.

1. I am an attorney duly licensed by the State of New York and a Partner with the law firm of Scott + Scott LLP, counsel for plaintiff John Carfagno. I submit this Declaration in support of Plaintiff's Opposition to Defendants' Motion to Dismiss.

2. Attached hereto as Exhibit "A" is a true and correct copy of excerpts from the Securities Purchase Agreement, dated as of January 25, 2008, between Centerline Holding Company and Related Special Assets LLC. The Agreement is an exhibit to a Form 8-K filed by nominal defendant Centerline Holding Company with the SEC on January 25, 2008 and is referenced in the Consolidated Amended Verified Complaint.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge and that this Declaration was executed on June 5, 2008.

BETH A. KASWAN

EX-10.1 2 ex10-1.htm SECURITIES PURCHASE AGREEMENT

Exhibit 10.1

# SECURITIES PURCHASE AGREEMENT

## DATED AS OF JANUARY 25, 2008

between

## CENTERLINE HOLDING COMPANY

and

## RELATED SPECIAL ASSETS LLC

Section 7.4    Distributions Upon Redemption. Upon redemption of the Purchaser's Convertible Preferred Shares pursuant to the Rights Offering, the Company hereby confirms that the Purchaser is entitled to accrued and unpaid distributions at an annual rate of 11.0% (computed on the basis of a 360-day year consisting of twelve 30-day months as provided in the Certificate of Designation) from the issue date thereof to, but excluding, the redemption date, whether or not declared by the Board, as set forth in the Certificate of Designation.

Section 7.5    Tax Allocations. The Company shall allocate Net Income or Net Loss (i) in accordance with the Trust Agreement and (ii) in the same manner to the holders of both the Convertible Preferred Shares and the 4.40% Cumulative Perpetual Convertible Community Reinvestment Act Preferred Shares, Series A-1.

### ARTICLE VIII
### Indemnification

Section 8.1    Indemnification Generally.

(1)    The Company shall indemnify the Purchaser and its Affiliates, and their respective directors, officers, shareholders and other equity holders, partners, members, attorneys, accountants, agents, advisors, representatives and employees and, as applicable, their respective heirs, successors and permitted assigns (each of the foregoing, in such capacity (as applicable), a "Purchaser Indemnified Party") from and against any and all losses, damages, liabilities, fines, costs, claims, charges, actions, proceedings, demands, judgments, settlement costs and expenses of any nature whatsoever (including, without limitation, reasonable attorneys' fees and out-of-pocket expenses), whether joint or several (any of the foregoing, a "Loss") resulting from any breach of a representation, warranty or covenant by the Company. The Purchaser shall indemnify the Company and its Affiliates, and their respective directors, trustees, officers, shareholders and other equity holders, partners, members, attorneys, accountants, agents, advisors, representatives and employees and, as applicable, their respective heirs, successors and permitted assigns (each of the foregoing, in such capacity (as applicable), a "Company Indemnified Party"; each Company Indemnified Party and Purchaser Indemnified Party, an "Indemnified Party") from and against any and all Losses resulting from any breach of a representation, warranty or covenant by the Purchaser.

(2)    The Company shall indemnify the Purchaser Indemnified Parties from and against any and all Losses to which any such Indemnified Party may become subject, arising out of or in connection with the transactions contemplated by this Agreement, or any Proceeding, including, without limitation, any shareholder derivative claim or any claim by a holder of Common Shares resulting from the allocation of "phantom income" to such holder as a result of the provisions of Section 7.5 of this Agreement, relating to any of the foregoing, regardless of whether any such Indemnified Party is a party thereto, only to the extent such matter is initiated by a third party or results from a matter initiated by a third party, and to reimburse each such Indemnified Party upon demand for any reasonable legal or other expenses incurred in connection with investigating or defending any of the foregoing, provided that the foregoing

17

indemnity will not, as to any Indemnified Party, apply to Losses to the extent they are found in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such Indemnified Party (provided that breaches of fiduciary duty themselves will be deemed not to constitute willful misconduct or gross negligence per se for purposes of this Section 8.1(2) unless there is an express finding by such court that said breach of fiduciary duty was the result of willful misconduct or gross negligence). Notwithstanding any other provision of this Agreement, no Indemnifying Party shall be liable for any indirect, special, punitive or consequential damages in connection with this Agreement, the Convertible Preferred Shares or Common Shares issuable upon conversion thereof or any related transaction or any Proceeding relating to any of the foregoing. The Company shall not be liable for any settlement of any Proceeding effected without the Company's prior written consent (which consent shall not be unreasonably withheld or delayed or conditioned), but if settled with the Company's prior written consent, or if there is a final judgment against an Indemnified Party in any such Proceeding, the Company agrees to indemnify and hold harmless each Indemnified Party in the manner set forth above.

