UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
JOHN CARFAGNO, derivatively on behalf of : 
CENTERLINE HOLDING COMPANY, :
 :
 Plaintiff, : 08-cv-00912 (SAS)
 :
 vs. :
 :
MARC D. SCHNITZER, et al., :
 :
 Defendants. :
_____X

## NOTICE OF ERRATA TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

To correct several typographical errors in case citations and an inadvertent omission in the Table of Authorities for Plaintiff's Opposition to Defendants' Motion to Dismiss, which was electronically filed June 5, 2008, Plaintiff hereby submits this Errata with a corrected Table of Authorities and the corrected pages attached.

Dated:  June 11, 2008
        New York, New York

                                                s/_____
                                                Beth Kaswan (BK-0264)
                                                Judith Scolnick (JS-0872)
                                                SCOTT + SCOTT LLP
                                                29 West 57th Street
                                                New York, NY 10019
                                                Phone: (212) 223-6444
                                                Fax: (212) 223-6334
                                                Email: bkaswan@scott-scott.com
                                                       jscolnick@scott-scott.com

                                                David R. Scott (DS-8053)
                                                SCOTT + SCOTT LLP
                                                108 Norwich Ave.
                                                P.O. Box 192

        Colchester, CT 06415
        Phone: (860) 537-5537
        Fax: (860) 537-4432
        Email: drscott@scott-scott.com

        Walter W. Noss
        SCOTT + SCOTT LLP
        12434 Cedar Road, Suite 12
        Cleveland Heights, OH 44106
        Phone: (216) 229-6088
        Fax: (216) 229-6092
        Email: wnoss@scott-scott.com

