UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN CARFAGNO, derivatively on behalf of CENTERLINE HOLDING COMPANY,<br><br>                               Plaintiff,<br><br>               v.<br><br>MARC D. SCHNITZER, *et al.*,<br><br>                            Defendants. | 08-CV-912-SAS |
| TONY BROY, derivatively and on behalf of Nominal Defendant CENTERLINE HOLDING COMPANY,<br><br>                               Plaintiff,<br><br>               v.<br><br>JEFF T. BLAU, *et al.*,<br><br>                            Defendants. | 08-CV-1971-SAS |

### ANSWER OF NOMINAL DEFENDANT CENTERLINE HOLDING COMPANY TO CONSOLIDATED AMENDED VERIFIED COMPLAINT

        Nominal defendant Centerline Holding Co. ("Centerline"), by and through its attorneys, submits its Answer to the Consolidated Amended Verified Complaint (the "Amended Complaint"), as follows:

        1.        Centerline denies the allegations set forth in Paragraph 1, except admits that Plaintiffs Carfagno and Broy purported to bring an action as described in Paragraph 1 (and that Plaintiff Broy was dismissed without prejudice to all parties on May 9, 2008); admits that defendants Marc D. Schnitzer, Stephen M. Ross, Jeff T. Blau, Leonard W. Cotton, Robert J. Dolan, Nathan Gantcher, Jerome Y. Halperin, Robert L. Loverd, Robert A. Meister and Thomas W. White are members of Centerline's Board of

Trustees; and admits that Janice Cook Roberts was a member of Centerline's Board of Trustees from 2003 until June 2008.

2.      Centerline admits the allegations set forth in Paragraph 2.

3.      Centerline denies the allegations set forth in Paragraph 3, except Centerline admits that it is a Delaware statutory trust that has various subsidiaries, and was formerly known as CharterMac; admits that it and/or its subsidiaries engage in various activities with a core focus on the real estate sectors, and (among others), manage various investment funds, and provide capital solutions to developers and owners of properties, as well as investment products to investors; and Centerline respectfully refers the Court to the April 6, 2007 Form 8-K referenced in footnote 1 in Paragraph 3 for its contents.

4.      Centerline denies the allegations set forth in Paragraph 4, except admits that on March 12, 2007, it issued a press release announcing its financial results for the fourth quarter and full year ending December 31, 2006; and respectfully refers the Court to the document referenced in Paragraph 4 for its contents.

5.      Centerline denies the allegations set forth in Paragraph 5, except admits that on March 12, 2007, it issued a press release announcing its financial results for the fourth quarter and full year ending December 31, 2006; admits that on March 12, 2007, it filed an annual report on Form 10-K with the Securities and Exchange Commission (the "SEC"), summarizing its financial results for the year ending December 31, 2006; and respectfully refers the Court to the documents referenced in Paragraph 5 for their complete and accurate contents.

6.      Centerline denies the allegations set forth in Paragraph 6, that the transcript of the August 9, 2007 analyst conference call indicates that Marc Schnitzer

made the statements quoted in Paragraph 6; and Centerline respectfully refers the Court to the transcript of the August 9, 2007 conference call referenced in Paragraph 6 for its complete and accurate text.

7.        Centerline denies the allegations set forth in Paragraph 7, except admits that the transcript of the November 8, 2007 analyst conference call indicates that Nicole Jacoby and Marc Schnitzer made the statements quoted in Paragraph 7 (minus the emphasis added in Paragraph 7); and respectfully refers the Court to the transcript of the November 8, 2007 analyst conference call referenced in Paragraph 7 for its complete and accurate text.

8.        Centerline denies the allegations set forth in Paragraph 8.

9.        Centerline denies the allegations set forth in Paragraph 9, except admits that on December 28, 2007, it issued a press release announcing that it had sold its "2.8 billion tax-exempt affordable housing bond portfolio" to Freddie Mac, and announcing that its annual dividend for 2007 would be set at $0.60 per share.  Centerline further admits that it announced on December 28, 2007 that it had received a $131 million equity investment commitment from Related Special Assets, LLC ("RSA") in exchange for approximately 12.2 million shares of convertible preferred shares to be issued, and bearing a dividend of 11%.  Centerline further admits that the December 28, 2007 press release included the language quoted in Paragraph 9 (but not the emphasis added in Paragraph 9), and respectfully refers the Court to the December 28, 2007 press release quoted in Paragraph 9 for its complete and accurate text.

