**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN CARFAGNO, derivatively on behalf of CENTERLINE HOLDING COMPANY,<br><br>         Plaintiff,<br><br>    v.<br><br>MARC D. SCHNITZER, *et al.*,<br><br>         Defendants. | 08-CV-912-SAS<br><br>ECF Case |
| TONY BROY, derivatively and on behalf of Nominal Defendant CENTERLINE HOLDING COMPANY,<br><br>         Plaintiff,<br><br>    v.<br><br>JEFF T. BLAU, *et al.*,<br><br>         Defendants. | 08-CV-1971-SAS<br><br>ECF Case |

**DEFENDANTS ROSS AND BLAU'S ANSWER**
**TO CONSOLIDATED AMENDED VERIFIED COMPLAINT**

    Defendants Stephen M. Ross and Jeff T. Blau (together, "Defendants") submit this Answer to the Consolidated Amended Verified Complaint (the "Amended Complaint"), and respond to the particular allegations as follows:

    1.  Defendants deny the allegations set forth in Paragraph 1, except admit that Plaintiffs Carfagno and Broy purport to bring an action as described in Paragraph 1 (and that Broy was dismissed without prejudice to all parties on May 9, 2008); admit that defendants Marc D. Schnitzer, Stephen M. Ross, Jeff T. Blau, Leonard W. Cotton, Robert J. Dolan, Nathan Gantcher, Jerome Y. Halperin, Robert L. Loverd, Robert A. Meister and Thomas W. White are members of Centerline's Board of Trustees; and admit that Janice Cook Roberts was a member of Centerline's Board of Trustees from 2003 until June 2008.

2.     Defendants admit the allegations set forth in Paragraph 2.

3.     Defendants deny the allegations set forth in Paragraph 3, except Defendants admit that Centerline Holding Company ("Centerline") is a Delaware statutory trust that has various subsidiaries, and was formerly known as CharterMac; admit that Centerline and/or its subsidiaries engage in various activities with a core focus on the real estate sectors, and (among others), manage various investment funds, and provide capital solutions to developers and owners of properties, as well as investment products to investors; and Defendants respectfully refer the Court to the April 6, 2007 Form 8-K referenced in footnote 1 in Paragraph 3 for its contents.

4.     Defendants deny the allegations set forth in Paragraph 4, except admit that on March 12, 2007, Centerline issued a press release announcing its financial results for the fourth quarter and full year ending December 31, 2006; and respectfully refer the Court to the document referenced in Paragraph 4 for its contents.

5.     Defendants deny the allegations set forth in Paragraph 5, except admit that on March 12, 2007, Centerline issued a press release announcing the Company's financial results for the fourth quarter and full year ending December 31, 2006; admit that on March 12, 2007, Centerline filed an annual report on Form 10-K with the Securities and Exchange Commission (the "SEC"), summarizing Centerline's financial results for the year ending December 31, 2006; and respectfully refer the Court to the documents referenced in Paragraph 5 for their complete and accurate contents.

6.     Defendants deny the allegations set forth in Paragraph 6, except admit that the transcript of the August 9, 2007 analyst conference call indicates that Marc Schnitzer made the statements quoted in Paragraph 6; and Defendants respectfully refer the Court to the transcript of

the August 9, 2007 conference call referenced in Paragraph 6 for its complete and accurate contents.

7.     Defendants deny the allegations set forth in Paragraph 7, except admit that the transcript of the November 8, 2007 analyst conference call indicates that Nicole Jacoby and Marc Schnitzer made the statements quoted in Paragraph 7 (minus the emphasis added in Paragraph 7); and respectfully refer the Court to the transcript of the November 8, 2007 analyst conference call referenced in Paragraph 7 for its complete and accurate contents.

8.     Defendants deny the allegations set forth in Paragraph 8.

9.     Defendants deny the allegations set forth in Paragraph 9, except admit that on December 28, 2007, Centerline issued a press release announcing that the Company had sold its "2.8 billion tax-exempt affordable housing bond portfolio" to Freddie Mac, and announcing that Centerline's annual dividend for 2007 would be set at $0.60 per share.  Defendants further admit that Centerline announced on December 28, 2007 that it had received a $131 million equity investment commitment from Related Special Assets, LLC ("RSA") in exchange for approximately 12.2 million shares of convertible preferred shares to be issued, and bearing a dividend of 11%.  Defendants further admit that the December 28, 2007 press release included the language quoted in Paragraph 9 (but not the emphasis added in Paragraph 9), and respectfully refer the Court to the December 28, 2007 press release quoted in Paragraph 9 for its complete and accurate contents.

