UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

CARFAGNO, derivatively on behalf of
CENTERLINE HOLDING COMPANY,

                              Plaintiff,

                    - against -

MARC D. SCHNITZER, STEPHEN M.
ROSS, JEFF T. BLAU, LEONARD W.
COTTON, ROBERT J. DOLAN,
NATHAN GANTCHER, JEROME Y.
HALPERIN, ROBERT L. LOVERD,
ROBERT A. MEISTER, JANICE COOK
ROBERTS, and THOMAS W. WHITE,

                              Defendants.

and

CENTERLINE HOLDING COMPANY,

                    Nominal Defendant.

-------------------------------------------------- X

**OPINION AND ORDER**

**08 Civ. 912 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

John Carfagno brings actions derivatively on behalf of Centerline

Holding Company ("Centerline" or the "Company") and directly on behalf of the

1

Company's shareholders, alleging that defendants, who are members of the

Company's Board of Trustees, entered into a number of transactions with the

purpose of "enriching insiders" at the "expense" of public shareholders.[1]

Carfagno alleges claims of breach of fiduciary duty, waste of corporate assets, and

unjust enrichment.[2]  Pursuant to Federal Rule of Civil Procedure 23, Carfagno

moves to certify a class of shareholders to pursue only the claims of unjust

enrichment.[3]  Because I find that Carfagno lacks standing to pursue his claims for

unjust enrichment directly, his motion for class certification is denied.

## II.    BACKGROUND

### A.    Procedural History

On April 28, 2008, Carfagno filed a Consolidated Amended Verified

Complaint (the "Complaint") against defendants.[4]  The five causes of action,

which arise under Delaware law, are: 1) on behalf of the Company in a derivative

---

[1]      See Memorandum of Law in Support of Plaintiff's Motion for Class
Certification ("Pl. Mem.") at 1.

[2]      See Consolidated Amended Verified Complaint ("Compl.") ¶¶ 82-102.

[3]      Pl. Mem. at 1.

[4]      See Compl.  The Complaint was jointly filed with Tony Broy, another
plaintiff in the case.  On May 9, 2008, the Court entered an Order for the
Voluntary Dismissal of Plaintiff Tony Broy.  Thus, this case is now brought only
by plaintiff John Carfagno.

action, breach of fiduciary duties of loyalty, due care and good faith; 2) on behalf

of Carfagno and putative class members, breach of the same fiduciary duties; 3) a

derivative claim for corporate waste; 4) unjust enrichment against all of the

defendants; and 5) unjust enrichment against defendants Stephen M. Ross and Jeff

T. Blau, in particular.[5]  On May 12, 2008, all defendants filed a motion to dismiss.[6]

After Carfagno filed his response to defendants' motion to dismiss, the parties

entered a stipulation whereby defendants withdrew their motion to dismiss without

---

[5]     *See id.* ¶¶ 82-102.  The Fourth Cause of Action in the Complaint alleges
unjust enrichment by all defendants and seeks repayment of "all monies and
property in the hands of Defendants" to Centerline. *Id.* ¶¶ 98, 99. The Fifth Cause
of Action alleges unjust enrichment by defendants Ross and Blau and seeks
disgorgement of their benefits as payment to plaintiff and the class. *Id.* ¶¶ 100-
102. Although the Complaint only seeks disgorgement on behalf of Carfagno and
putative class members in the Fifth Cause of Action – indicating that Carfagno
intends to pursue this claim as a direct action – Carfagno appears to be seeking
class certification for both Causes of Action. *See* Pl. Mem. at 2 ("The claims
which Plaintiff seeks to pursue on a class-wide basis are limited to those seeking
equitable relief for unjust enrichment on a 'disgorgement' theory"). Delaware law
directs courts to determine whether an action is properly brought as a derivative or
direct action, regardless of how it is labeled by the plaintiff. *See Kramer v.
Western Pacific Industries, Inc.*, 546 A.2d 348, 352 (Del. 1988) (citing *Lipton v.
News Int'l, PLC*, 514 A.2d 1075, 1078 (Del. 1986) ("In determining the nature of
the wrong alleged, a court must look to 'the body of the complaint, not to the
plaintiff's designation or stated intention.'"). Thus, I will consider whether a class
should be certified for either of the two Causes of Action.

