UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————X

JOHN CARFAGNO, derivatively on behalf of  :
CENTERLINE HOLDING COMPANY,         :
                                        :    No. 08 Civ. 912 (SAS)
                   Plaintiff,  :    ECF
                                          :
                    vs.      :
                                          :
MARC D. SCHNITZER, et al.,           :
                                        :
                 Defendants.  :

—————————————————————X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF SETTLEMENT AND
<u>APPROVAL OF ATTORNEYS' FEES AND EXPENSES</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND OF THE ACTION ................................................................. 2

III.    THE SETTLEMENT ......................................................................................... 5

IV.    THE STANDARDS FOR JUDICIAL APPROVAL OF SHAREHOLDER
        DERIVATIVE SETTLEMENTS ..................................................................... 6

V.     THE SETTLEMENT IS EMINENTLY FAIR, REASONABLE AND ADEQUATE ...... 7

      A.  The Settlement Is Presumed to Be Fair by Virtue of the
            Process by Which It Was Obtained ................................................................ 7

      B.  The Risks of Establishing Liability and Damages ......................................... 8

           1.  The Risks of Establishing Liability Are Numerous and Substantial ................. 8

           2.  The Risks of Establishing Damages Are Substantial ......................................... 9

      C.  The Recovery Obtained Is Reasonable Given the
            Risks and in Light of the Best Possible Recovery ...................................... 10

      D.  The Settlement Is Reasonable in Light of the Complexity,
            Expense and Likely Duration of Continued Litigation ............................. 10

      E.  The Settlement Is Reasonable in Light of Defendants'
            Inability to Withstand a Greater Judgment ................................................ 11

      F.  Reaction of Centerline Shareholders to the Proposed Settlement ............. 11

      G.  The Stage of the Proceedings and Discovery ............................................ 12

      H.  The Experience and Views of Counsel Favor Approval ............................ 13

VI.    THE AGREED-TO FEE AND EXPENSE AWARD IS FAIR
        AND REASONABLE AND SHOULD BE APPROVED ............................. 14

      A.  Unopposed Fee Applications Are Preferred ............................................... 15

      B.  Standards for Evaluating an Attorney Fee Award ..................................... 16

           1.  Benefits Recovered in Relation to the Settlement ......................................... 16

2. Magnitude and Complexity of the Action ........................................................ 17

3. The Contingent Nature of the Fee and Risk in Litigation ............................... 17

4. Quality of Representation .................................................................................. 19

5. Public Policy Considerations ........................................................................... 19

6. A Lodestar Cross-Check of the Time and Labor Spent in the Litigation Further Supports the Conclusion That the Agreed-Upon Fee and Expense Award Is Fair and Reasonable ............................................. 19

VII.   CONCLUSION .......................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abrams v. Swift Boat Film LLC,*
    No. 05-2082, 2006 WL 337661 (S.D.N.Y. Feb. 10, 2006)......................................................12

*Allied Artists Pictures Corp. v. Baron,*
    413 A.2d 876 (Del. 1980) ........................................................................................................19

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
    603 F.2d 263 (2d Cir. 1979)....................................................................................................10

*Boeing Co. v. Van Gemert,*
    444 U.S. 473 (1980)..........................................................................................................14, 16

*Cannon v. Texas Gulf Sulphur Co.,*
    55 F.R.D. 308 (S.D.N.Y. 1972). *See*......................................................................................13

*Chatelain v. Prudential-Bache Sec., Inc.,*
    805 F. Supp. 209 (S.D.N.Y. 1992)........................................................................................13

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)........................................................................................*passim*

*Glassman v. Unocal Exploration Corp.,*
    777 A.2d 242 (Del. 2001) ......................................................................................................18

*Goldberger v. Integrated Res. Inc.,*
    209 F.3d 43 (2d Cir. 2000)......................................................................................16, 17, 19

*Helfand v. New American Fund,*
    64 F.R.D. 86 (E.D.Pa. 1974)..................................................................................................13

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)...............................................................................................................15

*In re Agent Orange Prod. Liab. Litig.,*
    818 F.2d 226 (2d Cir. 1987)............................................................................................17, 19

*In re AOL Time Warner Shareholder Deriv. Litig.,*
    No. 02 Civ. 6302, 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006).............................................12

*In re Apollo Group, Inc. Sec. Litig.,*
    No. 04-2147, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008)......................................................10

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)................................................................................13

*In re Metro. Life Derivative Litig.*,
   935 F. Supp. 286 (S.D.N.Y. 1996)......................................................................6

*In re Nat'l Student Mktg. Litig.*,
   68 F.R.D. 151 (D.D.C. 1974)............................................................................13

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................................7

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ......................................................................13

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................................7

*In re Union Carbide Consumer Prods. Business Sec. Litig.*,
   724 F. Supp 160 (S.D.N.Y. 1989) ...............................................................17, 19

*In re Walt Disney Co. Derivative. Litig.*,
   907 A.2d 693 (Del. Ch. 2005), *affd*, 906 A.2d 27 (Del. 2006) ......................18

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ............................................................................15

*Kaplan v. Rand*,
   192 F.3d 60 (2d Cir. 1999)................................................................................14

*Krasner v. Dreyfus Corp.*,
   90 F.R.D. 665 (S.D.N.Y. 1981) .........................................................................6

*Lyondell Chemical Co. v. Ryan*,
   No. 401, 2008, 2009 WL 1024764 (Del. Supr. Apr. 16, 2009) .........................9

*Malchman v. Davis*,
   761 F.2d 893 (2d Cir. 1985)........................................................................15, 16

*Mathes v. Roberts*,
   85 F.R.D. 710 (S.D.N.Y. 1980) ......................................................................6, 7

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
   708 F.2d 1081 (7th Cir. 1983) ..........................................................................10

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970)....................................................................................14, 16

*Scalis v. Fund Asset Mgmt., L.P.*,
    380 F.3d 133 (2d Cir. 2004)..................................................................18

