UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――X
JOHN CARFAGNO, derivatively on behalf of  :
CENTERLINE HOLDING COMPANY,               :
                                          :   No. 08 Civ. 912 (SAS)
              Plaintiff,                  :
                                          :
       vs.                                :
                                          :
MARC D. SCHNITZER, et al.,                :
                                          :
              Defendants.                 :
―――――――――――――――――――――――――X

**DECLARATION OF BETH KASWAN IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT AND AWARD OF
ATTORNEYS' FEES AND EXPENSES**

I, Beth Kaswan, declare as follows:

1. I am an attorney duly licensed to practice in the courts of the State of New York, and this Court. I am a Partner with the law firm of Scott+Scott LLP ("S+S"), lead counsel for plaintiff John Carfagno ("Plaintiff") in the above-captioned shareholder derivative litigation. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. I submit this declaration in support of Plaintiff's Motion for Final Approval of Settlement and Award of Attorneys' Fees and Expenses (the "Motion").

**I.    THE LITIGATION AND THE PARTIES' EFFORTS[1]**

3. On January 25, 2008, Plaintiff filed this action in the United States District Court for the Southern District of New York captioned *Carfagno v. Schnitzer, et al.*, No. 08 Civ. 912 (SAS) (S.D.N.Y.) (hereinafter, the "Action"), derivatively on behalf of the Company and on behalf of a class of Company shareholders alleging Defendants breached their fiduciary duties to the Company and its shareholders by entering into and/or failing to properly disclose a series of

―――――――――――
[1] All terms herein have the same meaning as those in the Stipulation of Settlement dated April 8, 2009 ("Stipulation").

1

transactions, including the securitization of its tax-exempt affordable housing bond portfolio, and the sale of $131 million worth of convertible preferred shares to an affiliate of The Related Companies, L.P. (the "TRCLP Transaction") at an unfair price.

4. On March 3, 2008, the Defendants entered into a settlement (the "Delaware Settlement") in a separate action pending in the Court of Chancery of the State of Delaware captioned *Off v. Ross, et al.*, Civ. A. No. 3468-VCP (Del. Ch.) (the "Delaware Action"), which, if approved, would have released any and all claims arising out of or related to the TRCLP Transaction, including claims in this lawsuit, in exchange for a "Rights Offering" which this firm, in consultation with our expert economist, believed to be flawed. The preliminary approval order for the Delaware Settlement purported to enjoin this Action, as well as others, from proceeding, at least in part. As a result, on March 31, 2008, we filed an Order to Show Cause against Defendants in this Court, challenging the order entered in the Delaware Action and seeking expedited discovery. At the hearing on the Order to Show Cause, the Court authorized discovery to proceed.

5. Subsequent to this Court's order permitting immediate discovery, the Plaintiff met and conferred with Defendants regarding Plaintiff's document requests. In April 2008, Defendants began producing documents as part of the expedited discovery permitted in this Action. Documents produced by Defendants ultimately exceeded 90,000 pages, which were then carefully reviewed and analyzed on an expedited but thorough basis.

6. In order to assure that Plaintiff's claims were not precluded by the Delaware Settlement, on May 9, 2008, this firm, on behalf of Plaintiff, filed extensive objections to the proposed settlement in the Delaware Action. On May 23, 2008, we appeared at the settlement hearing in the Delaware Action to present and argue Plaintiff's objections. At our request, and over Defendants' and the Delaware plaintiffs' objections, the Delaware Court continued the fairness hearing to permit us to take additional discovery relating to the fairness of the proposed settlement in the Delaware Action.

7. On April 28, 2008, we filed a Verified Consolidated Amended Complaint in this Action. Defendants then filed a motion to dismiss this Action on May 12, 2008. On June 5, 2008, extensive and detailed papers in opposition to Defendants' motions to dismiss were then submitted. Defendants withdrew (without prejudice) their motions to dismiss on June 19, 2008.

8. In May and June 2008, we proceeded to prepare this case on an expedited basis, including by reviewing thousands of documents produced by Centerline and by Defendants Ross and Blau pursuant to document requests, and also produced pursuant to third-party subpoenas by Bear Stearns, the advisor to the Board of Directors for the TRCLP transaction, Morgan Stanley and Goldman Sachs. The third party subpoenas resulted in approximately 50,000 pages of documents being produced, bringing the total number of pages of documents produced in the Action to over 140,000 pages. I, and others in this firm, also took five depositions, including Centerline's Chief Executive Officer ("CEO"), Chief Financial officer ("CFO"), a Centerline director involved in pricing the Preferred Securities, a Centerline public relations officer, and Bear Stearns.