Section 8.2    Indemnification Procedures For Third-Party Claims.

If a claim by a third party (including claims for breaches of fiduciary duties) is made against an Indemnified Party and such Indemnified Party intends to seek indemnity with respect thereto from the Company (in the case of a Purchaser Indemnified Party seeking such indemnity) or the Purchaser (in the case of a Company Indemnified Party seeking indemnity) (each of the Company or the Purchaser, as the case may be, in such capacity, an "Indemnifying Party"), such Indemnified Party shall give notice in writing as promptly as reasonably practicable to such Indemnifying Party of any Proceeding commenced against or by it in respect of which indemnity may be sought hereunder, but failure to so notify such Indemnifying Party shall not relieve such Indemnifying Party from any liability that it may have on account of this Article VIII, so long as such failure shall not have materially prejudiced the position of such Indemnifying Party. Upon such notification, the Indemnifying Party shall assume the defense of such Proceeding brought by a third party, and, after such assumption, the Indemnified Party shall not be entitled to reimbursement of any expenses thereafter incurred by it in connection with such Proceeding, except as described below. In any such Proceeding, any Indemnified Party shall have the right to retain its own counsel (including local counsel), but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (i) the Indemnifying Party shall have failed to promptly assume and thereafter conduct such defense, (ii) the Indemnifying Party and the Indemnified Party shall have mutually agreed to the contrary, (iii) in the reasonable determination of counsel for the Indemnified Party, representation of such Indemnified Party by counsel obtained by the Indemnifying Party would be inappropriate due to actual or potential conflicting interests between such Indemnified Party and any other party represented by such counsel in such proceeding. No Indemnifying Party, in the defense of a third-party claim, shall, except with the consent of the Indemnified Party, consent to entry of any judgment or enter into any settlement that does not include as an unconditional term thereof the giving by the claimant or plaintiff to such Indemnified Party of a release from all liability in respect of such claim. The Indemnifying Party shall not be liable for any settlement of any Proceeding effected without its written consent (which shall not be unreasonably withheld, delayed or conditioned by such

18

Indemnifying Party), but if settled with such consent or if there be final judgment for the plaintiff, the Indemnifying Party shall indemnify the Indemnified Party from and against any Loss by reason of such settlement or judgment. The Indemnifying Party will advance expenses to an Indemnified Party as reasonably incurred so long as such indemnified party shall have provided the indemnifying party with a written undertaking to reimburse the indemnifying party for all amounts so advanced if it is ultimately determined that the indemnified party is not entitled to indemnification hereunder (which shall include breaches of fiduciary duty if permitted above).

Section 8.3     <u>Survival of Representations, Warranties and Covenants</u>.

All representations and warranties and covenants contained in this Agreement or made in writing by or on behalf of the Company or the Purchaser in connection with the transactions contemplated by this Agreement shall survive, for the duration of any statutes of limitation applicable thereto, the execution and delivery of this Agreement, any investigation at any time made by the Company, the Purchaser or on such party's behalf, the purchase of the Convertible Preferred Shares by the Purchaser under this Agreement and any disposition of or payment on the Convertible Preferred Shares. All statements contained in any certificate or other instrument delivered to the Purchaser or the Company by or on behalf of the Company or the Purchaser pursuant to this Agreement shall be deemed representations and warranties of the Company or the Purchaser, respectively, under this Agreement._

## ARTICLE IX
### Miscellaneous

Section 9.1     <u>Expenses and Taxes</u>.

(1)     Each party to this Agreement shall bear its own respective costs and expenses incurred in connection with the preparation, execution and delivery of this Agreement and the agreements and transactions contemplated hereby, except that the Company shall reimburse the Purchaser for its reasonable legal fees and disbursements incurred in connection with the negotiation and documentation of the purchase of the Convertible Preferred Shares.

(2)     All transfer, stamp (including documentary stamp taxes, if any), and other similar taxes (including, in each case, any penalties, interest or additions thereto) with respect to the initial purchase and sale of the Convertible Preferred Shares, shall be borne by the Company.

Section 9.2     <u>Further Assurances</u>.

Each Purchaser and the Company shall duly execute and deliver, or cause to be duly executed and delivered, at its own cost and expense, such further instruments and documents and to take all such action, in each case as may be necessary or proper in the reasonable judgment of each Company or the Purchaser, respectively, upon the reasonable advice of counsel, to carry out the provisions and purposes of this Agreement and the other Documents.

19