*Counsel for John Carfagno*

**TABLE OF AUTHORITIES**

**Cases**

*Andreae v. Andreae*, 1992 WL 43924 (Del. Ch. March 3, 1992) ...................................................... 6
*Arnold v. Society for Sav. Bancorp, Inc.*, 650 A.2d 1270 (Del. 1994) .......................................... 21
*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) ................................................................. 5, 6, 10, 11
*Bell Atlantic v. Twombly*, 127 S.Ct. 1955 (2007) ............................................................................. 4
*Blasius Indus., Inc. v. Atlas*, 564 A.2d 651 (Del. Ch. 1988) ........................................................ 13
*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ................................................................... 5, 7, 10, 24
*Brudno v. Wise*, 2003 WL 1874750 (Del. Ch. April 1, 2003) .................................................. 22, 23
*Buckley v. O'Hanlon*, 2007 WL 956947 (D. Del. March 28, 2007) .............................................. 13
*California Public Employees' Retirement System v. Coulter*, 2002 WL 31888343
    (Del. Ch. Dec. 18, 2002) ............................................................................................................ 8
*Emerald Partners v. Berlin*, 726 A.2d 1215 (Del. 1999) .............................................................. 12
*Erickson v. Pardus*, 127 S.Ct. 2197 (2007) .................................................................................... 5
*Gentile v. Rossette*, 906 A.2d 91 (Del. Supr. 2006) ............................................... 15, 16, 17, 19, 22
*Grace v. Rosenstock*, 1986 WL 2709 (E.D.N.Y. March 6, 1986) ................................................. 15
*Heineman v. Datapoint*, 611 A.2d 950 (Del. 1992) ........................................................................ 5
*In re CheckFree Corp. S'holders Litig.*, 2007 WL 3262188 (Del. Ch. Nov. 1, 2007) .................. 21
*In re Luken Inc. Shareholders Litig.*, 757 A.2d 720 (Del. Ch. 1999) ........................................... 12
*In re Oracle Corp. Derivative Litig.*, 824 A.2d 917 (Del. Ch. 2003) ............................................. 8
*In re Par Pharm. Inc. Sec. Litig.*, 733 F.Supp. 668 (S.D.N.Y. 1990) ........................................... 21
*In re Staples Inc. Shareholders Litig.*, 792 A.2d 934 (Del. Ch. 2001) ........................................ 21
*In re The Limited, Inc. S'holders Litig.*, 2002 WL 537692 (Del. Ch. Mar. 27, 2002) .................. 8, 9
*In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27 (Del. Supr. 2006) ................................ 10, 12
*In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275 (Del.Ch. 2003) ....................................... 13
*Levine v. Smith*, 591 A.2d 194 (Del. 1991) .......................................................................... 5, 6, 11
*Lewis v. Fuqua*, 502 A.2d 962, (Del. Ch. 1985) .......................................................................... 8, 9
*Lynch v. Vickers Energy Corp.*, 383 A.2d 278 (1977) ................................................................. 21
*Malone v. Brincat*, 722 A.2d 5 (Del. 1998) .................................................................................. 20
*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006) ................................. 19
*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs., Inc.*, 854 A.2d 121
    (Del. Ch. 2004) ......................................................................................................................... 21
*O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902 (Del. Ch. 1999) .................................... 13
*Pogostin v. Rice*, 480 A.2d 619 (Del. Supr. 1984) ......................................................................... 7
*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ............................................................................ 5, 6
*Ryan v. Aetna Life Ins.*, 765 F.Supp. 133 (S.D.N.Y. 1991) .......................................................... 14
*Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007) ...................................................................... 10, 24
*Sample v. Morgan*, 914 A.2d 647 (Del. Ch. 2007) ....................................................................... 24
*Saunders v. Wang*, 1999 WL 1044880 (Del. Ch. Nov. 8, 1999) ................................................... 12
*Schock v. Nash*, 732 A.2d 217 (Del. Supr. 1999) ........................................................................ 25
*Spielman v. Merrill Lynch Pierce, Fenner & Smith*, 332 F.3d 116 (2d Cir. 2003) ....................... 18
*Spiegel v. Buntrock*, 571 A.2d 767 (Del. Supr. 1990) ................................................................... 6
*Steiner v. Meyerson*, 1995 WL 441999 (Del. Ch. July 19, 1995) .................................................. 6
*Superior Partners v. Chang*, 471 F. Supp. 2d 750 (S.D. Tex. 2007) ........................................... 18
*Teachers' Retirement System v. Aidinoff*, 900 A.2d 654 (Del. Ch. 2006) ................................... 25

*Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212 (3d Cir. 2007) ........................................22
*Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. Supr. 1983)............................................................7

**Statutes**
15 U.S.C. § 78bb....................................................................................................................17, 18, 19

change the notion that "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint." *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007).

I.   **The CAC Adequately Pleads Demand Futility.**

Delaware law excuses demand as futile "where a reasonable doubt exists that the board has the ability to exercise its managerial power, in relation to the decision to prosecute, within the strictures of its fiduciary obligations." *Heineman v. Datapoint*, 611 A.2d 950, 952 (Del. 1992). The test of demand futility under *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), *overruled on other grounds sub nom*. *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000), applies to this case since a demand to prosecute on behalf of the Company would have to be considered by the identical Board that took the action challenged here, and the CAC is directed at specific Board actions and decisions rather than a failure to act. *See Rales v. Blasband*, 634 A.2d 927, 933-34 (Del.1993) ("[A] court should not apply the *Aronson* test for demand futility where the board that would be considering the demand did not make a business decision which is being challenged in the derivative suit."). Under the *Aronson* rule, demand is excused if a reasonable doubt is created that: (1) the directors were disinterested and independent or; (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. *Aronson*, 473 A.2d at 814; *see also Brehm*, 746 A.2d at 256. "On either showing [of reasonable doubt], it may be inferred that the Board is incapable of exercising its power and authority to pursue the derivative claims directly." *Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991) *overruled on other grounds by Brehm, see supra*.