10.        Centerline denies the allegations set forth in Paragraph 10, except admits that the December 28, 2007 press release it issued included the language quoted in Paragraph 10 (but not the emphasis added in Paragraph 10); and Centerline respectfully

refers the Court to the December 28, 2007 press release quoted in Paragraph 10 for its complete and accurate text.

11.     Centerline denies the allegations set forth in Paragraph 11, except admits that the transcript of the December 28, 2007 analyst conference call indicates that Mr. Schnitzer did make the statement quoted in Paragraph 11 (minus the emphasis added in Paragraph 11); and Centerline respectfully refers the Court to the transcript of the December 28, 2007 analyst conference call quoted in Paragraph 11 for its complete and accurate text.

12.     Centerline denies the allegations set forth in Paragraph 12, except admits that the transcript of the December 28, 2007 analyst conference call indicates that Tony Howard of J.J.B. Hilliard, W.L. Lyons, Inc. made the statements quoted in Paragraph 12 (minus the emphasis added in Paragraph 12); and Centerline respectfully refers the Court to the transcript of the December 28, 2007 analyst conference call quoted in Paragraph 12 for its complete and accurate text.

13.     Centerline denies the allegations set forth in Paragraph 13, except admits that the transcript of the December 28, 2007 analyst conference call indicates that Matt West made the statements quoted in Paragraph 13 (minus the emphasis added in Paragraph 13); and Centerline respectfully refers the Court to the transcript of the December 28, 2007 analyst conference call for its complete and accurate text.

14.     Centerline denies the allegations set forth in Paragraph 14.

15.     Centerline denies the allegations set forth in Paragraph 15.

16.     Centerline denies the allegations set forth in Paragraph 16, except admits that subsequent to the December 28, 2007 analyst conference call, Centerline management, in conjunction with Centerline's Board of Trustees, began exploring the

possibility of conducting the Rights Offering; admits that the Rights Offering ultimately provided (among other things) that to the extent the convertible preferred shares at issue in the RSA transaction were not purchased by Centerline's shareholders in the Rights Offering, RSA would continue to hold those convertible preferred shares; and Centerline respectfully refers the Court to the prospectus for the Rights Offering for the complete terms of the offering.

17.     Centerline denies the allegations set forth in Paragraph 17, except admits that Plaintiff Peggy H. Off filed a complaint (entitled "Verified Derivative and Class Action Complaint") ("Off Complaint") in Delaware Chancery Court on January 15, 2008 ("*Off* case"); admits that the parties agreed on the general terms of a settlement on January 22, 2008, and discussed the same with the Chancery Court in a conference call on that date; admits that Centerline entered into the "Securities Purchase Agreement" with RSA on January 25, 2008; admits that RSA and Centerline executed a letter agreement on January 25, 2008 (an accurate copy of which is attached as Exhibit A to the Amended Complaint); and admits, upon information and belief, that Plaintiff John Carfagno filed a complaint (entitled "Verified Derivative Complaint") in this Court on January 25, 2008; and Centerline respectfully refers the Court to the documents referenced in Paragraph 17 for their contents.

18.     Centerline denies the allegations set forth in Paragraph 18, except admits that on March 7, 2008, it filed the prospectus for the Rights Offering; admits that the price of its common shares was $10.11 per share at market opening on December 28, 2007, and $4.05 per share at market closing on April 4, 2008; and respectfully refers the Court to the prospectus referenced in Paragraph 18 for the complete and accurate terms of the Rights Offering.