10.     Defendants deny the allegations set forth in Paragraph 10, except admit that the December 28, 2007 press release issued by Centerline included the language quoted in Paragraph 10, but did not include the emphasis added in Paragraph 10; and Defendants

respectfully refer the Court to the December 28, 2007 press release quoted in Paragraph 10 for its complete and accurate contents.

11.     Defendants deny the allegations set forth in Paragraph 11, except admit that the transcript of the December 28, 2007 analyst conference call indicates that Mr. Schnitzer did make the statement quoted in Paragraph 11 (minus the emphasis added in Paragraph 11); and Defendants respectfully refer the Court to the transcript of the December 28, 2007 analyst conference call quoted in Paragraph 11 for its complete and accurate contents.

12.     Defendants deny the allegations set forth in Paragraph 12, except admit that the transcript of the December 28, 2007 analyst conference call indicates that Tony Howard of J.J.B. Hilliard, W.L. Lyons, Inc. made the statements quoted in Paragraph 12 (minus the emphasis added in Paragraph 12); and Defendants respectfully refer the Court to the transcript of the December 28, 2007 analyst conference call quoted in Paragraph 12 for its complete and accurate contents.

13.     Defendants deny the allegations set forth in Paragraph 13, except admit that the transcript of the December 28, 2007 analyst conference call indicates that Matt West made the statements quoted in Paragraph 13 (minus the emphasis added in Paragraph 13); and Defendants respectfully refer the Court to the transcript of the December 28, 2007 analyst conference call for its complete and accurate contents.

14.     Defendants deny the allegations set forth in Paragraph 14.

15.     Defendants deny the allegations set forth in Paragraph 15.

16.     Defendants deny the allegations set forth in Paragraph 16, except admit that subsequent to the December 28, 2007 analyst conference call, Centerline management, in conjunction with Centerline's Board of Trustees, began exploring the possibility of conducting

the Rights Offering; admit that the Rights Offering ultimately provided (among other things) that to the extent the convertible preferred shares at issue in the RSA transaction were not purchased by Centerline's shareholders in the Rights Offering, RSA would continue to hold those convertible preferred shares; and Defendants respectfully refer the Court to the prospectus for the Rights Offering for the complete terms of the offering.

17.    Defendants deny the allegations set forth in Paragraph 17, except admit that Plaintiff Peggy H. Off filed a complaint (entitled "Verified Derivative and Class Action Complaint") ("Off Complaint") in Delaware Chancery Court on January 15, 2008 ("*Off* case"); admit that the parties agreed on the general terms of a settlement on January 22, 2008, and discussed the same with the Chancery Court in a conference call on that date; admit that Centerline entered into the "Securities Purchase Agreement" with RSA on January 25, 2008; admit that RSA and Centerline executed a letter agreement on January 25, 2008 (an accurate copy of which is attached as Exhibit A to the Amended Complaint); and admit, upon information and belief, that Plaintiff John Carfagno filed a complaint (entitled "Verified Derivative Complaint") in this Court on January 25, 2008; and Defendants respectfully refer the Court to the documents referenced in Paragraph 17 for their contents.

18.    Defendants deny the allegations set forth in Paragraph 18, except admit that on March 7, 2008, Centerline filed the prospectus for the Rights Offering; admit that the price of Centerline's common shares was $10.11 per share at market opening on December 28, 2007, and $4.05 per share at market closing on April 4, 2008; and respectfully refer the Court to the prospectus referenced in Paragraph 18 for the complete and accurate terms of the Rights Offering.

19.     Defendants deny the allegations in Paragraph 19, except admit that The Related Companies, L.P. ("TRCLP"), Morgan Stanley, and Goldman Sachs, conducted due diligence on Centerline or had access to certain non-public financial information about Centerline; admit that Centerline's public shareholders were not provided non-public financial information by Centerline in connection with the Rights Offering; and admit that 373,136 preferred shares (of approximately 11.2 million preferred shares) were purchased as part of the Rights Offering.

20.     Defendants, upon information and belief, deny that complete diversity exists with respect to Mr. Broy; and admit, upon information and belief, the remaining allegations set forth in Paragraph 20.

21.     Defendants admit the allegations set forth in Paragraph 21.

22.     Defendants admit the allegations set forth in Paragraph 22.

23.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23.

24.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24.

25.     Defendants deny the allegations set forth in Paragraph 25, except admit that Centerline is a Delaware statutory trust with its principal place of business at 625 Madison Avenue, New York, NY 10022; and admit that common shares of Centerline are publicly traded on the New York Stock Exchange ("NYSE") under the symbol "CHC."