[6]     *See* Defendants' Memorandum of Law in Support of Their Motion to
Dismiss the Consolidated Amended Verified Complaint.

prejudice.[7]  On July 15, 2008, defendants filed their answers to the Complaint.[8]

On July 31, 2008, Carfagno filed the instant motion for class certification with

respect only to the unjust enrichment claims against all defendants and against

Ross and Blau.[9]

## B.    Facts[10]

Beginning in March 2007, the management of Centerline began

transforming the business profile of the Company from a "pure tax-exempt bond

fund to a full service real estate finance and investment company."[11]  As part of

this transformation and to raise capital to ease liquidity problems, the Company

entered into discussions about the prospect of selling convertible preferred stock.[12]

Although the Company had begun conversations with Morgan Stanley and

---

[7]      See 6/19/08 Stipulation and Order.

[8]      See 7/15/08 Answers to Complaint.

[9]      All defendants note that Carfagno failed to move for class certification with
respect to the Second Cause of Action – the alleged breach of fiduciary duty claim
on behalf of Carfagno and putative class members.  Because the deadline to file
motions for class certification has passed, this claim is dismissed.

[10]     Because this motion for class certification applies only to Carfagno's unjust
enrichment claims, only facts pertinent to these claims are discussed here.

[11]     Compl. ¶ 5 (internal quotations omitted).

[12]     See id. ¶ 56.

4

Goldman Sachs regarding their interest in purchasing this stock, the Company's Board ultimately approved a sale of the preferred stock to The Related Companies, L.P. ("Related"), Centerline's largest shareholder, and a company owned by Ross and Blau.[13] While Related had initially proposed a more attractive offer than the ones offered by Morgan Stanley and Goldman Sachs, after further negotiations, the terms of the deal with Related ended up being worse than those put forward by the investment banks.[14]

It was not until December 28, 2007 that Centerline announced to the public that, among other surprising news, the defendants "had entered into a related party transaction [with Related], whereby Related would provide Centerline $131 million in financing" in return for 12.2 million shares of convertible preferred stock and an 11% dividend on those shares.[15] Although the Company had planned a private placement of these shares to Related, defendants soon realized that they might not be able to obtain the necessary shareholder approval for the transaction.[16] In order to avoid a shareholder vote but ensure

---

[13]     *See id.* ¶¶ 9, 56.

[14]     *See id.* ¶ 56.

[15]     *Id.* ¶ 9.

[16]     *See id.* ¶ 16.

5

Related's participation, defendants decided to pursue a Rights Offering, the terms

of which included that Related would "backstop" the deal, or retain any shares not

purchased by shareholders.[17]

Although all shareholders were permitted to participate in the

offering, few shareholders actually did because the price of Centerline stock had

plummeted since the offering was priced, making the preferred stock less

attractive.[18]  In this way, Related was able to purchase the stock in a "'sweetheart

deal' to the detriment of Centerline, Plaintiffs, and the other shareholders in the

Class."[19]

## C.    The Proposed Class

Carfagno moves for class certification of only the claim seeking

equitable relief for unjust enrichment.[20]  He seeks to certify a class defined as:

> [H]olders of Centerline's common stock or other Centerline
> securities (except Defendants herein and any persons, firms, trust,
> corporation or other entity related to or affiliated with them and
> their successors in interest) who qualified to purchase
> Centerline's convertible 11% preferred stock in the Rights

---

[17]    *See id.*

[18]    *See id.* ¶ 18.

[19]    *Id.* ¶ 19.

[20]    Pl. Mem. at 2.

6

Offering ("the Class"), but did not.[21]

## III.   APPLICABLE LAW

### A.   Standing

Standing is a "threshold question in every federal case, determining

the power of the court to entertain the suit."[22] Thus, the adjudication of standing

must be made prior to determining whether the requirements of class certification

have been satisfied.[23] A plaintiff has the burden to show that three standing

---

[21]   Id. (quoting Compl. ¶ 37).

[22]   *Warth v. Seldin*, 422 U.S. 490, 498 (1975). *Accord  Ross v. Bank of America, N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008) (citation omitted).