*Smiley v. Sincoff*,
    958 F.2d 498 (2d Cir. 1992)..................................................................15

*Surowitz v. Hilton Hotels Corp.*,
    383 U.S. 363 (1966)..............................................................................14

*Tandycrafts, Inc. v. Initio Partners*,
    562 A.2d 1162 (Del. 1989) ...................................................................19

*TBK Partners, Ltd. v. W. Union Corp.*,
    675 F.2d 456 (2d Cir. 1982)............................................................6, 11

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .............................................................20

*W. Va. v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970).......................................................11

*Wal-Mart Stores Inc., v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)......................................................................8

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (D.C.N.Y. 1985) ......................................................19

*Weseley v. Spear, Leads & Kellogg*,
    711 F. Supp. 713 (E.D.N.Y. 1989) ................................................17, 20

OTHER AUTHORITIES

Federal Rules of Civil Procedure
    Rule 23.1 ..............................................................................................1, 6
    Rule 23.1(c) .............................................................................................11

## I.       INTRODUCTION

Plaintiff John Carfagno, nominal defendant Centerline Holding Company ("Centerline" or the "Company"), the Individual Defendants,[1] acting through their and/or its counsel, and subject to Court approval, have reached a settlement (the "Settlement") of the shareholder derivative action captioned above. The terms of the Settlement[2] are set forth in the Settlement agreement (the "Stipulation"), which was previously filed with the Court.  (*See* Declaration of Beth Kaswan in Support of Motion for Final Approval of Settlement and Award of Attorneys' Fees and Expenses ("Kaswan Decl.") at 1 n.1).  Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, Plaintiff respectfully submits to the Court this memorandum in support of his Motion for Final Approval of Settlement and Award of Attorneys' Fees and Expenses (the "Motion").

After many months of extensive, arm's-length negotiations among the Parties and with the assistance of two mediators, including Magistrate Judge James Francis and the Honorable John S. Martin, as well as the assistance of this Court in a final settlement conference requested by the Parties, the Parties reached a Settlement which is in the best interests of Centerline and its shareholders and provides a substantial benefit to Centerline and its Shareholders.  The Parties and Defendants' insurer also reached an agreement on the amount of fees and expenses that would be separately paid by the insurer.   Specifically, as consideration for the Settlement, satisfaction and compromise of the settled claims, the Parties have agreed to a materially more beneficial conversion price and dividend rate for the convertible preferred securities ("Preferred Securities") previously issued by Centerline to an affiliate of The Related Companies, L.P. ("TRCLP"), enhancing the terms of the transaction for the benefit of the Company.  By this Settlement, Defendants have agreed to adjust the terms of the Preferred Securities to reflect a fair

---

[1]     "Individual Defendants" includes Mark D. Schnitzer, Stephen M. Ross, Jeff T. Blau, Leonard W. Cotton, Robert J. Dolan, Nathan Gantcher, Jerome Halperin, Robert L. Loverd, Robert A. Meister, Janice Cook and Thomas W. White.

[2]     All capitalized terms shall have the same definitions as set forth in the Stipulation of Settlement dated April 8, 2009.

price as determined by Plaintiff's expert economist.  Defendants also have agreed, subject to Court approval, to cause Centerline's insurer to fund the payment of the attorneys' fees and out-of-pocket litigation expenses, inclusive (the "Fee and Expense Award") of Plaintiff's counsel in the amount of $1.3 million. On April 17, 2009, the Court: (i) approved the form of the notice of the Settlement to Centerline shareholders; and (ii) set May 18, 2009, as the hearing date for the Final Settlement Approval Hearing (the "Notice Order").  Pursuant to the Notice Order, Centerline caused the Shareholder Notice and the Stipulation to be posted on its Investor Relations webpage.  The Summary Notice was published in *The Wall Street Journal* and Centerline issued a press release over the *Business Wire* national newswire service announcing the Settlement and directing shareholders how to access the Shareholder Notice and Stipulation. As of the date of this filing, Plaintiff is not aware of any objections to the Settlement.[3]

In sum, the Settlement constitutes an excellent resolution of a vigorously prosecuted and contested Action of substantial complexity. As demonstrated below, Plaintiff and his counsel achieved valuable benefits for Centerline and its Shareholders that directly relate and are responsive to the allegations made in the Action.  The Settlement also takes into account the current economic realities of the depressed financial markets and their impact on the Defendants and their insurer.  As Defendants recognize and Plaintiff submits, the Settlement confers substantial benefits on Centerline and is in the best interests of Centerline and its shareholders and thus, the Settlement is fair, reasonable and adequate and should be finally approved by this Court.

## II.        BACKGROUND OF THE ACTION

On January 25, 2008, Plaintiff filed this action in the United States District Court for the Southern District of New York captioned *Carfagno v. Schnitzer*, No. 08 Civ. 912 (SAS) (S.D.N.Y.) (hereinafter, the "Action"), derivatively on behalf of the Company and on behalf of a putative class of Company shareholders alleging that the Individual Defendants breached their

---

[3]   Per the Notice Order, the deadline for Centerline shareholders to object to the Settlement was May 11, 2009.

fiduciary duties to the Company and its shareholders, by entering into a series of specific transactions, including the securitization of its tax-exempt affordable housing bond portfolio and the sale of $131 million worth of convertible preferred shares to an affiliate of The Related Companies, L.P. (the "TRCLP Transaction") at an unfair price. (Kaswan Decl., ¶3).

On March 3, 2008, Defendants entered into a proposed settlement (the "Delaware Settlement") in a separate action pending in the Court of Chancery of the State of Delaware captioned *Off v. Ross*, Civ. A. No. 3468-VCP (Del. Ch.) (the "Delaware Action"). (Kaswan Decl., ¶4). The Delaware Settlement, if approved, would have released any and all claims arising out of or related to the TRCLP Transaction, including as alleged in this lawsuit, in exchange for a "Rights Offering," which Plaintiff in this case believed was flawed.[4] (*Id.*). The preliminary approval order for the Delaware Settlement purported to enjoin other related lawsuits from proceeding. (*Id.*).