9. Using this discovery, and an affidavit from Plaintiff's expert economist, on June 26, 2008, we filed supplemental objections to the proposed settlement in the Delaware Action. On July 3, 2008, in order to protect this Action from a potential *res judicata* bar, we moved to intervene and to have Mr. Carfagno appointed lead plaintiff, and filed a proposed complaint in intervention, in the Delaware Action. On July 15, 2008, in a telephone conference, the Court in the Delaware Action conducted the continued hearing on the fairness of the Delaware Settlement. During that call the Judge invited additional briefing, which we submitted on July 17, 2008. Additionally, on July 15, 2008, Defendants answered the Verified Consolidated Amended Complaint in this Action, and on July 31, 2008, Plaintiff moved for class certification.

10. Discovery continued through October 2008. Additional documents were produced, and we deposed three additional Defendants, while Defendants deposed Mr. Carfagno. In October and November 2008, the parties conducted expert discovery, including the exchange of expert reports and the depositions of expert witnesses. During this period, the parties also had

3

their first unsuccessful mediation with Magistrate Judge Francis. A settlement brief and related materials were compiled for that purpose.

11. Citing our objections, by a written opinion dated November 26, 2008, the Delaware Chancery Court denied approval of the proposed settlement in the Delaware Action. On December 16, 2008, Defendants moved for summary judgment in this Action, filing two separate motions. On January 26, 2009, we filed oppositions to both of Defendants' motions for summary judgment. On February 13, 2009, Defendants filed replies in support of their motions for summary judgment.

## II. THE SETTLEMENT

12. The Parties engaged in numerous, good faith and arm's-length negotiations over a substantial period of time to resolve this Action. Formal mediation submissions were prepared and mediations conducted with two independent mediators, Magistrate Judge Francis and former United States District Judge John Martin, without success. For months, the Parties also engaged in extensive informal discussions and negotiations in an attempt to settle this Action. Finally, in late February 2009, with the assistance of the Court, the parties and Defendant's insurer were able to reach a tentative agreement on all terms of the Settlement, as later set forth in the Stipulation.

13. Pursuant to the settlement agreement (the "Stipulation"), the Parties agreed that within ten (10) business days of the Effective Date of the Settlement, the terms of the "Preferred Securities" previously issued by Centerline to TRCLP will be amended, so that the conversion price will be $12.35 (instead of $10.75) and the dividend rate will be 9.5% (instead of 11%). These are terms that Plaintiff's expert has opined would have been fair to Centerline's shareholders. In order to effect these revised terms, (i) Centerline will issue a new series of preferred securities with terms substantially identical to the Preferred Securities except with the agreed changes to the conversion rate and dividend rate ("New Preferred Securities") and (ii) TRCLP will exchange its Preferred Securities for the same number of shares of New Preferred Securities. Under the Settlement, the conversion and dividend rates of the Preferred Securities

purchased during the Rights Offering by shareholders other than TRCLP and its affiliates, will not be changed.

### III. THE SETTLEMENT IS IN THE BEST INTERESTS OF CENTERLINE AND WARRANTS FINAL APPROVAL BY THIS COURT

14. I, and others in this firm, believe that the foregoing Settlement terms substantially benefit Centerline and its shareholders and demonstrate that the Settlement is fair, reasonable, adequate and in the best interests of Centerline. Particularly, it is submitted that: (i) the Settlement confers substantial financial benefits on Centerline, and indirectly its public shareholders; (ii) the Settlement is in the best interests of Centerline and its shareholders; and (iii) the Settlement is fair, reasonable and adequate to the Company and its shareholders.

15. As set forth in the Declaration of Scott D. Hakala, Ph.D., CFA (Plaintiff's expert), the Settlement terms, including the cancellation of the Original Preferred Shares held by TRCLP and issuance of Replacement Preferred Shares to TRCLP, result in a substantially lower cost of capital to Centerline Holding Company, and represents a present value benefit as of May 11, 2009 of approximately $8.2 million.

16. Additionally, although we fully believe Plaintiff's claims have merit, the expense and length of continued proceedings necessary to prosecute these claims through trial and subsequent appeals is daunting. As such, in evaluating the Settlement, we have taken into account the costs and risks inherent in proceeding further in this Action. Moreover, without an agreement to resolve the Action, Defendants are expected to continue to challenge the claims vigorously. Plaintiff faces substantial risk in establishing liability, as described in Defendants' previously filed summary judgment motions. Defendants have argued that the business judgment rule precludes Plaintiff's claims and that Centerline's Trust Instrument, which by its terms insulates Trustees from liability for breach of the duty of care, forecloses Plaintiff from prevailing on his duty of care-based claim, and that Plaintiff cannot sustain his breach of loyalty claims as a factual matter. None of these arguments can be rejected out of hand.