    **A.   Demand Is Futile Because The CAC Alleges Particular Facts That Cast A Reasonable Doubt That A Majority Of The Board Were Disinterested And Independent.**

voting rights, . . . that suffuse [Delaware] law." *Blasius Indus., Inc. v. Atlas*, 564 A.2d 651, 660 n.2 (Del. Ch. 1988). The Chancery Court has held in *Blasius* that where boards of directors deliberately employ legal strategies either to frustrate or completely disenfranchise a shareholder, "the board bears a heavy burden of demonstrating a compelling justification for such action." *Id*. at 661. Therefore, the defendant Board is not entitled to the usual deference accorded its decisions under the Delaware business judgment rule, where as here there is a well-founded allegation that the Board undertook the Rights Offering primarily to defeat the shareholder's right to vote. Since the bond securitization straight through to the Rights Offering are all of one piece and the Rights Offering was undertaken primarily to defeat the public shareholder's right to vote on the TRCLP Deal, then none of the transactions challenged in this lawsuit are entitled to the presumption of business necessity.

Moreover, as discussed *supra*, the business judgment rule presumption is rebutted, when a plaintiff pleads particularized facts sufficient to raise a reason to doubt that the action was taken in good faith or on an informed basis. *In re Walt Disney Co. Deriv. Litig*., 825 A.2d 275, 286 (Del.Ch. 2003). Such doubt is raised when "directors consciously disregard visible 'red flags.'" *Buckley v. O'Hanlon*, 2007 WL 956947, at *5 (D. Del. March 28, 2007) (citations omitted). None of the defendant Trustees can credibly deny that the circumstances surrounding the TRCLP Deal were red flags that were waved in their face. It was not an insignificant transaction. The deal represented a $131 million transaction with a related party, the major shareholder of the Company. The SEC rules and regulations are clear that transactions with related parties require heightened scrutiny. The dividend payable to Related increased substantially, and apparently inexplicably, over that first negotiated with Morgan Stanley, Goldman Sachs and indeed, Related. (CAC ¶56). A tender offer originally considered to

13

support the share price was inexplicably abandoned. (CAC ¶¶14, 56). Apparently no action was taken to prevent the stock price from going into the anticipated free-fall. The Chief Financial Officer opined that the preferred stock transaction was "very expensive equity". The side letter agreement that indemnified individually defendants Blau and Ross from all "legal actions . . . filed by public shareholders of the Company challenging the Investment" was at the very least unusual. All these factors warranted further inquiry. (CAC ¶56). Despite these conspicuous "red flags" that the best interests of Centerline were perhaps being compromised by the TRCLP Deal, the Board took no steps to prevent or remedy the situation, and that failure to take any action resulted in substantial Company losses.

## II. Plaintiff's Class Claim Does Not Present A Conflict With His Derivative Claims, Properly States A Claim For Relief Under Controlling Delaware Precedent, And Falls Squarely Within The "Delaware Carve Out" Exceptions To SLUSA.

### A. There is No Real Conflict.

Defendants' contention that either Plaintiff's derivative claims or his direct claim must be dismissed because of an "impermissible conflict of interest" reflects a misunderstanding of the nature of Plaintiff's direct claim and a misreading of the Second Circuit law. While there is no doubt that the prerequisites of "adequate class representative" under Rule 23(a) and that a plaintiff in a derivative action "fairly and adequately represent the interests of the shareholders", under Rule 23.1 require a Court and the parties to be vigilant of conflicts of interest, neither the Second Circuit nor Delaware law have endorsed a *per se* rule that prohibits a plaintiff from pursuing simultaneous direct and derivative actions. *See, e.g., Ryan v. Aetna Life Ins.* 765 F. Supp. 133 (S.D.N.Y. 1991). More importantly, even those cases which do find a conflict generally address the situation where a class of purchasers or sellers of stock must elect between the derivative case and the class case because the potential conflict is readily apparent.