19.      Centerline denies the allegations in Paragraph 19, except admits that The Related Companies, L.P. ("TRCLP"), Morgan Stanley, and Goldman Sachs conducted due diligence on Centerline or had access to certain non-public financial information about Centerline; admits that its public shareholders were not provided non-public financial information in connection with the Rights Offering; and admits that 373,136 preferred shares (of approximately 11.2 million preferred shares) were purchased as part of the Rights Offering.

20.      Centerline, upon information and belief, denies that complete diversity exists with respect to Mr. Broy; and admits the remaining allegations set forth in Paragraph 20.

21.      Centerline admits the allegations set forth in Paragraph 21.

22.      Centerline admits the allegations set forth in Paragraph 22.

23.      Centerline denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23.

24.      Centerline denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24.

25.      Centerline denies the allegations set forth in Paragraph 25, except admits that it is a Delaware statutory trust with its principal place of business at 625 Madison Avenue, New York, NY 10022; and admits that its common shares are publicly traded on the New York Stock Exchange ("NYSE") under the symbol "CHC."

26.      Centerline denies the allegations set forth in Paragraph 26, except admits that Marc D. Schnitzer is a citizen of New York, has been a Managing Trustee of Centerline since 2003, joined CharterMac Capital in 1988, and has served as Centerline's President and CEO since March 14, 2006; admits that Mr. Schnitzer and Centerline

entered into an employment agreement dated February 1, 2007; admits that Mr. Schnitzer is chairman of the Board of Trustees of American Mortgage Acceptance Company ("AMAC"), a publicly traded real estate investment trust managed by Centerline; admits that as of December 31, 2007, Centerline owned approximately 10% of AMAC stock and had outstanding an $80 million line of credit to AMAC; admits that Marc Associates L.P. (wholly owned by Mr. Schnitzer) owns SCUs in a Centerline subsidiary; admits that Mr. Schnitzer was (among others) involved in Project Spinnaker and in the sale of Centerline's preferred convertible shares to RSA; and respectfully refers the Court to the documents referenced in Paragraph 26 for their contents.

27.     Centerline denies the allegations set forth in Paragraph 27, except it admits upon information and belief that Stephen M. Ross is a citizen of New York; admits that Mr. Ross has been a Managing Trustee of Centerline and Non-Executive Chairman of the Board of Trustees of Centerline since 1999; admits upon information and belief that Mr. Ross is the founder, Chairman, CEO, Managing General Partner of, and at one time, directly or indirectly, owned approximately 92% of TRCLP; admits upon information and belief that Related General II, L.P. ("Related II") is owned by The Related Companies, L.P.; admits that Related II and TRCLP combined owned approximately 27.4% of the common shares of Centerline as of April 24, 2008 (Centerline respectfully refers the Court to its Schedule 14A, filed June 12, 2008, for its contents); admits that Mr. Ross owns SCUs in a Centerline subsidiary; admits that Centerline and TRCLP have transacted with each other and have made co-investments in real estate-related investment opportunities; and respectfully refers the Court to the minutes of the May 7, 2007 meeting of the Audit Committee of Centerline's Board of Trustees for its contents; admits that Mr. Ross made an endowment of approximately

$100 million to the University of Michigan Business School; admits that according to the University of Michigan, the $100 million endowment was, as the time, the largest donation made to a business school, as well as the largest donation made to the University of Michigan. Centerline respectfully refers the Court to Centerline's Schedule 14A, filed April 23, 2007 ("2007 Proxy Statement") (referenced in Paragraph 27) for its complete and accurate contents.

28.     Centerline denies the allegations set forth in Paragraph 28, except it admits upon information and belief that Jeff T. Blau is a citizen of New York; admits that Mr. Blau has been a Managing Trustee of Centerline since 2003; admits that Mr. Blau is a member of the Investment Committee of Centerline's Board of Trustees; admits that Mr. Blau worked on the sale of Centerline's bond portfolio to Freddie Mac; admits upon information and belief that Mr. Blau is President of TRCLP and serves on the Board of Trustees of AMAC; admits that Mr. Blau serves on the board of Equinox Holdings, Inc. ("Equinox") admits that Equinox is an affiliate of TRCLP; respectfully refers the Court to Centerline's 2007 Proxy Statement (referenced in Paragraph 28) for its complete and accurate contents; and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 28.