26.     Defendants deny the allegations set forth in Paragraph 26, except admit, upon information and belief, that Marc D. Schnitzer is a citizen of New York; admit that Mr. Schnitzer has been a Managing Trustee of Centerline since 2003, joined CharterMac Capital in 1988, and

has served as Centerline's President and CEO since March 14, 2006; admit that Mr. Schnitzer and Centerline entered into an employment agreement dated February 1, 2007; admit that Mr. Schnitzer is chairman of the Board of Trustees of American Mortgage Acceptance Company ("AMAC"), a publicly traded real estate investment trust managed by Centerline; admit that as of December 31, 2007, Centerline owned approximately 10% of AMAC stock and had outstanding an $80 million line of credit to AMAC; admit, upon information and belief, that Marc Associates (wholly owned by Mr. Schnitzer) owns SCUs in a Centerline subsidiary; admit that Mr. Schnitzer (among others) was involved in Project Spinnaker and in the sale of Centerline's preferred convertible shares to RSA; and respectfully refer the Court to the documents referenced in Paragraph 26 for their contents.

27.    Defendants deny the allegations set forth in Paragraph 27, except admit that Stephen M. Ross is a citizen of New York; admit that Mr. Ross has been a Managing Trustee of Centerline and Non-Executive Chairman of the Board of Trustees of Centerline since 1999; admit that Mr. Ross is the founder, Chairman and CEO of TRCLP; admit that Mr. Ross at one time owned (directly or indirectly) approximately 92% of TRCLP, but state that his current ownership stake in TRCLP is approximately 40%; admit that Related General II, L.P. ("Related II") is owned by The Related Companies, L.P.; admit that Related II and TRCLP combined owned approximately 27.4% of the common shares of Centerline as of April 24, 2008 (Defendants respectfully refer the Court to Centerline's Schedule 14A, filed June 12, 2008, for its contents); admit that Mr. Ross owns SCUs in a Centerline subsidiary; admit that Centerline and TRCLP have transacted with each other and have made co-investments in real estate-related investment opportunities; and respectfully refer the Court to the minutes of the May 7, 2007 meeting of the Audit Committee of Centerline's Board of Trustees for its contents; admit that

Mr. Ross made an endowment of approximately $100 million to the University of Michigan Business School; admit that according to the University of Michigan, the $100 million endowment was, at the time, the largest donation made to a business school, as well as the largest donation made to the University of Michigan. Defendants respectfully refer the Court to Centerline's Schedule 14A, filed April 23, 2007 ("2007 Proxy Statement") (referenced in Paragraph 27) for its complete and accurate contents.

28.     Defendants deny the allegations set forth in Paragraph 28, except admit that Jeff T. Blau is a citizen of New York; admit that Mr. Blau has been a Managing Trustee of Centerline since 2003; admit that Mr. Blau is a member of the Investment Committee of Centerline's Board of Trustees; admit that Mr. Blau (among others) worked on the sale of Centerline's bond portfolio to Freddie Mac; admit that Mr. Blau is President of TRCLP and is responsible for new development origination and for strategic oversight of TRCLP's affiliated group of companies; admit that Mr. Blau serves on the Board of Trustees of AMAC and the Board of Directors of Equinox Holdings, Inc.; admit that Equinox Holdings, Inc. is an affiliate of TRCLP; and respectfully refer the Court to Centerline's 2007 Proxy Statement (referenced in Paragraph 28) for its complete and accurate contents.

29.     Defendants admit, upon information and belief, the allegations set forth in Paragraph 29.

30.     Defendants admit, upon information and belief, the allegations set forth in Paragraph 30.

31.     Defendants admit, upon information and belief, the allegations set forth in Paragraph 31.

32.     Defendants admit, upon information and belief, the allegations set forth in Paragraph 32, except deny that Mr. Halperin has served as a director of Equinox Holdings, Inc. since mid-2006.

33.     Defendants admit, upon information and belief, the allegations set forth in Paragraph 33.

34.     Defendants admit, upon information and belief, the allegations set forth in Paragraph 34.

35.     Defendants deny the allegations set forth in Paragraph 35, except admit, upon information and belief, that Defendant Janice Cook Roberts is a citizen of New York; admit that Ms. Cook Roberts was a member of Centerline's Board of Trustees from 2003 until June 2008; and admit that the Company's 2007 Proxy Statement states that Roberts owns directly or beneficially 7,959 common shares of Centerline.