[23]   *See In re Salomon Smith Barney Mutual Fund Fees Litig.*, 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006). Recent Supreme Court decisions, notably *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), have suggested that the traditional analysis, of determining standing prior to an investigation of class certification requirements, may not always apply, and that an examination of class certification requirements may be "logically antecedent" to the determination of standing. *In re Salomon Smith Barney*, 441 F. Supp. 2d at 605-06. However, courts in this district have noted that *Amchem* and *Ortiz* involved "unique procedural postures." *In re Salomon Smith Barney*, 441 F. Supp. 2d at 606. *See also In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885, 2005 WL 2677753, at *9 (S.D.N.Y. Oct. 19, 2005), *vacated on other grounds*, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) (noting that the Supreme Court has emphasized that the analysis used in *Amchem* and *Ortiz* should be applied only "when a court is confronted with an extremely complex case defying customary judicial administration"). *Amchem* involved asbestos claims in which the jurisdiction of the court with respect to the settlement of claims by exposure-only plaintiffs (including plaintiffs who were unaware they had been exposed to asbestos) was at issue. *See Georgine v. Amchem Prods., Inc.*,

7

requirements are met. A plaintiff must allege an "injury in fact," there must be causation between defendants' conduct and plaintiff's injury, and plaintiff's injury must be capable of being redressed.[24]

## B.   Derivative and Direct Claims Under Delaware Law[25]

Under Delaware law, the proper analysis to determine whether a case is a derivative or direct action is "based solely on the following questions: Who suffered the alleged harm – the corporation or the suing stockholder individually – and who would receive the benefit of the recovery or other remedy?"[26]   Thus, "[n]ormally, claims of corporate overpayment are treated as causing harm solely to

---

83 F.3d 610, 622 (3d Cir. 1996). Because the Third Circuit found that this and other jurisdictional issues would not arise but for class certification, it decided to dispose of the class certification requirements first, and the Supreme Court agreed. *See id.* at 623; *Amchem*, 521 U.S. at 612-13. *Ortiz* involved similar claims, and the Supreme Court approved of the analysis used in *Amchem*. *See Ortiz*, 527 U.S. at 831. Because this case does not present similar complex issues, I will follow the traditional analysis.

[24]   *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

[25]   When determining "whether claims should be brought directly or derivatively, courts must look to the law of the [company's] state of incorporation." *See In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2005 WL 2677753, at *3 (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991)). Centerline is a Delaware corporation, so Delaware law applies here. *See* Compl. ¶ 25.

[26]   *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004).

the corporation and, thus, are regarded as derivative."[27]  In such situations, "the

corporation is both the party that suffers the injury (a reduction in its assets or their

value) as well as the party to whom the remedy (a restoration of the improperly

reduced value) would flow."[28]

However, in *Gentile v. Rossette*, the Delaware Supreme Court defined

one breach of fiduciary duty scenario in which a "corporate overpayment claim"

may be brought as both a derivative and a direct action:

> (1) a stockholder having majority or effective control causes the
> corporation to issue 'excessive' shares of its stock in exchange for
> assets of the controlling stockholder that have a lesser value; and
> (2) the exchange causes an increase in the percentage of the
> outstanding shares owned by the controlling stockholder, and a
> corresponding decrease in the share percentage owned by the
> public (minority) shareholders.[29]

This fact pattern applies only to "situations where a controlling shareholder

exists."[30]  This is because the harm sought to be remedied "can only arise when a

controlling stockholder, with sufficient power to manipulate the corporate

processes, engineers a dilutive transaction whereby that stockholder receives an

---

[27]  *Gentile v. Rossette*, 906 A.2d 91, 99 (Del. 2006).

[28]  *Id.*

[29]  *Id.* at 99-100.

[30]  *Feldman v. Cutaia*, 956 A.2d 644, 657 (Del. Ch. 2007), *aff'd*, 951 A.2d 727
(Del. 2008).

exclusive benefit of increased equity ownership and voting power for inadequate consideration."[31]

Under Delaware law, a controlling shareholder is one who "(1) owns more than 50% of the voting power of the corporation; or (2) exercises control over the business and affairs of the corporation."[32] "The second test exists to allow the law to impose fiduciary obligations on stockholders who, although lacking a clear majority, have such formidable voting and managerial power that they, as a practical matter, are no differently situated than if they had majority voting control."[33]

## IV.   DISCUSSION

Defendants argue that Carfagno lacks standing to assert his unjust enrichment claims on behalf of shareholders because these claims can only be brought as derivative claims.[34] Defendants contend that "it was Centerline itself – not its shareholders – that sold the preferred shares and received the purported

---

[31]   *Id.*

[32]   *In re PNB Holding Co. S'holders Litig.*, No. Civ. A. 28-N, 2006 WL 2403999, at *9 (Del. Ch. Aug. 18, 2006) (citing *Kahn v. Lynch Commc'ns. Sys. Inc.*, 638 A.2d 1110, 1113-14 (Del. 1994)).