Thereafter, on March 31, 2008, Plaintiff filed an Order to Show Cause against Defendants in this Court, challenging the injunction entered in the Delaware Action and seeking expedited discovery. (*Id.*). At the hearing on the Order to Show Cause, the Court authorized discovery to proceed. (*Id.*). In April 2008, Defendants began producing documents as part of the expedited discovery permitted in the Action. (*Id.*, ¶5). Documents produced by Defendants exceeded 90,000 pages, which were then carefully reviewed and analyzed on an expedited but thorough basis. (*Id.*).

In order to assure that his claims were not precluded by the Delaware Settlement, and relying upon the produced documents and a preliminary assessment report of his economic expert, on May 9, 2008, Plaintiff filed objections to the proposed settlement in the Delaware Action. (Kaswan Decl., ¶6). On May 23, 2008, Plaintiff appeared at the settlement hearing in

---

[4] Pursuant to the "Rights Offering," Centerline's public shareholders could purchase its Preferred Convertible shares on the same terms as The Related Companies, L.P. The prospectus, however, lacked the critical information shareholders needed to evaluate the purchase, and other facts further undermined the success of the Offering, so that only about 3% of the offered shares were purchased by Centerline's public shareholders.

the Delaware Action to present and argue Plaintiff's objections.  (*Id.*).  At our request, and over Defendants' and the Delaware plaintiffs' objections, the Delaware Court continued the fairness hearing to permit us to take additional discovery relating to the fairness of the proposed settlement in the Delaware Action.  (*Id.*).

On April 28, 2008, Plaintiff filed a Verified Consolidated Amended Complaint in this Action.  (*Id.*, ¶7).  Defendants then filed a motion to dismiss this Action on May 12, 2008.  On June 5, 2008, extensive and detailed papers in opposition to Defendants' motions to dismiss were then submitted.  (*Id.*).  Defendants withdrew (without prejudice) their motions to dismiss on June 19, 2008.  (*Id.*).

In May and June 2008, Plaintiff proceeded to prepare this case on an expedited basis, including by reviewing thousands of documents produced by Centerline and by Defendants Ross and Blau pursuant to document requests, and also produced pursuant to third-party subpoenas by Bear Stearns, the advisor to the Board of Directors for the TRCLP Transaction, Morgan Stanley and Goldman Sachs.  (*Id.*, ¶8).  The third parties subpoenas resulted in approximately 50,000 pages of documents being produced, bringing the total number of pages of documents produced in the Action to over 140,000 pages.  (*Id.*).  Plaintiff also took five depositions, including Centerline's Chief Executive Officer ("CEO"), Chief Financial officer ("CFO"), a Centerline director involved in pricing the Preferred Securities, a Centerline public relations officer, and Bear Stearns. (*Id.*).

Using this discovery, and an affidavit from Plaintiff's expert economist, on June 26, 2008, Plaintiff filed supplemental objections to the proposed settlement in the Delaware Action. (Kaswan Decl., ¶9).  On July 3, 2008, in order to protect this Action from a potential *res judicata* bar, Plaintiff's counsel moved to intervene and to have Mr. Carfagno appointed lead plaintiff, and filed a proposed complaint in intervention in the Delaware Action.  (*Id.*).  On July 15, 2008, in a telephone conference, the Court in the Delaware Action conducted the continued hearing on the fairness of the Delaware Settlement.  During that call the Judge invited additional briefing, which Plaintiff's counsel submitted on July 17, 2008.  (*Id.*).  Additionally, On July 15, 2008,

Defendants answered the Verified Consolidated Amended Complaint in this Action, and on July 31, 2008, Plaintiff moved for class certification.[5]  (*Id.*, ¶9).

Discovery continued through October 2008.  (Kaswan Decl., ¶ 10).  Additional documents were produced, and Plaintiffs deposed three additional Defendants, while Defendants deposed Mr. Carfagno.  (*Id.*)  In October and November 2008, the Parties conducted expert discovery, including the exchange of expert reports and the depositions of expert witnesses.  (*Id.*)  During this period, the parties also had their first unsuccessful mediation with Magistrate Judge James C. Francis.  (*Id.*)  A settlement brief and related materials were compiled for that purpose.  (*Id.*)

Citing Plaintiff's objections, by a written opinion dated November 26, 2008, the Delaware Chancery Court denied approval of the proposed settlement in the Delaware Action.  (Kaswan Decl., ¶11).  On December 16, 2008, Defendants moved for summary judgment in this Action, filing two separate motions.  (*Id.*).  On January 26, 2009, we filed oppositions to both of Defendants' motions for summary judgment.  (*Id.*).  On February 13, 2009, Defendants filed replies in support of their motions for summary judgment. (*Id.*).

## III.   THE SETTLEMENT

The Parties engaged in numerous, good faith and arm's-length negotiations over a substantial period of time to resolve the Action.  (Kaswan Decl., ¶12).  Formal mediation submissions were prepared and mediations conducted with two independent mediators, Magistrate Judge Francis and former United States District Judge John Martin, without success.  (*Id.*)  For months, the Parties also engaged in extensive informal discussions and negotiations in an attempt to settle the Action.  Finally, late February 2009, with the assistance of the Court, the Parties and Defendants' insurer were finally able to reach agreement on all terms of the Settlement.  (*Id.*)

---

[5]   Plaintiff's class certification motion was denied by order entered December 1, 2008.  (Dkt. No. 53).