17. Even if liability was eventually established, Defendants, supported by their experts, argue that Centerline suffered no damages, and that, in fact, the securitization and the sale of the Preferred Securities to TRCLP prevented Centerline's bankruptcy. While we do not agree that Defendant's approach to damages has merit, again it cannot be rejected out of hand. Either this Court or a jury might agree with the Defendants. And even if Plaintiff establishes damages at trial, the award could still be overturned on appeal. By contrast, the proposed Settlement eliminates the risks of continued litigation and eliminates the risk of no recovery after several more years of litigation and trial at a significant cost to the Company. It is thus in the best interests of the Company to resolve this Action now.

18. Nor can there be any doubt that the Parties and counsel have adequately developed the case to settle at this juncture. We have reviewed and analyzed over 140,000 pages of documents produced by Centerline and third parties, as well as numerous relevant public filings with the SEC, press releases, news articles and analyst reports, and took or defended 12 depositions of fact and expert witnesses. Thus, we have all concluded that the benefits to be conferred on Centerline upon the consummation of the Settlement will, if approved by the Court: (i) result in a resolution of the shareholder derivative claims and allow Defendants to put these matters to rest and (ii) far outweigh the potential benefits of continued prosecution. Thus, the Settlement is fair, reasonable and adequate and in the best interests of Centerline.

19. The attorneys representing Plaintiff and Defendants have often appeared in this Court in cases of this sort. As shown in the S+S biography that is attached hereto as Exhibit A, S+S consists of experienced practitioners in the field of shareholder and derivative litigation and has been responsible for numerous significant settlements on behalf of companies and their shareholders. In addition, Defendants and Centerline were also represented by highly sophisticated counsel with every incentive to protect their clients' best interests. This case was hotly litigated by very experienced counsel on both sides, and a settlement was finally reached only after two unsuccessful mediations, with the assistance of this Court.

**IV.     THE AGREED-TO FEE AWARD IS FAIR AND REASONABLE**

20.     Plaintiff's counsel doggedly pursued this Action in the face of great risks and uncertainty of any recovery, including of their fees and costs.  Plaintiff's counsel litigated this case on an entirely contingent basis, and advanced the significant out-of-pocket costs, including for Plaintiff's expert and for deposition transcripts.

21.     Over the course of this Action, we: (i) conducted a detailed investigation into the facts and allegations in the complaints; (ii) engaged in extensive factual research, including research into Centerline's and TRCLP's corporate structure, organization, and businesses; (iii) researched many legal issues on the claims and defenses in the Action, including complex issues of Delaware law regarding fiduciary duties owed to shareholders by corporate directors and officers; (iv) appeared in the Delaware Action and successfully blocked approval of a settlement there which we believed did not provide any significant benefit to Centerline or its public shareholders, while releasing meritorious claims; (v) thoroughly reviewed and analyzed documents produced during discovery; (vi) drafted and filed two complaints in this Action, an Order to Show Cause to address the injunction in the Delaware Court's preliminary approval order and to provide for expedited discovery; (vii) opposed motions to dismiss, moved for class certification, filed numerous objections in the Delaware Action, submitted expert reports in both this Action and the Delaware Action, and opposed two separate motions for summary judgment; and (viii) engaged in two mediations and extensive informal negotiations aimed at resolving the Action.

22.     After the settlement terms were reached, the Parties then negotiated the amount of attorneys' fees, which reflected the economic realities that had beset the Defendants and their insurer.  Litigation of this case, and the results received could well have supported a fee award of a higher percentage of the settlement proceeds, and a multiple of our lodestar.  As such, the amount of the agreed upon Fee and Expense Award is, in my view, eminently fair and reasonable to the parties.

## V.     CONCLUSION

23.     The proposed Settlement has been achieved as the result of hard fought litigation and waged by skilled lawyers for both sides. The terms of the Settlement were arrived at through arduous arm's-length negotiations between the Parties. I, and others at this firm, believe the Settlement, which includes the Fee and Expense Award, is fair, reasonable, adequate and in the best interests of Centerline and its shareholders and should be approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 12th day of May, 2009, at New York, New York.

SCOTT+SCOTT LLP

 /s/ *Beth Kaswan*
BETH KASWAN
29 West 57th Street
New York, NY 10019
Phone: (212) 223-6444
Fax: (212) 223-6334
E-mail: bkaswan@scott-scott.com

Declared under penalty of perjury
on May 12, 2009 in New York, New York

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2009, the foregoing document was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 12, 2009.

*/s/ David R. Scott*
David R. Scott (DS-8053)
SCOTT + SCOTT, LLP
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Phone: (860) 537-5537
Fax: (860) 537-4432
E-mail: drscott@scott-scott.com