14

creating federal jurisdiction and venue for specified types of state securities fraud claim." *Speilman v. Merrill Lynch Pierce, Fenner & Smith*, 332 F.2d 116, 123 (2d Cir. 2003) (emphasis in the original). SLUSA contains a savings clause, known as the "Delaware carve-out" exception, which preserves certain "covered class actions.[1] Under Section 78bb(f)(3)(A)(ii), a class action based upon the statutory or common law of the State in which the issuer is incorporated may be maintained if it involves:

> (I)   the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer, or
> (II)  any recommendation, position or other communication with respect to the sale of any issuer that (aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights."

The Defendants acknowledge that the TRCLP Deal falls within the literal language of the first prong of the exception, in that it involved a "sale of securities by the issuer . . . exclusively to holders of equity securities of the issuer.[2] Undeterred by the clear statutory language of SLUSA, Defendants ask this Court to graft a completely unwarranted "exception to the exception" to preempt precisely the actions, such as that brought by Plaintiff here, that Congress intended to preserve. The policy arguments devised by the Defendants in their request to this Court to re-draft the statute are equally misguided. For example, the exception was clearly

---

[1] "The 'Delaware carve-out' nomenclature comes from *Malone v. Brincat*, 722 A.2d 5 (Del. 1998), a Delaware case in which the court described the savings provisions under 15 U.S.C. §78bb(f)(3) as being particularly applicable to Delaware law and, therefore, described them as "Delaware carve-outs." *Id.* at 13.

[2] The TRCLP transaction is "part and parcel" of the securitization of bonds, and certainly of the Rights Offering. The SLUSA provisions direct a district court to examine a lawsuit in its entirety. Therefore if the TRCLP transaction falls within the Delaware carve out exception, the entire class claim, must survive. *See, e.g., Superior Partners v. Chang*, 471 F. Supp. 2d 750 (S.D. Tex. 2007).

duty to shareholders to exercise due care, good faith and loyalty. It follows *a fortiori* that when directors communicate publicly or directly with shareholders about corporate matters the *sine qua non* of directors' fiduciary duty to shareholders is honesty." (emphasis added). *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs., Inc.*, 854 A.2d 121, 150 (Del. Ch. 2004); *In re Par Pharm. Inc. Sec. Litig.*, 733 F.Supp. 668, 675 (S.D.N.Y. 1990).

The CAC alleges several instances where the public shareholders were told untruths or half truths by the Company. For instance, when asked if the Company had considered taking the bonds off its balance sheet less than two months before the Freddie Mac deal close, defendant Schnitzer stated the Company was merely "thinking about" this option when in actuality it was well into serious negotiations with Freddie Mac. (CAC ¶¶7, 8). These half truths and untruths state a valid cause of action for breach of fiduciary duties of loyalty, good faith and due care under Delaware law.

Similarly, while the Plaintiff agrees that there is no obligation for a director to disclose to public stockholders *all* of the information furnished to a purchaser in a private placement and the CAC does not claim breach of any such an obligation, there is, however, a long line of Delaware case law establishing an affirmative fiduciary duty on the part of a Delaware company's board to give stockholders financial information material to their decision. *See In re Staples Inc. Shareholders Litig.*, 792 A.2d 934, 953-55 (Del. Ch. 2001). "Stockholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely." *In re CheckFree Corp. S'holders Litig.*, 2007 WL 3262188, at *2 (Del. Ch. Nov. 1, 2007)(citation omitted); *see also Lynch v. Vickers Energy Corp*, 383 A.2d 278 (1977); *Arnold v. Society for Sav. Bancorp, Inc.* 650 A.2d 1270, 1280 (Del 1994).

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2008, the foregoing Notice of Errata to Plaintiff's Opposition To Defendants' Motion To Dismiss was filed electronically with the Court's Case Management/Electronic Case Files (CM/ECF) docketing system.  Notice of this filing will be sent to all parties by operation of the CM/ECF system.  Parties may access this filing through the CM/ECF system.

<u>s/</u>
Beth Kaswan (BK-0264)
SCOTT + SCOTT LLP
29 West 57th Street, 14th Floor
New York, NY  10019
Phone:  212-223-6444
Fax: (212) 223-6334

*Counsel for John Carfagno*