29.     Centerline admits the allegations set forth in Paragraph 29.

30.     Centerline admits the allegations set forth in Paragraph 30.

31.     Centerline admits the allegations set forth in Paragraph 31.

32.     Centerline admits the allegations set forth in Paragraph 32, except denies that Mr. Halperin has served on the Equinox board since 2006.

33.     Centerline admits the allegations set forth in Paragraph 33.

34.     Centerline admits the allegations set forth in Paragraph 34.

35.     Centerline denies the allegations set forth in Paragraph 35, except admits that Defendant Janice Cook Roberts is a citizen of New York; admits that Ms. Cook Roberts was a member of Centerline's Board of Trustees from 2003 until June, 2008; and admits that its 2007 Proxy Statement states that Ms. Cook Roberts owns directly or beneficially 7,959 common shares of Centerline.

36.     Centerline admits the allegations set forth in Paragraph 36.

37.     The allegations in Paragraph 37 state legal conclusions to which no answer is required.   To the extent facts are alleged, Centerline denies the allegations set forth in Paragraph 37, except Centerline admits that Mr. Carfagno purports to bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of all Centerline shareholders who could have participated in the Rights Offering but did not, and excluding the defendants in this action and any persons or entities related to or affiliated with them.

38.     Centerline admits the allegations set forth in Paragraph 38.

39.     Centerline denies the allegations set forth in Paragraph 39.

40.     The allegations in Paragraph 40 state legal conclusions to which no answer is required.   To the extent facts are alleged, Centerline denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40; except Centerline denies that any shareholders' "ownership interests in Centerline were diluted as a result of the misconduct alleged herein."

41.     The allegations in Paragraph 41 state legal conclusions to which no answer is required.   To the extent facts are alleged, Centerline denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41.

42.     The allegations in Paragraph 42 state legal conclusions to which no answer is required.  To the extent facts are alleged, Centerline denies the allegations set forth in Paragraph 42.

43.     Centerline denies the allegations set forth in Paragraph 43, except admits that it is a Delaware statutory trust with multiple subsidiaries; admits that it is an alternative asset manager with a core focus on real estate and more than $12 billion of assets under management; admits that Centerline Capital Group (a subsidiary of Centerline) has four Business Groups, namely: (1) Commercial Real Estate (CMBS and Commercial Products, and Agency Lending Products); (2) Affordable Housing; (3) Portfolio Management; and (4) Credit Risk Products; admits that it earns investment income as well as fees in connection with its various activities; admits that it owned over $2.8 billion in tax exempt bonds until on or about December 27, 2007, when it sold most of its bond portfolio to Freddie Mac; and admits that prior to the Freddie Mac sale, it earned most of its income and cash flow from a positive spread between interest earned on its bond portfolio and the cost of financing its bonds.

44.     Centerline denies the allegations set forth in Paragraph 44, except admits that historically, many of its public shareholders were individual investors who upon information and belief were motivated to invest in it largely because of its annual dividend payments.

45.     Centerline denies the allegations set forth in Paragraph 45, except admits that according to the minutes of the March 14, 2007 meeting of its Board of Trustees, Mr. Schnitzer discussed Project Spinnaker, reported to the Board on his discussions with Morgan Stanley on Project Spinnaker; admits that the March 14, 2007 minutes indicate that Project Spinnaker "consisted of an analysis of the Company's

organizational and capitalization structure to maximize the Company's enterprise value"; and respectfully refers the Court to the minutes of the March 14, 2007 meeting of Centerline's Board of Trustees for their complete and accurate text.

46.    Centerline denies the allegations set forth in Paragraph 46, except admits that it conducted "roadshows" with potential institutional investors in May 2007, and that Ray Cameron and Stephanie Nieto (of Institutional Corporation Marketing) opined on Centerline's "unrealized value" to Messrs. Schnitzer and Cotton, as well as to Centerline employees Robert Levy and Hilary Ginsberg; admits that Mr. Cameron cited one investor's view that "investors are not as confident in their ability to look beyond dividend yield, thus making it harder for investors to take positions"; admits that Mr. Levy wrote an email on May 18, 2007 containing the quoted language attributed to him in Paragraph 46; and Centerline respectfully refers the Court to the documents referenced in Paragraph 46 for their complete and accurate text.