36.     Defendants admit, upon information and belief, the allegations set forth in Paragraph 36.

37.     The allegations in Paragraph 37 state legal conclusions to which no answer is required.   To the extent facts are alleged, Defendants deny the allegations set forth in Paragraph 37, except Defendants admit that Mr. Carfagno and Mr. Broy purport to bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of all Centerline shareholders who could have participated in the Rights Offering but did not, and excluding the defendants in this action and any persons or entities related to or affiliated with them.

38.     Defendants admit the allegations set forth in Paragraph 38.

39.     Defendants deny the allegations set forth in Paragraph 39.

40.     The allegations in Paragraph 40 state legal conclusions to which no answer is required.  To the extent facts are alleged, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40; except Defendants deny that any Centerline shareholders' "ownership interests in Centerline were diluted as a result of the misconduct alleged herein."

41.     The allegations in Paragraph 41 state legal conclusions to which no answer is required.  To the extent facts are alleged, Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41.

42.     The allegations in Paragraph 42 state legal conclusions to which no answer is required. To the extent facts are alleged, Defendants deny the allegations set forth in Paragraph 42.

43.     Defendants deny the allegations set forth in Paragraph 43, except admit that Centerline is a Delaware statutory trust with multiple subsidiaries; admit that Centerline is an alternative asset manager with a core focus on real estate and more than $12 billion of assets under management; admit that Centerline Capital Group (a subsidiary of Centerline) has four Business Groups, namely: (1) Commercial Real Estate (CMBS and Commercial Products, and Agency Lending Products); (2) Affordable Housing; (3) Portfolio Management; and (4) Credit Risk Products; admit that Centerline earns investment income as well as fees in connection with its various activities; admit that Centerline owned over $2.8 billion in tax exempt bonds until on or about December 27, 2007, when Centerline sold most of its bond portfolio to Freddie Mac; and admit that prior to the Freddie Mac sale, Centerline earned most of its income and cash flow from a positive spread between interest earned on its bond portfolio and the cost of financing its bonds.

44.    Defendants deny the allegations set forth in Paragraph 44, except admit that historically, many of Centerline's public shareholders were individual investors who, upon information and belief, were motivated to invest in Centerline largely because of its annual dividend payments.

45.    Defendants deny the allegations set forth in Paragraph 45, except admit that according to the minutes of the March 14, 2007 meeting of Centerline's Board of Trustees, Mr. Schnitzer discussed Project Spinnaker and reported to the Board on his discussions with Morgan Stanley on Project Spinnaker; admit that the March 14, 2007 minutes indicate that Project Spinnaker "consisted of an analysis of the Company's organizational and capitalization structure to maximize the Company's enterprise value"; and respectfully refer the Court to the minutes of the March 14, 2007 meeting of Centerline's Board of Trustees for their complete and accurate contents.

46.    Defendants deny the allegations set forth in Paragraph 46, except admit, upon information and belief, that Centerline conducted "roadshows" with potential institutional investors in May 2007; deny knowledge or information sufficient to form a belief as to precisely what was said, and by whom, during those roadshows or in any internal communications among members of Centerline management concerning those roadshows; and respectfully refer the Court to the documents referenced in Paragraph 46 for their complete and accurate contents.

47.    Defendants deny the allegations set forth in Paragraph 47, except admit that by June 2007, Centerline's Asset Management Group had initiated a review of Centerline's sub-performing and non-performing affordable housing debt and equity investments.

48.    Defendants deny the allegations set forth in Paragraph 48, except admit that in July 2007, Morgan Stanley was serving as financial advisor to Centerline, and (among others)

participated in formulating business strategies and preparing models for potential transactions contemplating a sale of Centerline's bond portfolio.

49.    Defendants deny the allegations set forth in Paragraph 49, except admit that as of September 11, 2007, Centerline's Asset Management Group had conducted a comprehensive and intensive impairment review of the Company's entire tax-exempt bond portfolio (381 bonds totaling approximately $2.8 billion); admit that Mr. Schnitzer discussed Project Spinnaker at a meeting of the Centerline Board of Trustees on September 11, 2007; and respectfully refer the Court to the minutes of the September 11, 2007 Board meeting referenced in Paragraph 49 for their contents.