[33]   *Id.*

[34]   *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification ("Def. Mem.") at 3-4.

inadequate consideration in exchange."[35]  In addition, defendants assert that

because Ross and Blau are not controlling shareholders, Carfagno's claim against

them cannot satisfy the first condition set out in *Gentile v. Rossette*.[36]  In response,

Carfagno argues that the unjust enrichment claims do satisfy the conditions laid

out by the Delaware Supreme Court in *Gentile*.[37]

## A.    The Fifth Cause of Action Against Ross and Blau

With respect to the claim against Ross and Blau, Carfagno notes that

they, together with their ownership of Related, controlled 13.9% of Centerline

prior to the Rights Offering, making them Centerline's largest shareholders.[38]  He

also asserts that Ross and Blau "dominated Centerline and its Board through their

personal and business entanglements with Centerline and its directors."[39]  Also, as

Centerline's largest shareholders, they were permitted to nominate "a minimum of

four non-independent trustees to Centerline's Board."[40]  Thus, Carfagno contends,

---

[35]    *Id.* at 4.

[36]    *Id.* at 6-7.

[37]    Reply in Further Support of Plaintiff's Motion for Class Certification ("Pl. Rep.") at 2.

[38]    *See id.*

[39]    *Id.*

[40]    *Id.*

11

defendants Ross and Blau should be considered "controlling shareholders" of

Centerline.[41] Because Related was able to obtain a better price than it should have

on the preferred stock and because Ross and Blau were able to increase their

ownership stake in the Company while public shareholders saw a corresponding

decrease in their stakes, Carfagno argues that his unjust enrichment claim satisfies

the conditions of *Gentile*. I disagree.

As an initial matter, prior to the Rights Offering, Ross and Blau

owned only 13.9% of Centerline's stock, much less than the 50% ownership that

the Delaware Supreme Court has held is sufficient in order to be considered a

"controlling shareholder."[42] Also, defendants Ross and Blau did not possess

"control over the business and affairs of the corporation."[43] Ross is the Non-

Executive Chairman of the Board of Centerline, and founder, Chairman, CEO and

Managing General Partner of Related.[44] Blau is the President of Related.[45]

Besides their participation on the Board of Trustees of the Company, there is no

---

[41] *See id.* at 3.

[42] *See In re PNB Holding*, 2006 WL 2403999, at *9 (citing *Kahn*, 638 A.2d at 1113-14).

[43] *Id.*

[44] *See* Compl. ¶ 27.

[45] *See id.* ¶ 28.

12

evidence that they were involved in the day-to-day management of the Company.[46]

In addition, the only independent trustee with which Ross and Blau may have had "personal or business entanglements" is defendant Dolan.[47] In September 2004, Ross made a large donation to the University of Michigan Business School, of which Dolan is the Dean.[48] Thus, at most, Carfagno has shown that one defendant trustee may have felt some indebtedness towards Ross.

Finally, while Ross and Blau are able to nominate four of the eleven trustees to Centerline's Board, this does not give them majority control of the Board. Moreover, Delaware courts have held that the power to nominate, by itself, does not translate into control of a director.[49] I conclude, therefore, that Ross and

---

[46]     Indeed, the Complaint alleges that defendant Schnitzer, Centerline's President and CEO, spearheaded the transformation of the Company. *See id.* ¶¶ 45-56. He was assisted by members of his management team and defendant Cotton. *See id.* ¶¶ 46, 51, 52.

[47]     Pl. Rep. at 3.

[48]     *See id. See also* Compl. ¶ 78. The Complaint also alleges that defendant Halperin holds "close alliances with and allegiances to [] Ross and Blau and is dependent upon them for continuation of his positions on the boards of Centerline and Equinox Holdings Inc. (an affiliate of The Related Companies)." Compl. ¶ 79. Even if I was to credit this allegation and find that two other trustees were controlled by Ross and Blau, it would not change my conclusion that Ross and Blau were not controlling shareholders.

[49]     *See, e.g.*, *Williamson v. Cox Commc'ns., Inc.*, No. Civ.A. 1663-N, 2006 WL 1586375, *4 (Del Ch. June 6, 2006) (ruling that the nomination of directors "does not, without more, establish actual domination or control"); *Odyssey Partners,*

13

Blau were not "controlling shareholders" of Centerline.