Pursuant to the Stipulation, the Parties agreed that within ten (10) business days of the Effective Date of the Settlement, the terms of the "Preferred Securities" previously issued by Centerline to "TRCLP" will be amended, such that the conversion price shall be $12.35 (instead of $10.75) and the dividend rate shall be 9.5% (instead of 11%).  (Kaswan Decl., ¶13).  These are the terms that Plaintiff's expert testified in his deposition would have been fair to Centerline's shareholders.  (*Id.*)  In order to effect these revised terms, (i) Centerline will issue a new series of preferred securities with terms substantially identical to the Preferred Securities except with the agreed changes to the conversion rate and dividend rate ("New Preferred Securities") and (ii) TRCLP will exchange its Preferred Securities for the same number of shares of New Preferred Securities.  (*Id.*)  Under the Settlement, the conversion and dividend rates of the Preferred Securities purchased during the Rights Offering by shareholders other than TRCLP and its affiliates, will not be changed.  (*Id.*)

## IV.   THE STANDARDS FOR JUDICIAL APPROVAL OF SHAREHOLDER DERIVATIVE SETTLEMENTS

After several unsuccessful attempts, with the assistance of this Court, the Parties finally reached agreement on the terms of a Settlement which approximate what Plaintiff had been seeking in the litigation.  Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, Plaintiff now seeks final approval of the Settlement.

The procedure Courts follow in evaluating proposed settlements of shareholder derivative settlements is similar to the procedure for review of a class action settlement. *See TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 459 (2d Cir. 1982); *Krasner v. Dreyfus Corp.*, 90 F.R.D. 665, 667 (S.D.N.Y. 1981); *Mathes v. Roberts*, 85 F.R.D. 710, 713 (S.D.N.Y. 1980).   In reviewing the proposed Settlement, the Court determines whether the proposed Settlement is "'fair, reasonable and adequate.'"  *In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 291 (S.D.N.Y. 1996).[6]  This evaluation necessarily includes whether the Settlement "'fairly and adequately serves the interests of the corporation on whose behalf the derivative action was

---

[6]     Unless otherwise noted, all citations are omitted and emphasis is added.

instituted.'"  *Mathes*, 85 F.R.D. at 713.  *See also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377-78 (9th Cir. 1995) (On appeal of simultaneous derivative and securities class actions settlements, the court upheld the district court's determination that the proposed settlement for the shareholder derivative suit was "'fair, reasonable and adequate to [the company].'").

Thus, this Court should generally apply the usual "*Grinnell*" factors used to evaluate securities class actions in evaluating this settlement.  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).  Those factors include:  "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial,[7] (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *Grinnell*, 495 F.2d at 463.  As shown below, a review of the *Grinnell* factors in the context of this Action leads to the conclusion that the Settlement is more than fair, reasonable and adequate.

## V.      THE SETTLEMENT IS EMINENTLY FAIR, REASONABLE AND ADEQUATE

### A.      The Settlement Is Presumed to Be Fair by Virtue of the Process by Which It Was Obtained

The Second Circuit recognizes an initial presumption of fairness of a proposed settlement that has been negotiated at arm's length by experienced counsel. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) (explaining that "a strong presumption of fairness attaches to a class action settlement reached in arm's-length negotiations").  The strength of this presumption is further augmented where, as here, the process for obtaining the settlement included the participation of the Court.   *Id.* ("Judge Weinstein's role in the settlement

---

[7]     Because this Court denied class certification, and this case has thus proceeded solely as a derivative action, this *Grinnell* factor has no applicability to the evaluation of the Settlement.

negotiations strongly supports a finding that they were conducted at arm's-length and without collusion."); *see also Wal-Mart Stores Inc., v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

This case was hotly contested, litigated intensely on an expedited basis and finally settled only after two unsuccessful attempts by two highly qualified and impartial mediators. Only with the patient assistance of this Court were the Parties able to finally resolve their differences. The Settlement is an excellent result for Centerline, and indirectly its shareholders, because Plaintiff effectively obtained all the relief he was requesting by the Settlement. (*See* Declaration of Scott D. Hakala, Ph.D., CFA, Relating to the Proposed Settlement ("Hakala Decl."), ¶1.a; Kaswan Decl., ¶¶14-15). The prospects for a higher recovery were dashed by the overall crisis in the financial markets and by its impact on the Defendants and their insurer. (Hakala Decl., ¶7; Kaswan Decl., ¶17, 22). The result is particularly noteworthy because Plaintiff still faced a number of daunting obstacles to recovery, including the resolution of motions for summary judgment, a difficult trial and likely appeals. (Kaswan Decl., ¶¶16-17). Thus, the process by which the Settlement was obtained, and the terms of the Settlement as evaluated by the factors in *Grinnell* demonstrate that the Settlement should be approved.

**B.    The Risks of Establishing Liability and Damages**

In assessing the fairness, reasonableness and adequacy of the Settlement, the Court balances the continuing risks of litigation with the benefits afforded to Centerline and the immediacy and certainty of the settlement relief. *Grinnell*, 495 F.2d at 463. Here, the benefits are as great as Plaintiff could hope to achieve at trial, and they will be available immediately and with certainty. Whereas, the risks of not achieving these benefits at trial and after all appeals are exhausted is high. Thus, there can be little question that this Settlement should be approved.

**1.    The Risks of Establishing Liability Are Numerous and Substantial**

Plaintiff faces substantial risk in establishing liability. In their summary-judgment motions, Defendants argue that Plaintiff cannot demonstrate that a majority of the Trustees were interested or lacked independence, and that this action is barred by the business-judgment rule.

Defendants additionally presented evidence that Centerline's Trust Instrument, which by its terms insulates Trustees from liability for a breach of the duty of care, forecloses all claims except those premised on a breach of the duty of loyalty.[8]  Although Plaintiff does not agree with Defendants' analysis, Plaintiff's case became much more difficult with the recent decision by the Delaware Supreme Court granting summary judgment to the Defendants in *Lyondell Chemical Co. v. Ryan*, No. 401, 2008, 2009 WL 1024764 (Del. Supr. Apr. 16, 2009).  As the court there held:

> Director's decisions must be reasonable, not perfect.  "In the transactional context, [an] extreme set of facts [is] required to sustain a disloyalty claim premised on the notion that disinterested directors were intentionally disregarding their duties.

*Id.*, at *7.

Further, despite the Settlement, Defendants continue to vigorously deny the claims alleged in the Action.  (Kaswan Decl., ¶¶16-17).  Thus, there existed substantial risk to Plaintiff's ability to sustain his claims on summary judgment and at trial.