47.    Centerline denies the allegations set forth in Paragraph 47, except admits that by June 2007, its Asset Management Group had initiated a review of its sub-performing and non-performing affordable housing debt and equity investments.

48.    Centerline denies the allegations set forth in Paragraph 48, except admits that in July 2007, Morgan Stanley was serving as its financial advisor, and (among others) participated in formulating business strategies and preparing models for potential transactions contemplating a sale of Centerline's bond portfolio.

49.    Centerline denies the allegations set forth in Paragraph 49, except admits that as of September 11, 2007, Centerline's Asset Management Group had conducted a comprehensive and intensive impairment review of the company's entire tax-exempt bond portfolio (381 bonds totaling approximately $2.8 billion); admits that

Mr. Schnitzer discussed Project Spinnaker at a meeting of the Centerline Board of Trustees on September 11, 2007; and respectfully refers the Court to the minutes of the September 11, 2007 Board meeting referenced in Paragraph 49 for their contents.

50.    Centerline denies the allegations set forth in Paragraph 50, except admits that it owned 6.9% of AMAC's common shares of beneficial interest, and 41.2% of AMAC's 7.25% Series A Cumulative Preferred Shares, as of December 31, 2007 (5.9% and 41.2%, respectively, as of September 30, 2007), amounting to an aggregate ownership of over 10% as of December 31, 2007, assuming all preferred shares were converted into common shares (and respectfully refers the Court to AMAC's Form 10-Q, filed November 9, 2007, and form 10-K, filed March 31, 2008, for their contents); admits that in April, 2007, AMAC's revolving credit facility with Centerline was amended to (among others) increase AMAC's borrowing capacity from approximately $50 million to approximately $80 million; admits that AMAC faced liquidity challenges by October 2007 due to difficult market conditions; admits that Projects Spinnaker, Valencia, and Chelsea were presented to, and approved by, the Centerline Board of Trustees; admits that the Centerline Board of Trustees discussed "Project Chelsea" at a November 7, 2007 meeting; and respectfully refers the Court to the minutes of the November 7, 2007 meeting of the Centerline Board of Trustees referenced in Paragraph 50 for their contents.

51.    Centerline denies the allegations set forth in Paragraph 51, except admits that Hilary Ginsberg wrote the language quoted in Paragraph 51 in an email dated November 13, 2007; and respectfully refers the Court to the document quoted in Paragraph 51 for its complete and accurate text.

52.    Centerline denies the allegations set forth in Paragraph 52, except admits that an attachment to a November 28, 2007 email between Messrs. Schnitzer,

Cotton, Levy, Ms. Ginsberg, and representatives of Morgan Stanley, discussed investor communications strategy in connection with Project Spinnaker, including as topics to be covered with investors the following:   five-year goal for Return on Earnings; "earnings/growth projections, more information on change to dividend policy, more information on change to corporate structure" and more information on the tender offer; and admits that its public shareholders were not provided non-public financial information by Centerline in connection with the Rights Offering.  Centerline respectfully refers the Court to the document referenced in Paragraph 52 for its complete and accurate text.

53.     Centerline denies the allegations set forth in Paragraph 53, except admits that Mr. Schnitzer sent a memorandum to Centerline's Board of Trustees on November 25, 2007; admits that the memorandum summarized the background and features of the bond portfolio sale to Freddie Mac; and respectfully refers the Court to Mr. Schnitzer's November 25, 2007 memorandum to Centerline's Board of Trustees for its complete and accurate text.

54.     Centerline denies the allegations set forth in Paragraph 54, except admits that Morgan Stanley prepared presentation materials, dated November 29, 2007, for the Centerline Board of Trustees; admits that Morgan Stanley advised the Centerline Board of Trustees on (among others) the effects of a dividend cut on Centerline's stock price; and respectfully refers the Court to the documents quoted in Paragraph 54 for their complete and accurate text.