50.    Defendants deny the allegations set forth in Paragraph 50, except admit that Centerline owned 6.9% of AMAC's common shares of beneficial interest, and 41.2% of AMAC's 7.25% Series A Cumulative Preferred Shares, as of December 31, 2007 (5.9% and 41.2%, respectively, as of September 30, 2007), amounting to an aggregate ownership percentage of over 10% as of December 31, 2007, assuming all preferred shares were converted into common shares (and respectfully refer the Court to AMAC's Form 10-Q, filed November 9, 2007, and Form 10-K, filed March 31, 2008, for their contents); admit that in April, 2007, AMAC's revolving credit facility with Centerline was amended to (among others) increase AMAC's borrowing capacity from approximately $50 million to approximately $80 million; admit that AMAC faced liquidity challenges by October 2007 due to difficult market conditions; admit that Projects Spinnaker, Valencia and Chelsea were presented to, and approved by, the Centerline Board of Trustees; admit that the Centerline Board of Trustees discussed "Project Chelsea" at a November 7, 2007 meeting; and respectfully refer the Court to the minutes of the

November 7, 2007 meeting of the Centerline Board of Trustees referenced in Paragraph 50 for their contents.

51.    Defendants deny the allegations set forth in Paragraph 51, except deny knowledge or information sufficient to form a belief as to precisely what Hilary Ginsberg wrote in an email dated November 13, 2007; and respectfully refer the Court to the document quoted in Paragraph 51 for its complete and accurate contents.

52.    Defendants deny the allegations set forth in Paragraph 52, except deny knowledge or information sufficient to form a belief as to precisely what was discussed on November 28, 2007 among Messrs. Schnitzer, Cotton, Levy, Ms. Ginsberg, and representatives of Morgan Stanley; and admit that Centerline's public shareholders were not provided non-public financial information by Centerline in connection with the Rights Offering.  Defendants respectfully refer the Court to the document referenced in Paragraph 52 for its complete and accurate contents.

53.    Defendants deny the allegations set forth in Paragraph 53, except admit that Mr. Schnitzer sent a memorandum to Centerline's Board of Trustees on November 25, 2007; admit that the memorandum summarized the background and features of the bond portfolio sale to Freddie Mac; and respectfully refer the Court to Mr. Schnitzer's November 25, 2007 memorandum to Centerline's Board of Trustees for its complete and accurate contents.

54.    Defendants deny the allegations set forth in Paragraph 54, except admit that Morgan Stanley prepared presentation materials, dated November 29, 2007, for the Centerline Board of Trustees; admit that Morgan Stanley advised the Centerline Board of Trustees on (among other things) the effects of a dividend cut on Centerline's stock price; and respectfully

refer the Court to the documents quoted in Paragraph 54 for their complete and accurate contents.

55.    Defendants deny the allegations set forth in Paragraph 55, and respectfully refer the Court to the document referenced in Paragraph 55 for its complete and accurate contents.

56.    Defendants deny the allegations set forth in Paragraph 56, except admit that Mr. Schnitzer (among others) was working with Bear Stearns on Project Valencia, a planned third-party equity investment in Centerline convertible preferred shares; admit that Centerline negotiated with Morgan Stanley and Goldman Sachs as potential investors in convertible preferred shares to be issued by Centerline; admit that Mr. Levy described a Morgan Stanley-proposal in connection with Project Valencia as "very expensive equity"; admit that Bear Stearns opined that Morgan Stanley's proposal, as well as the preliminary terms Goldman Sachs was willing to consider for a potential transaction with Centerline, were unattractive to Centerline; deny knowledge or information sufficient to form a belief as to how Mr. Schnitzer described TRCLP's transaction or how that proposed transaction compared to the potential transaction proposed by Morgan Stanley or discussed with Goldman Sachs; admit, upon information and belief, that the Centerline Board approved the sale of the convertible preferred to RSA, an affiliate of TRCLP, on December 19, 2007; admit that under the transaction terms, RSA was permitted to purchase approximately 11.2 million shares of Centerline's preferred stock at $11.70 per share with a conversion price of $10.75 per share at an 11% dividend rate; and admit that no tender offer to Centerline's common shareholders was conducted in connection with either the sale of Centerline's bond portfolio, Project Valencia, or the dividend reduction.

57.     Defendants deny the allegations set forth in Paragraph 57, except admit that Morgan Stanley and Goldman Sachs conducted "due diligence" of Centerline in connection with their potential involvement in Project Valencia, and as a result had access to various non-public financial information about Centerline; admit that TRCLP and/or RSA, as a private investor in Centerline, had access to various non-public financial information about Centerline; admit that Centerline's public shareholders were not provided non-public financial information by Centerline following the December 28, 2007 announcement or in connection with the Rights Offering; and respectfully refer the Court to the Rights Offering prospectus referenced in Paragraph 57 for its complete and accurate contents.

58.     Defendants deny the allegations set forth in Paragraph 58.

59.     Defendants deny the allegations set forth in Paragraph 59, except admit that Centerline began to discuss a Rights Offering subsequent to December 28, 2007; and admit that the NYSE confirmed to Centerline, on or about January 11, 2008, that in the event the proposed Rights Offering was held, the convertible preferred investment by RSA would not need to be subjected to a Centerline shareholder vote.