My conclusion is buttressed by the fact that all of Centerline's

shareholders were given the opportunity to participate in the Rights Offering.[50]

Thus, defendants Ross and Blau cannot be said to have "manipulate[d] the

corporate processes" in order to "engineer[] a dilutive transaction whereby [they]

receive[d] an exclusive benefit."[51]  It is unfortunate that the drop in Centerline's

share price made the offering unattractive to public shareholders such that only a

small number of shares were purchased by them while Related was able to retain

the rest.  However, this outcome, while foreseeable, was not the product of Ross

and Blau's alleged manipulation of the Company's Board of Trustees.  The terms

of the offering included that Related would retain any shares not purchased by

other shareholders, and shareholders were aware of this.

While it is true that the sale of convertible preferred stock to Related

wrongfully diluted Carfagno's and other public shareholders' ownership in the

---

*L.P. v. Fleming Cos.*, 735 A.2d 386, 408 (Del. Ch. 1999) (holding that a director's
nomination by a shareholder does not amount to the shareholder's control over the
director).

[50]     *See* Compl. ¶ 62.

[51]     *See Feldman*, 956 A.2d at 658 (holding that defendant directors had not
"exclusively [benefitted]" from the transaction because other shareholders were
allowed to participate in the private placement).

14

Company, such claim should properly be brought as a derivative action rather than as a direct action.[52] Because Carfagno does not have standing to pursue his unjust enrichment claim against Ross and Blau as a direct action, class certification must be denied.

## B.     The Fourth Cause of Action Against All Defendants

Carfagno styles his Fourth Cause of Action as a derivative claim, and I agree with this designation for the same reasons that I conclude that his Fifth Cause of Action was derivative in nature. According to Centerline's 2007 Proxy Statement, the combined shareholdings of "All Executive Officers and Trustees of the Company" was 17.6%. Thus, the ownership of only the Company's Board of Trustees was less than 17.6%, well short of the 50% ownership required to be

---

[52]     As the Delaware Chancery Court has held:

> Mere claims of dilution, without more, cannot convert a claim traditionally understood as derivative into a direct one. Clearly, a corporation is free to enter into . . . numerous transactions, all of which may result legitimately in the dilution [of present equity holders]. Such a dilution is a natural and necessary consequence of investing in a corporation . . . . The only cognizable injuries, if any, would be a failure to act in the best interest of [the corporation] . . . . These alleged harms [are] inflicted on the corporation itself and [can] be asserted only by or on behalf of the corporation.

*Oliver v. Boston Univ.*, No. Civ.A. 16570-NC, 2006 WL 1064169, at *17 (Del. Ch. Apr. 14, 2006).

15

considered a "controlling shareholder" under Delaware law.[53]   In addition,

Carfagno has not shown that the defendants received an "exclusive benefit" from

the Rights Offering.   Thus, this claim likewise does not fit the scenario

contemplated in *Gentile*.   Because this claim belongs to Centerline and not to

Carfagno individually, his motion for class certification with respect to his Fourth

Cause of Action is also denied.

## V.   CONCLUSION

For the reasons stated above, Carfagno's motion for class certification

is denied.   The Clerk of the Court is directed to close this motion (document no.

44).   A conference is scheduled for December 16, 2008, at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              November 28, 2008

---

[53]     I aggregate the shareholdings of the directors to illustrate that even the total
of the directors' shareholdings is not sufficient to amount to majority ownership.
However, it should be noted that Delaware courts have rejected the suggestion that
the control test can be satisfied by aggregating the shareholdings of directors
absent a voting agreement among the directors. *See, e.g.*, *In re PNB Holding*,
2006 WL 2403999, at *10; *Feldman*, 956 A.2d at 657.

16

## - Appearances -

**For Plaintiff:**

Beth A. Kaswan, Esq.
Scott + Scott, LLP
29th West 57th Street
New York, NY 10019
(212) 223-6444

David R. Scott, Esq.
Scott + Scott, LLC(CT)
108 Norwich Avenue
P.O. Box 192
Colchester , CT 06415
(860) 537-5537

Walter W. Noss, Esq.
Scott + Scott, LLP
12434 Cedar Road, Suite 12
Cleveland Heights, OH 44106
(216) 229-6092

**For Defendants Schnitzer, Levy, Cotton, Allen, Dolan, Meister, Gantcher, Halperin, Loverd, Roberts and White:**

Richard A. Rosen, Esq.
Daniel J. Leffell, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas         .
New York, NY 10019
(212) 373-3000

17

**For Defendants Ross and Blau:**

Peter L. Simmons, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10022
(212) 859-8455

**For Defendant Centerline Company:**

Jennifer F. Beltrami, Esq.
Wolfblock, LLP
250 Park Avenue
New York, NY 10177
(212) 883-4955

18