### 2.      The Risks of Establishing Damages Are Substantial

Defendants here have argued that as a result of the financial crisis, Centerline, and indirectly its shareholders, have suffered no damages as a result of the issuance of the Preferred Securities to TRCLP.  (Kaswan Decl., ¶17).  Defendants, through one of their expert economists also contended that the price negotiated with TRCLP was not unfair.  (*Id.*17).  Under Defendants' theory, had the securitization and preferred offering not been consummated, Centerline would be bankrupt today.  (*Id.*).  While Plaintiff disagreed with Defendants' approach to damages, he nonetheless appreciates that either this Court or a jury might agree with the Defendants.  (*Id.*).  Thus, substantial risk exists in proving damages suffered by the Company at trial.

---

[8]     Defendants also argue as a matter of law that because the two insider Defendants, Ross and Blau, did not vote on the TRCLP Transaction, they cannot be liable for a transaction approved by the other Trustees.

Even a victory at trial is no guarantee that the judgment will ultimately be sustained. Even substantial judgments awarded by trial courts have been reversed by the appellate courts. For example, recently in *In re Apollo Group, Inc. Sec. Litig.*, No. 04-2147, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), the court on a motion for judgment as matter of law, overturned a jury verdict of $277 million in favor of shareholders based on insufficient evidence presented at trial to establish loss causation. *See also Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983) (remanding $1.8 billion antitrust judgment for a new trial on damages which ultimately produced a dramatically smaller award). Add to these appellate risks the difficulty and unpredictability of a lengthy and complex trial — where witnesses could suddenly become unavailable or the fact finder could react to the evidence in unforeseen ways — and the benefits of the Settlement become all the more apparent.

## C.   The Recovery Obtained Is Reasonable Given the Risks and in Light of the Best Possible Recovery

Given the obstacles and uncertainties inherent in this complex Action as discussed above, the Settlement is an excellent result and is unquestionably superior to other "possibilities" which certainly exist — little or no recovery.  This is particularly true given the recent decision in *Lyondell Chemical*.  As described above, and in the declaration of Dr. Hakala, in the current financial climate, the Settlement is worth approximately $8 million to Centerline, and currently represents a fair price for the Preferred Securities.  (*See* Hakala Decl., ¶1.b).  Since it is unlikely that Plaintiff could do better at trial, the Settlement undeniably satisfies this *Grinnell* factor.

## D.   The Settlement Is Reasonable in Light of the Complexity, Expense and Likely Duration of Continued Litigation

To date, this Action has been extraordinarily complex and expensive to litigate.  (*See* Declaration of Arthur L. Shingler III in Support of Motion for Final Approval of Settlement and Award of Attorneys' Fees and Expenses ("Shingler Decl.", ¶5).  Plaintiff has reviewed over 140,000 pages of documents produced in discovery, taken several depositions, deposed multiple

defense experts and litigated several sharply contested motions.  (*See* Kaswan Decl., ¶¶3-10, 18). If the case survives summary judgment, the trial will undoubtedly also be lengthy, complex and expensive to try.  This is another factor that undeniably demonstrates that a settlement now is appropriate.

Thus, the likely prospect of continued expensive and uncertain litigation heavily favors approval of the proposed Settlement as in the best interests of Centerline. *See, e.g., TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 463-64 (2d Cir. 1982); *W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970).

> **E.     The Settlement Is Reasonable in Light of Defendants' Inability to Withstand a Greater Judgment**

The current financial climate has taken its toll on the Defendants and their insurer. Throughout the litigation, the prospect of bankruptcy has loomed large.  For these reasons, it is highly prudent to resolve this litigation as soon as possible to assure certainty in the litigation.

> **F.     Reaction of Centerline Shareholders to the Proposed Settlement**

Under Rule 23.1(c), "[n]otice of a proposed settlement ... must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). On April 17, 2009, the Court approved the Parties' proposed form and manner of notice.  (Dkt. No. 98).  This included publishing the Settlement Stipulation on the Company's website on its Investor Relations webpage, and issuing a press release announcing the Settlement over the *Business Wire* national newswire service on April 17, 2009.  (Shingler Decl., ¶2).  As provided in the Court's Order, the Summary Notice was also published in *The Wall Street Journal* on April 17, 2009.[9]  (*Id*.).

These notices advised Centerline shareholders that the Parties reached a settlement of the Action and that a fairness hearing would be held to determine whether the proposed Settlement should be approved.  (Shingler Decl., ¶3).  The notices provided logistical information to Centerline shareholders as to when and where the hearing would take place. (*Id*.).  The

---

[9]     Individual notice was also provided to parties in related litigation whose lawsuits might be impacted by the settlement and release. (Shingler, Decl., ¶2).

shareholders were also provided with substantive information providing, in part: (i) a summary of the allegations in the Action; (ii) the terms of the Settlement; (iii) an invitation to appear at the hearing and show cause, if any, why the Settlement, or attorneys' fees and expenses, should not be approved; and (iv) disclosure that if the Settlement is approved, the claims that were or could have been raised in the Action will be dismissed with prejudice. (*Id.*).  The essential purpose of shareholder notice is "to allow shareholders to make an informed choice regarding whether to intervene to challenge the proposed disposition of the litigation." *Abrams v. Swift Boat Film LLC*, No. 05-2082, 2006 WL 337661, at *1 (S.D.N.Y. Feb. 10, 2006).  The Shareholder Notice and Summary Notice clearly satisfy this purpose.