55.     Centerline denies the allegations set forth in Paragraph 55, and respectfully refers the Court to the document referenced in Paragraph 55 for its complete and accurate text.

56.     Centerline denies the allegations set forth in Paragraph 56, except admits that Mr. Schnitzer (among others) was working with Bear Stearns on Project Valencia, a planned third-party equity investment in Centerline convertible preferred shares; admits that it negotiated with Morgan Stanley and Goldman Sachs as potential investors in convertible preferred shares to be issued by Centerline; admits that Mr. Levy described a Morgan Stanley-proposal in connection with Project Valencia as "very expensive equity"; admits that Bear Stearns opined that Morgan Stanley's proposal, as well as the preliminary terms Goldman Sachs was willing to consider for a potential transaction with Centerline, were unattractive to Centerline; admits that Mr. Schnitzer described TRCLP's transaction offer as more attractive than that proposed by Morgan Stanley or discussed with Goldman Sachs; admits that the Centerline Board approved the sale of the convertible preferred to RSA, an affiliate of TRCLP, on December 19, 2007; admits that under the transaction terms, RSA was permitted to purchase approximately 11.2 million shares of Centerline's preferred stock at $11.70 per share with a conversion price of $10.75 per share at an 11% dividend rate; and admits that no tender offer to Centerline's common shareholders was conducted in connection with either the sale of Centerline's bond portfolio, Project Valencia, or the dividend reduction.

57.     Centerline denies the allegations set forth in Paragraph 57, except admits that Morgan Stanley and Goldman Sachs conducted "due diligence" of it in connection with their potential involvement in Project Valencia, and as a result had access to various non-public financial information about Centerline; admits that TRCLP and/or RSA, as a private investor in Centerline, had access to various non-public financial information about the company; admits that its public shareholders were not provided non-public financial information by it following the December 28, 2007

announcement or in connection with the Rights Offering; and respectfully refers the Court to the Rights Offering prospectus referenced in Paragraph 57 for its complete and accurate text.

58.     Centerline denies the allegations set forth in Paragraph 58.

59.     Centerline denies the allegations set forth in Paragraph 59, except admits that it began to discuss a Rights Offering subsequent to December 28, 2007; and admits that the NYSE confirmed to Centerline, on or about January 11, 2008, that in the event the proposed Rights Offering was held, the convertible preferred investment by RSA would not need to be subjected to a shareholder vote.

60.     Centerline denies the allegations set forth in Paragraph 60, except admits that the first derivative and class action lawsuit against Centerline in connection with any of the transactions announced on December 27, 2007, was the *Off* case, filed on January 15, 2008 in Delaware Chancery Court; admits that the first securities fraud class action suit in connection with any of the transactions announced on December 27, 2007, was filed in this Court on January 18, 2008; admits that the parties to the *Off* case reached a tentative settlement on January 22, 2008; admits that under the terms of the settlement Centerline would conduct the Rights Offering on terms agreed upon by Centerline and the *Off* plaintiff; and admits that under the terms of the settlement neither the individual defendants in the *Off* case nor Centerline would contest the *Off* plaintiff's counsel's request for attorney fees up to an amount of approximately $800,000; and Centerline respectfully refers the Court to the Stipulation of Settlement, March 4, 2008, in the *Off* case, for the terms of the proposed settlement.

61.     Centerline denies the allegations set forth in Paragraph 61, except admits that the Securities Purchase Agreement with RSA was executed on January 25,

2008; respectfully refers the Court to that document (referenced in Paragraph 61) for its complete and accurate text; and admits that Mr. Carfagno filed his original complaint in this action on January 25, 2008, and that he did not make a demand on Centerline's Board of Trustees to pursue the claims raised in this case.