60.     Defendants deny the allegations set forth in Paragraph 60, except admit that the first derivative and class action lawsuit against Centerline in connection with any of the transactions announced on December 27, 2007, was the *Off* case, filed on January 15, 2008 in Delaware Chancery Court; admit that the first securities fraud class action suit in connection with any of the transactions announced on December 27, 2007, was filed in this Court on January 18, 2008; admit that the parties to the *Off* case reached a tentative settlement on January 22, 2008; admit that under the terms of the settlement, Centerline would conduct the Rights Offering on terms agreed upon by Centerline and the *Off* plaintiff;  and admit that under the terms of the

settlement Defendants and Centerline would not contest the *Off* plaintiff's counsel's request for attorney fees up to an amount of approximately $800,000; and Defendants respectfully refer the Court to the Stipulation of Settlement, March 4, 2008 (as amended), in the *Off* case, for the terms of the proposed settlement.

61.    Defendants deny the allegations set forth in Paragraph 61, except admit that the Securities Purchase Agreement with RSA was executed on January 25, 2008; respectfully refer the Court to that document (referenced in Paragraph 61) for its complete and accurate text; and admit that Mr. Carfagno filed his original complaint in this action on January 25, 2008, and that he did not make a demand on Centerline's Board of Trustees to pursue the claims raised in this case.

62.    Defendants deny the allegations set forth in Paragraph 62, except Defendants admit that Centerline filed a prospectus for the Rights Offering on March 7, 2008; admit that the Rights Offering permitted Centerline's common shareholders to purchase over 11 million preferred shares on the same terms provided to RSA; admit that any shares not purchased in the Rights Offering were to be retained by RSA; admit that the Rights Offering closed on April 4, 2008 and that 373,136 shares were purchased as part of the Rights Offering; admit that Centerline's common stock price closed at approximately $4 a share on April 4, 2008; admit that Centerline's First Quarter 2008 Form 10-Q was filed on May 12, 2008; and respectfully refer the Court to the documents referenced in Paragraph 62 for their complete and accurate contents.

63.    Defendants admit the allegations set forth in Paragraph 63.

64.    Defendants deny the allegations set forth in Paragraph 64.

65.    Defendants deny the allegations set forth in Paragraph 65.

66.    Defendants deny the allegations set forth in Paragraph 66.

67.      Defendants deny the allegations set forth in Paragraph 67.

68.      Defendants admit the allegations set forth in Paragraph 68.

69.      Defendants deny the allegations set forth in Paragraph 69, except admit that, as set forth in Centerline's 2007 Proxy, Messrs. Schnitzer, Ross, Blau, Cotton and White were not "independent" of Centerline within the meaning of Section 303A of the Corporate Governance New York Stock Exchange Rules; and respectfully refer the Court to the 2007 Proxy for its complete and accurate contents.

70.      Defendants deny the allegations set forth in Paragraph 70.

71.      Defendants deny the allegations set forth in Paragraph 71.

72.      Defendants deny the allegations set forth in Paragraph 72.

73.      Defendants deny the allegations set forth in Paragraph 73, except admit that Mr. Ross has been the Non-Executive Chairman since 1999; and admit that Mr. Blau has been a member of the Board of Trustees since 2003.

74.      Defendants deny the allegations set forth in Paragraph 74, except admit that on November 17, 2003, Centerline acquired Related Capital Company ("RCC") (now known as Centerline Affordable Housing Advisors LLC); admit that RCC was indirectly majority-owned by TRCLP (and respectfully refer the Court to Centerline's Form 14A, filed May 8, 2003, for its contents); admit that Centerline has various commercial dealings with TRCLP or entities affiliated with TRCLP; admit that Centerline pays shared service fees to TRCLP pursuant to a shared services agreement; admit that the services provided include office management, payroll, human resources and other office services, and that the majority of the services are charged to Centerline at the direct cost incurred by TRCLP; admit that during 2006, Centerline paid TRCLP approximately $620,000 for such services; admit that a subsidiary of TRCLP earned fees for

17

performing property management services for various properties held in investment funds

managed by Centerline; admit that such property management fees totaled $4.3 million in 2006,

$3.2 million in 2005, $2.2 million in 2004, and $2.5 million in 2002; admit that during 2006,

funds sponsored by Centerline acquired equity interests in three projects developed by affiliates

of TRCLP, investing approximately $7.1 million, $7.5 million, and $10 million, respectively, in

the projects; admit that Mr. Ross serves on the Board of Equinox; and respectfully refer the

Court to Centerline's Forms 14A, filed April 20, 2006 and April 23, 2007; and Centerline's Form

10-K, filed March 16, 2004, for their contents.