Moreover, pursuant to Centerline's Form 10-K filed with the SEC on March 10, 2009, there were more than 53 million shares of outstanding Centerline common stock.  (Shingler Decl., ¶4).  Nonetheless, no shareholder has submitted any objection to the Settlement.  (*Id.*). This strongly suggests that the Settlement is fair and reasonable.  *See In re AOL Time Warner Shareholder Deriv. Litig.,*, No. 02 Civ. 6302, 2006 WL 2572114, at *6 (S.D.N.Y. Sept. 6, 2006) (stating that the principle that "'the lack of objections may well evidence the fairness of the Settlement'" applies to shareholder derivative actions); *Abrams*, 2006 WL 337661, at *2 (the proposed settlement was fair, reasonable and adequate after "taking notice of the lack of objections and having reviewed the terms of the proposed settlement"); *cf Grinnell*, 495 F.2d at 462 ("Any claim by appellants that the settlement offer is grossly and unreasonably inadequate is belied by the fact that ... [o]nly twenty objectors appeared from the group of 14,156 claimants."). Accordingly, the absence of any shareholder objections to the Settlement weighs strongly in favor of approving the Settlement.

### G.  The Stage of the Proceedings and Discovery

The stage of the proceedings and the amount of discovery completed is another factor that the courts consider in determining the fairness, reasonableness and adequacy of the proposed Settlement. *Grinnell*, 495 F.2d at 463. This factor "'captures the degree of case development that ... counsel have accomplished prior to settlement.  Through this lens, courts can determine

whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001).

Here, the Parties have evaluated the merits of their claims and/or defenses and obtained a clear idea as to their respective strengths and weaknesses through extensive discovery, including the review of over 140,000 pages of documents and taking nine fact depositions and three expert depositions, and through motion practice both before this Court and before the Delaware Court, including Plaintiff's successful objection to the earlier Delaware Settlement, Defendants' motions to dismiss, and the motions for summary judgment. This work was performed, on an expedited basis, for almost 18 months. Moreover, the Parties thoroughly debated the merits of and risks to Plaintiff's claims during the two formal mediations and their numerous informal negotiation discussions.

Thus, sufficient investigation, discovery and analysis has been conducted to allow the Parties' counsel to make an informed decision as to the relative merits of each side's case and confirm that the Settlement is in the best interests of Centerline and its public shareholders.

### H.     The Experience and Views of Counsel Favor Approval

Significant weight should also be attributed to the belief of experienced counsel that the Settlement is in the best interest of Centerline shareholders. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("'[G]reat weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992); *Cannon v. Texas Gulf Sulphur C*o., 55 F.R.D. 308, 316 (S.D.N.Y. 1972). *See also In re Nat'l Student Mktg. Litig.*, 68 F.R.D. 151, 155 (D.D.C. 1974) ("[t]he opinion and judgment of experienced counsel, whose labors produced the settlement, should also receive due consideration"); *Helfand v. New American Fund*, 64 F.R.D. 86, 90 (E.D.Pa. 1974) ("[The] Court also takes into consideration the caliber of the counsel who are recommending [the] settlement. The opinion of experienced counsel in favoring a settlement is entitled to considerable weight.").

Here, the Court is well-versed about the experience and abilities of counsel for both the Plaintiff and the various groups of Defendants.  There is no question that the facts in this case were vigorously developed and the law thoroughly reviewed.  The Settlement was reached only after the Parties' counsel had conducted substantial investigation and analysis and had engaged in protracted discovery and settlement negotiations.  (*See* Kaswan Decl., ¶¶12-13).  Plaintiff's counsel fully support the Settlement, and it is their informed opinion that, given the uncertainty, risk and substantial expense of pursuing Defendants on all claims through trial, the Settlement is fair, reasonable and adequate and in the best interests of Centerline.  Defendants similarly believe that the Settlement is fair and warrants approval.  (*See* Stipulation at 4, ¶W).  Accordingly, where, as here, the Parties have thoroughly investigated the factual background of the case, vigorously advanced their respective views of the strengths and weaknesses of the case, negotiated at arm's-length and in good faith to arrive at a settlement whereby Plaintiff has obtained valuable benefits for Centerline and its shareholders, the proposed Settlement should be approved.

## VI.   THE AGREED-TO FEE AND EXPENSE AWARD IS FAIR AND REASONABLE AND SHOULD BE APPROVED

Shareholder derivative cases have long been a favored means for enforcing standards of conduct for corporate officers and directors and, in doing so, creating a common benefit to the corporation and its shareholders. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371 (1966). If the corporation derives a benefit, the plaintiffs in a shareholder derivative action may recover their expenses, including attorneys' fees, from the corporation on whose behalf their action was brought and, ultimately, successfully prosecuted and/or settled. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 394 (1970); *Kaplan v. Rand*, 192 F.3d 60, 69 (2d Cir. 1999). The creation of a monetary benefit to the corporation in a shareholder derivative action is not a necessary prerequisite to an award of attorneys' fees, though here a significant financial benefit was, in fact, obtained. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 473, 478 (1980) (substantial benefit may be monetary, remedial or both).  Here, the award of attorneys' fees and costs is to be funded

14

by Defendants' insurer, so that it will not diminish the financial benefit conferred on Centerline from this litigation.  The Defendants and their insurer have agreed to pay to Plaintiff, and his counsel have agreed to accept, the payment of $1.3 million for attorneys' fees and reimbursement of litigation expenses, inclusive, subject to Court approval.  (Shingler Decl., ¶12). This payment is approximately 15% of the estimated current financial benefit of the Settlement, and is well below Plaintiff's combined lodestar and out-of-pocket expenses.  (*See id.*, ¶¶8, 10). As discussed below, the Fee and Expense Award is entirely fair and reasonable.  Accordingly, the Court should grant approval of the agreed-upon Fee and Expense Award.

### A.      Unopposed Fee Applications Are Preferred

The fact that the Fee and Expense Award was negotiated at arm's length, and does not diminish the substantial financial benefits of the Settlement, underscores that the fees are reasonable and should be approved. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (An agreed-to fee is an ideal situation because "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."); *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992) (the "settlement between the parties of the fee amount is encouraged"); *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").

In *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), the Second Circuit explained that generally courts should be hesitant to disrupt fee arrangements between plaintiffs and defendants in shareholder actions when defendants have agreed not to oppose the payment of fees up to a certain amount:

> [W]here ... the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement "not to oppose" an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after the settlement.