62.     Centerline denies the allegations set forth in Paragraph 62, except it admits that it filed a prospectus for the Rights Offering on March 7, 2008; admits that the Rights Offering permitted its common shareholders to purchase over 11 million preferred shares on the same terms provided to RSA; admits that any shares not purchased in the Rights Offering were to be retained by RSA; admits that the Rights Offering closed on April 4, 2008 and that 373,136 shares were purchased as part of the Rights Offering; admits that its common stock price closed at approximately $4 a share on April 4, 2008; admits that its First Quarter 2008 Form 10-Q was filed on May 12, 2008; and respectfully refers the Court to the documents referenced in Paragraph 62 for their complete and accurate text.

63.     Centerline admits the allegations set forth in Paragraph 63.

64.     Centerline denies the allegations set forth in Paragraph 64.

65.     Centerline denies the allegations set forth in Paragraph 65.

66.     Centerline denies the allegations set forth in Paragraph 66.

67.     Centerline denies the allegations set forth in Paragraph 67.

68.     Centerline admits the allegations set forth in Paragraph 68.

69.     Centerline denies the allegations set forth in Paragraph 69, except admits that, as set forth in its 2007 Proxy, Messrs. Schnitzer, Ross, Blau, Cotton and White were not "independent" of Centerline within the meaning of Section 303A of the

Corporate Governance New York Stock Exchange Rules; and respectfully refers the Court to the 2007 Proxy for its complete and accurate text.

70.    Centerline denies the allegations set forth in Paragraph 70.

71.    Centerline denies the allegations set forth in Paragraph 71.

72.    Centerline denies the allegations set forth in Paragraph 72.

73.    Centerline denies the allegations set forth in Paragraph 73, except admits that Mr. Ross has been the Non-Executive Chairman since 1999; and admits that Mr. Blau has been a member of the Board of Trustees since 2003.

74.    Centerline denies the allegations set forth in Paragraph 74, except admits that on November 17, 2003, it acquired Related Capital Company ("RCC") (now known as Centerline Affordable Housing Advisors LLC); admits that RCC was indirectly majority-owned by TRCLP (and respectfully refers the Court to Centerline's Form 14A, filed May 8, 2003, for its contents); admits that it has various commercial dealings with TRCLP or entities affiliated with TRCLP; admits that it pays shared service fees to TRCLP pursuant to a shared services agreement; admits that the services provided include office management, payroll, human resources and other office services, and that the majority of the services are charged to Centerline at the direct cost incurred by TRCLP; admits that during 2006, it paid TRCLP approximately $620,000 for such services; admits that a subsidiary of TRCLP earned fees for performing property management services for various properties held in investment funds managed by Centerline; admits that such property management fees totaled $4.3 million in 2006, $3.2 million in 2005, $2.2 million in 2004, and $2.5 million in 2002; admits that during 2006, funds sponsored by Centerline acquired equity interests in three projects developed by affiliates of TRCLP, investing approximately $7.1 million, $7.5 million, and $10 million,

respectively, in the projects; admits that Mr. Ross serves on the Board of Equinox; and respectfully refers the Court to Centerline's Forms 14A, filed April 20, 2006 and April 23, 2007, and Centerline's Form 10-K, filed March 16, 2004, for their contents.

75.    Centerline denies the allegations set forth in Paragraph 75, except admits that Mr. Schnitzer is Chief Executive Office and President of Centerline, and (among others) worked on Projects Spinnaker and Valencia.

76.    Centerline denies the allegations set forth in Paragraph 76, except admits that Mr. Schnitzer was paid over $2,145,000 in total compensation for his service as CEO and President in 2006; admits that Centerline and Mr. Schnitzer entered into an employment agreement, dated February 1, 2007; respectfully refers the Court to the February 1, 2007 employment agreement for its complete and accurate contents; and admits that Mr. Schnitzer is chairman of the Board of Trustees of AMAC.