75.    Defendants deny the allegations set forth in Paragraph 75, except admit that

Defendant Schnitzer is Chief Executive Office and President of Centerline, and (among others)

worked on Projects Spinnaker and Valencia.

76.    Defendants deny the allegations set forth in Paragraph 76, except admit that

Schnitzer was paid over $2,145,000 in total compensation for his service as CEO and President

in 2006; admit that Centerline and Mr. Schnitzer entered into an employment agreement, dated

February 1, 2007; respectfully refer the Court to the February 1, 2007 employment agreement for

its complete and accurate contents; and admit that Mr. Schnitzer is chairman of the Board of

Trustees of AMAC.

77.    Defendants deny the allegations set forth in Paragraph 77, except admit that

Mr. Cotton has been a Managing Trustee and Vice Chairman of the Board of Centerline since

2006; admit that Mr. Cotton previously served as CEO of Centerline REIT (formerly ARCAP

REIT, Inc.), which was acquired by Centerline in 2006; admit that Mr. Cotton was CEO and

Chairman of the Board of Centerline REIT's predecessor, REMICap; admit that Mr. Cotton

received over $1,646,236 in compensation from August 15, 2006 to December 31, 2006; admit

that Mr. Cotton currently has an employment agreement with Centerline to serve as a member of the Board of Trustees of Centerline; admit that pursuant to that agreement, Mr. Cotton's annual base salary is approximately $400,000, and he was granted an award of 255,003 restricted Common Shares (which vests over four years in four equal cumulative installments of 25% on each of the first four anniversaries of the grant date); respectfully refer the Court to the employment agreement referenced in Paragraph 77 (and to Centerline's Form 14-A, filed April 23, 2007) for its complete and accurate contents; and admit that Mr. Cotton is a member of Centerline's strategic planning committee.

78.    Defendants deny the allegations set forth in Paragraph 78; except admit, upon information and belief, that Mr. Dolan has been Dean of the University of Michigan Business School since 2001; admit, upon information and belief, that Mr. Dolan serves as the Stephen M. Ross Professor of Business at the University of Michigan, and chairs the University of Michigan's Development Subcommittee; admit that in September 2004, Mr. Ross made a $100 million endowment to the University of Michigan Business School, which was subsequently renamed the "Stephen M. Ross School of Business at the University of Michigan"; and admit that according to the University of Michigan, the $100 million endowment was, at the time, the largest donation made to a business school, as well as the largest donation made to the University of Michigan.

79.    Defendants deny the allegations set forth in Paragraph 79, except admit that Mr. Halperin is a member of the Centerline Board of Trustees, and has previously served on the Board of Equinox Holdings Inc., and admit that Equinox Holdings, Inc. is an affiliate of TRCLP.

80.    Defendants deny the allegations set forth in Paragraph 80, except admit that Mr. White is a member of Centerline's Board of Trustees; and admit that Mr. White has worked as a paid consultant to Centerline since July 2001.

81.    Defendants deny the allegations set forth in Paragraph 81.

82.    Defendants repeat and re-allege their responses to Paragraph 1 through 81 of the Amended Complaint.

83.    Defendants deny the allegations set forth in Paragraph 83, except insofar as Paragraph 83 asserts conclusion of law, and as to those, no response is required.

84.    Defendants deny the allegations set forth in Paragraph 84.

85.    Defendants deny the allegations set forth in Paragraph 85.

86.    Defendants deny the allegations set forth in Paragraph 86.

87.    Defendants deny the allegations set forth in Paragraph 87.

88.    Defendants deny the allegations set forth in Paragraph 88.

89.    Defendants deny the allegations set forth in Paragraph 89.

90.    Defendants deny the allegations set forth in Paragraph 90, except admit that Plaintiffs purport to seek damages in this action.