*Id.*, at 905 n.5.  This view was recently reiterated in *In re Quest Software, Inc. Deriv. Litig.*, No. SACV06-0751 (C.D. Cal.).  By the court's Order Granting Final Approval of Settlement,[10] the court in *Quest Software* reasoned that a "stipulated fee is entitled to considerable deference," and "judicial meddling in stipulated fee agreements is dangerous and discourages settlements."  *Id.* at 6.

Indeed, here, the negotiations over the fee were successfully agreed upon by the Parties and Defendants' insurer, only with the substantial assistance of the Court, and after several prior attempts had failed, including with two highly respected and effective mediators.

### B.    Standards for Evaluating an Attorney Fee Award

In the Second Circuit, courts apply the following factors in evaluating attorneys' fee awards: (i) the benefit recovered in relation to the settlement; (ii) the magnitude and complexities of the litigation; (iii) the risk in litigation (*i.e.*, the contingent nature of the fee); (iv) the quality of representation; (v) public policy considerations; and (vi) the time and labor spent.  *See Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Grinnell*, 495 F.2d at 470.  A review of these factors in the context of the litigation of the Action shows that Plaintiff's Fee and Expense Award is fair and reasonable and merits approval.

### 1.    Benefits Recovered in Relation to the Settlement

Counsel who prosecute and subsequently settle shareholder derivative actions which confer substantial benefits on corporations, as in this Action, are entitled to an award of attorneys' fees and costs. *See Boeing Co.*, 444 U.S. at 472 ; *Mills*, 396 U.S. at 375.  *Metro. Life*, 935 F.Supp. at 294.  A benefit is substantial if it corrects or prevents an abuse which would be prejudicial to the corporation or its shareholders. *See Mills*, 396 U.S. at 396.

While courts in derivative litigation often award fees even without a financial benefit, here Centerline and its shareholder have recovered approximately $8.2 million, an amount that

---

[10]    A copy of the August 15, 2008 Order is attached to the Shingler Decl. as Exhibit G.

was unlikely to be increased even if Plaintiff prevailed at trial. This settlement was a direct result of the dogged efforts of Plaintiff's counsel, provided at enormous risk.

The Fee and Expense award is 15% of the financial recovery, and is less than counsel's lodestar, which is undeniably reasonable by any measure.[11] Moreover, as the fee award is being funded by Centerline's insurer, and does not diminish the financial benefits to the Company and its shareholders, the fee arrangement is undeniably furthering their interests.

Thus, the Settlement achieved by Plaintiff's counsel provides substantial benefits and value to Centerline and is sufficient to justify the Fee and Expense Award.

### 2. Magnitude and Complexity of the Action

This Court is well acquainted with the complexity of the facts and legal issues in this case. These are graphically presented in the pending motions for summary judgment, and are discussed in earlier sections of this memorandum of law.

### 3. The Contingent Nature of the Fee and Risk in Litigation

Courts consistently recognize that another factor in evaluating an application for attorneys' fees is the contingent nature of the fee and the resulting risk of non-payment through success in the litigation. *Grinnell*, 495 F.2d at 471 ("Perhaps the foremost of these factors is the attorney's 'risk of litigation,' *i.e.*, the fact that, despite the most vigorous and competent of efforts, success is never guaranteed."); *Goldberger*, 209 F.3d at 54 ("Risk falls along a spectrum, and should be accounted for accordingly."); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir. 1987).

In this case, the negotiated fee and expense award of $1.3 million is approximately 15% of the financial benefits conferred by the Settlement, and does not diminish the payment to the

---

[11]   To the extent that the negotiated Fee and Expense Award is analogous to a common-fund benefit analysis, 15% of the benefit conferred on the Company is well within the 15-30% range of percentage awards in this Circuit. *See e.g., In re Union Carbide Consumer Prods. Business Sec. Litig.,* 724 F. Supp 160, 170 (S.D.N.Y. 1989) (awarding attorney's fees amounting to "27% of the true economic recovery which is in keeping with the custom and practice in awarding fees in common fund cases in this District, said to range typically from 15% to 30% of the recovery") (citing *Weseley v. Spear, Leads & Kellogg,* 711 F. Supp. 713, 718 (E.D.N.Y. 1989).

Company.   It also is significantly less than counsel's lodestar.   (*See* Shingler Decl., ¶8). Plaintiff's counsel took enormous risks that it would recover nothing for its efforts in this litigation, because had the Delaware Court approved the Delaware Settlement, that settlement would have barred this claim for fees.   As such, it can hardly be doubted that the fees requested by Plaintiff, and agreed to by Defendants and their insurer is entirely fair and in the best interests of the Company and its public shareholders.

Indeed, the risk of non-payment in contingent-fee derivative actions is quite real. For example, in the recent well-known *Disney* derivative action, Plaintiff's counsel devoted thousands of hours, and incurred millions of dollars in expenses, only to see judgment entered against them on all claims, which was affirmed on appeal. *In re Walt Disney Co. Derivative. Litig.*, 907 A.2d 693 (Del. Ch. 2005), *affd*, 906 A.2d 27 (Del. 2006); *Scalis v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 142 (2d Cir. 2004) (no recovery after dismissal of complaint on grounds that plaintiffs failed to properly plead the excusal of a pre-suit demand); *cf. Glassman v. Unocal Exploration Corp.*, 777 A.2d 242 (Del. 2001) (no recovery, and thus, no fee award, after thousands of hours in time and hundreds of thousands of dollars in expenses in connection with prosecution of shareholder action).

Here, Plaintiff's counsel took enormous risks that their efforts would go uncompensated when they pressed forward despite the proposed Delaware Settlement that, if approved, would have barred their claims to fees.[12]   Even after the Delaware Court sustained Plaintiff's objections to the Delaware Settlement, Plaintiff and his counsel continued to face enormous factual and legal obstacles to a successful recovery – as the briefing on the summary judgment motions show.   Given these risks, the proposed fee award is extraordinarily reasonable.