77.    Centerline denies the allegations set forth in Paragraph 77, except admits that Mr. Cotton has been a Managing Trustee and Vice Chairman of the Board of Centerline since 2006; admits that Mr. Cotton previously served as CEO of Centerline REIT (formerly ARCAP REIT, Inc.), which was acquired by Centerline in 2006; admits that Mr. Cotton was CEO and Chairman of the Board of Centerline REIT's predecessor REMICap; admits that Mr. Cotton received over $1,646,236 in compensation from August 15, 2006 to December 31, 2006; admits that Mr. Cotton currently has an employment agreement with Centerline to serve as a member of the Board of Trustees of Centerline; admits that pursuant to that agreement, Mr. Cotton's annual base salary is approximately $400,000, and he was granted an award of 255,003 restricted common shares (which vest over four years in four equal cumulative installments of 25% on each of the first four anniversaries of the grant date); respectfully refers the Court to the

employment agreement referenced in Paragraph 77 (and to Centerline's Form 14-A, filed April 23, 2007) for its complete and accurate text; and admits that Mr. Cotton is a member of Centerline's strategic planning committee.

78.     Centerline denies the allegations set forth in Paragraph 78; except admits that Mr. Dolan has been Dean of the University of Michigan Business School since 2001; admits that Mr. Dolan serves as the Stephen M. Ross Professor of Business at the University of Michigan, and chairs the University of Michigan's Development Subcommittee; admits that in September 2004, Mr. Ross made a $100 million endowment to the University of Michigan Business School, which was subsequently renamed the "Stephen M. Ross School of Business at the University of Michigan"; and admits that, according to the University of Michigan, the $100 million endowment was, at the time, the largest donation made to a business school, as well as the largest donation made to the University of Michigan.

79.     Centerline denies the allegations set forth in Paragraph 79, except admits that Mr. Halperin is a member of the Board of Trustees of Centerline, and has previously served on the board of Equinox; and admits that Equinox is an affiliate of TRCLP.

80.     Centerline denies the allegations set forth in Paragraph 80, except admits that Mr. White is a member of Centerline's Board of Trustees; and admits that Mr. White has worked as a paid consultant to Centerline since July 2001.

81.     Centerline denies the allegations set forth in Paragraph 81.

82.     Centerline repeats and re-alleges its responses to Paragraph 1 through 81 of the Amended Complaint.

83. Centerline denies the allegations set forth in Paragraph 83, except admits that the individual defendants are fiduciaries of Centerline and Centerline's public shareholders.

84. Centerline denies the allegations set forth in Paragraph 84.

85. Centerline denies the allegations set forth in Paragraph 85.

86. Centerline denies the allegations set forth in Paragraph 86.

87. Centerline denies the allegations set forth in Paragraph 87.

88. Centerline denies the allegations set forth in Paragraph 88.

89. Centerline denies the allegations set forth in Paragraph 89.

90. Centerline denies the allegations set forth in Paragraph 90, except admits that Plaintiffs purport to seek damages in this action.

91. Centerline repeats and re-alleges its responses to Paragraph 1 through 90 of the Amended Complaint.

92. Centerline denies the allegations set forth in Paragraph 92.

93. Centerline denies the allegations set forth in Paragraph 93.

94. Centerline denies the allegations set forth in Paragraph 94.

95. Centerline repeats and re-alleges its responses to Paragraph 1 through 94 of the Amended Complaint.

96. Centerline denies the allegations set forth in Paragraph 96.

97. Centerline denies the allegations set forth in Paragraph 97.

98. Centerline repeats and re-alleges its responses to Paragraph 1 through 97 of the Amended Complaint.

99. Centerline denies the allegations set forth in Paragraph 99.

100.     Centerline repeats and re-alleges its responses to Paragraph 1 through 99 of the Amended Complaint.

101.     Centerline denies the allegations set forth in Paragraph 101.

102.     Centerline denies the allegations set forth in Paragraph 102.


**WHEREFORE**, Centerline respectfully requests that the Court issue an Order:  (a) dismissing the Amended Complaint in its entirety and with prejudice; (b) granting its costs and disbursements; and (c) awarding it such other relief as the Court deems just and proper.


Dated: New York, New York
      July 15, 2007

Respectfully submitted,




/s/ Jennifer F. Beltrami
Jennifer F. Beltrami, Esq.
WOLFBLOCK, LLP
250 Park Avenue
New York, NY  10177
Tel:  212-883-4955
Fax:  212-672-1155
jbeltrami@wolfblock.com

*Attorneys for Centerline Holding Company*