91.    Defendants repeat and re-allege their responses to Paragraph 1 through 90 of the Amended Complaint.

92.    Defendants deny the allegations set forth in Paragraph 92.

93.    Defendants deny the allegations set forth in Paragraph 93.

94.    Defendants deny the allegations set forth in Paragraph 94.

95.    Defendants repeat and re-allege their responses to Paragraph 1 through 94 of the Amended Complaint.

96.     Defendants deny the allegations set forth in Paragraph 96.

97.     Defendants deny the allegations set forth in Paragraph 97.

98.     Defendants repeat and re-allege their responses to Paragraph 1 through 97 of the Amended Complaint.

99.     Defendants deny the allegations set forth in Paragraph 99.

100.    Defendants repeat and re-allege their responses to Paragraph 1 through 99 of the Amended Complaint.

101.    Defendants deny the allegations set forth in Paragraph 101.

102.    Defendants deny the allegations set forth in Paragraph 102.

### AFFIRMATIVE DEFENSES

### First Affirmative Defense

103.    The Amended Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

104.    Plaintiffs' claims are barred, in whole or in part, because the Defendants acted at all times in good faith, in accordance with applicable law and without knowledge of any wrongful acts or intent.  Any and all actions taken by the Defendants were, at all times, lawful, proper and consistent with their duties and obligations, and the Defendants did not otherwise have any obligation or duty to take any other or different action.

### Third Affirmative Defense

105.    Plaintiffs' claims are barred, in whole or in part, by the application of the business judgment rule.

## Fourth Affirmative Defense

106.    Defendants, in discharging their duties to Centerline, acted at all times in good faith and in the proper exercise of business judgment, and exercised at least that degree of care, diligence and skill that an ordinary prudent person would exercise in similar circumstances and in like positions.

## Fifth Affirmative Defense

107.    Plaintiffs' claims are barred, in whole or in part, because to the extent Plaintiffs (and those entities and persons Plaintiffs purport to represent) have suffered injury or loss, such injury or loss is the result of factors, events, actions or occurrences unrelated to any actions, omissions or alleged failures to act on the part of Defendants and that are outside of and beyond the control of Defendants, including the operation of external factors, events, and/or persons outside the Defendants' control.

## Sixth Affirmative Defense

108.    Defendants are not liable to Plaintiffs because they had no duty to disclose any facts that were allegedly not disclosed.

## Seventh Affirmative Defense

109.    Defendants are not liable to Plaintiffs because the public disclosures or statements criticized by Plaintiffs were accurate in all material respects.

## Eighth Affirmative Defense

110.    Defendants are not liable to Plaintiffs because the public disclosures criticized by Plaintiffs did not contain any misrepresentations or omissions, and were not misleading.

## Ninth Affirmative Defense

111.    Plaintiffs claims are barred because the alleged conduct challenged in the Complaint was entirely fair to Centerline and to its shareholders.

22

## Tenth Affirmative Defense

112.    Plaintiffs' claims are not properly maintainable as a class action.

## Eleventh Affirmative Defense

113.    Plaintiffs' counsel face an insurmountable conflict of interest in asserting derivative claims on behalf of Centerline, and purportedly for Centerline's benefit; while simultaneously asserting class claims against Defendants, effectively making the case against Centerline and potentially causing it harm.

## Twelfth Affirmative Defense

114.    Plaintiffs' claims are barred because, by his own admission, he failed to make a demand on Centerline's Board prior to filing suit, and because the allegations of the Complaint fail to allege adequately and with particularity the justification for failure to make demand on the Board of Trustees of Centerline.

## Thirteenth Affirmative Defense

115.    Plaintiffs' claims are barred, in whole or in part, by Section 7.3 of Centerline's Trust Instrument (the Second Amended and Restated Trust Agreement), and by Art III, Section 17(b) of Centerline's Fifth Amended and Restated Bylaws.

## Fourteenth Affirmative Defense

116.    To the extent Plaintiffs purport to request injunctive or any other equitable relief, any such claim is barred because Plaintiffs have an adequate remedy at law.

## Fifteenth Affirmative Defense

117.    Plaintiffs are not entitled to recover attorney's fees, accountants' fees, experts' fees or other costs and disbursements.

## <u>Sixteenth Affirmative Defense</u>

118.    The Defendants reserve the right to assert additional defenses and/or affirmative defenses as may be appropriate.

**WHEREFORE**, Defendants respectfully request that the Court issue an Order:  (a) dismissing the Amended Complaint in its entirety and with prejudice; (b) granting Defendants' costs and disbursements; and (c) awarding Defendants such other relief as the Court deems just and proper.

Dated: New York, New York
      July 15, 2008

          Respectfully submitted,

          FRIED, FRANK, HARRIS, SHRIVER
           & JACOBSON LLP

          By: <u>/s/ ***Peter L. Simmons***</u>
              Peter L. Simmons (peter.simmons@friedfrank.com)
          One New York Plaza
          New York, New York  10004
          (212) 859-8000
          (212) 859-4000 fax

          *Attorneys for Defendants Stephen M. Ross*
          *and Jeff T. Blau*