---

[12]   Because the only colorable benefit to Centerline's shareholders of the settlement in the Delaware Action was the opportunity of shareholders to purchase Preferred Shares in a Rights Offering that had already been concluded as of the time of the Delaware fairness hearing, Plaintiff's and his counsel's efforts in this Action, resulted in an incremental benefit to Centerline and its shareholders far over and above what was proposed in the Delaware Action.

### 4.    Quality of Representation

Another factor which courts consider in reviewing fee awards in shareholder actions is the quality of representation.  *Goldberger,* 209 F.3d at 55; *Grinnell*, 495 F.2d at 471.  Plaintiff's counsel are highly-seasoned practitioners in this very specialized and competitive area of the law.  (*See* Kaswan Decl., ¶19, Ex. 1).  The significant results obtained, which required successfully challenging an inadequate settlement in the Delaware court, overcoming Defendants' motions to dismiss in this action and extensive, expedited discovery, attest to the quality of representation in this case.

### 5.    Public Policy Considerations

Courts have also recognized the significant public policy of ensuring that shareholders harmed by possible fiduciary misconduct have access to skilled counsel. *See, e.g., Union Carbide* 724 F. Supp. at 169; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 750 (D.C.N.Y. 1985); *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 878 (Del. 1980); *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1166 (Del. 1989).  Substantial fees have often been awarded to serve this purpose.

Plaintiff's counsel's efforts were performed, and the result achieved, on a wholly contingent basis, despite significant risk and in the face of determined, resourceful opposition. In these circumstances, public policy favors compensation that is adequate to assure high quality representation in this type of litigation in the future.  Further, as of the date of the filing of this Motion, there have been no shareholder objections to the Settlement, let alone the Fee and Expense Award. Under all of the circumstances present here, the Fee and Expense Award is fair and reasonable.

### 6.    A Lodestar Cross-Check of the Time and Labor Spent in the Litigation Further Supports the Conclusion That the Agreed-Upon Fee and Expense Award Is Fair and Reasonable

A fee award in contingent, representative actions need not be solely determined by the number of hours spent by the lawyers on the case. "The critical inquiry when reviewing hours... is whether the work preformed resulted in a benefit ...."  *Agent Orange Prod. Liab.*, 818 F.2d at

237.   Nevertheless, lodestar can be used as a cross-check regarding the reasonableness of an award. Here, the lodestar method demonstrates that the award sought is unquestionably reasonable.  Here, Plaintiff's counsel spent approximately 3,737.32 hours in the prosecution and settlement of the Action for a cumulative lodestar of $1,952,599.50.[13]   (*See* Shingler Decl., ¶8).

Approval of the Fee and Expense Award results in Plaintiff's counsel receiving a multiplier of approximately .61  on their time — a multiplier of less than one — a demonstrably reasonable multiplier based on relevant precedent for the contingent risk they undertook to represent the interests of the Company and its shareholders.[14] *See, e. g., Union Carbide*, 724 F. Supp. at 170 (approving a fee award augmented by a multiplier of 2.3); *Weseley*, 711 F. Supp. at 718 (approving a fee award augmented by a multiplier of 2.3); *Warner Commc'ns*, 618 F. Supp. at 749 (approving a fee award augmented by a multiplier of 2.26 and noting that "[s]uch a multiplier appears to be at the lower end of the range of multipliers used in other large cases"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing twenty-three large shareholder settlements and multipliers for each, in which the average multiplier is 3.28).

Indeed, the Fee and Expense Award is less than Plaintiff's lodestar, so that no enhancement is provided to compensate Plaintiff's counsel for the risks and delay in payment that they assumed.  As such, the lodestar check demonstrates that the proposed fee is both fair and reasonable.

## VII.   CONCLUSION

The Settlement achieved by Plaintiff's counsel through arm's-length negotiations is an excellent result under the circumstances, given the serious risks and delays inherent in the Action and the complexity and expense if the case proceeded through summary judgment and to trial. Moreover, the requested and agreed-on fees and expenses are eminently reasonable.

---

[13]   Plaintiff's counsel's total expenses are $172,574.57.  (Shingler Decl., ¶10).

[14]   In order to arrive at the multiplier, the requested Fee and Expense Award is divided by Plaintiff's Counsel's actual combined lodestar and expenses.

Accordingly, Plaintiff respectfully submits that the Settlement and the Fee and Expense Award are fair, reasonable and adequate and should be approved by the Court and that the proposed Judgment submitted to the Court should be entered.

Dated:  May 12, 2009                              Respectfully submitted,

<div style="margin-left: 40%;">

/s/ Beth Kaswan
Beth Kaswan (BK-0264)
Judith Scolnick (JS-0872)
SCOTT + SCOTT LLP
29 West 57th Street
New York, NY 10019
Phone: (212) 223-6444
Fax: (212) 223-6334
E-mail: bkaswan@scott-scott.com
        jscolnick@scott-scott.com

David R. Scott (DS-8053)
SCOTT + SCOTT, LLP
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Phone: (860) 537-5537
Fax: (860) 537-4432
E-mail: drscott@scott-scott.com

Arthur L. Shingler III  *(pro hac vice)*
SCOTT + SCOTT LLP
600 B Street, Suite 1500
San Diego, CA 92101
Phone: 619-233-4564
Fax: 619-233-0508
Email: ashingler@scott-scott.com

Walter W. Noss (*pro hac vice*)
SCOTT + SCOTT, LLP
12434 Cedar Road, Suite 12
Cleveland Heights, OH 44106
Phone: (216) 229-6088
Fax: (216) 229-6092
E-mail: wnoss@scott-scott.com

*Counsel for Plaintiff John Carfagno*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2009, the foregoing document was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 12, 2009.

_/s/ David R. Scott_____
David R. Scott (DS-8053)
SCOTT + SCOTT, LLP
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Phone: (860) 537-5537
Fax: (860) 537-4432
E-mail: drscott@scott-scott.com